# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL, )
)
Plaintiff, )
)
v. )            Case No.: CACE-20-010942
)
JM FAMILY ENTERPRISES, INC., )
)
Defendant. )
)

## CIVIL ACTION SUMMONS

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE
OR PERSON AUTHORIZED BY THE COURT
TO SERVE PROCESS IN THIS ACTION**

7-24-2020
1:05 P
#593
8

**YOU ARE HEREBY COMMANDED** to serve this Summons and copy of the Complaint
for Damages in this action on the below-named Defendant:

**JM FAMILY ENTERPRISES, INC.**
c/o UNITED AGENT GROUP INC.
801 US HWY 1, PLANTATION, FL 33324

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to wit:
Tanesha W. Blye, Esq., whose address is:

Saenz & Anderson, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131

within 20 days after service of this Summons on that Defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on Plaintiff's
attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against
that Defendant for the relief demanded in the Complaint.

JUL 14 2020

DATED ON _____, 2020.

CLERK OF COURTS
as Clerk of said Court

By:_____

(COURT SEAL)

**BRENDA D. FORMAN**

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.  CASE STYLE

IN THE CIRCUIT COURT OF THE SEVENTEENTH  JUDICIAL CIRCUIT,
IN AND FOR BROWARD  COUNTY, FLORIDA

Case No.:_____
Judge: _____

AUDE JESSICA RAPHAEL
Plaintiff
vs.
JM FAMILY ENTERPRISES, INC.
Defendant

### II.  AMOUNT OF CLAIM

Please indicate the estimated amount of the claim rounded to the nearest dollar $75,000

### III.  TYPE OF CASE  (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

| | |
|---|---|
| ☐ Condominium | ☐ Malpractice – other professional |
| ☐ Contracts and indebtedness | ☒ Other |
| ☐ Eminent domain | ☐ Antitrust/Trade Regulation |
| ☐ Auto negligence | ☐ Business Transaction |
| ☐ Negligence – other | ☐ Circuit Civil - Not Applicable |
| ☐ Business governance | ☐ Constitutional challenge-statute or ordinance |
| ☐ Business torts | ☐ Constitutional challenge-proposed amendment |
| ☐ Environmental/Toxic tort | ☐ Corporate Trusts |
| ☐ Third party indemnification | ☒ Discrimination-employment or other |
| ☐ Construction defect | ☐ Insurance claims |
| ☐ Mass tort | ☐ Intellectual property |
| ☐ Negligent security | ☐ Libel/Slander |
| ☐ Nursing home negligence | ☐ Shareholder derivative action |
| ☐ Premises liability – commercial | ☐ Securities litigation |
| ☐ Premises liability – residential | ☐ Trade secrets |
| ☐ Products liability | ☐ Trust litigation |
| ☐ Real Property/Mortgage foreclosure | |
| ☐ Commercial foreclosure | ☐ County Civil |
| ☐ Homestead residential foreclosure | ☐ Small Claims up to $8,000 |
| ☐ Non-homestead residential foreclosure | ☐ Civil |
| ☐ Other real property actions | ☐ Replevins |
| ☐ Professional malpractice | ☐ Evictions |
| ☐ Malpractice – business | ☐ Other civil (non-monetary) |
| ☐ Malpractice – medical | |

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐  No ☒

IV.     **REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☒  Non-monetary declaratory or injunctive relief;
☐  Punitive

V.      **NUMBER OF CAUSES OF ACTION:**
(Specify)

<u>4</u>

VI.     **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐  Yes
☒  No

VII.    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒  No
☐  Yes – If "yes" list all related cases by name, case number and court:

VIII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒  Yes
☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   <u>s/ Tanesha W Blye</u>
Attorney or party
FL Bar No.:  <u>0738158</u>
(Bar number, if attorney)
<u>Tanesha W Blye</u>
(Type or print name)
Date:   <u>07/07/2020</u>

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　Case No.:
　　　　　　　　　　　　　　　　　　)
JM FAMILY ENTERPRISES, INC.,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　 )
　　　　　　　　　　　　　　　　　　)
_____)

## COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendant JM FAMILY

ENTERPRISES, INC. ("Defendant") and alleges:

1.　　　This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys'

fees, and costs.

2.　　　This is an action to recover damages for discrimination and retaliation pursuant to

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA").

3.　　　Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.　　　Defendant is, and at all times mentioned was, a foreign profit corporation, having

its main place of business in Broward County, Florida.

5.　　　At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat.

§760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



1

6.      At all times material, Defendant was a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.      At all times material, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

8.      Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

9.      Plaintiff has complied with all conditions precedent in filing this action, to wit;

   a.   Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

   b.   Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

10.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

**RELEVANT FACTS**

11.     Plaintiff was hired by Defendant on or about October 14, 2014.

12.     At all times material, Plaintiff was employed by Defendant as a Customer Service Representative.

13.     During Plaintiff's employment with Defendant she excelled in her job performance, and was recognized for her outstanding work.

www.saenzanderson.com



2

14.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

15.     Plaintiff immediately informed her supervisors, including but not limited to Jillian De Los Reyes, Audrey Demoss, and Rebecca Bell ("Bell"), of her diagnosis.

16.     Plaintiff was placed on short term disability as a result of her diagnosis.

17.     Plaintiff returned to work in or about October of 2018.

18.     Upon her return to work, Defendant's conduct toward Plaintiff was different than Defendant's conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Particularly, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

19.     Defendant's conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create an abusive working environment.

20.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

21.     Plaintiff complained to Bell about the bully, belittling, and micromanaging, but nothing was done. Defendant refused to act upon Plaintiff's complaints.

22.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

23.     Defendant denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendant responded by moving Plaintiff to a desk further away from the restroom.

24.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendant, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

25.     On or about June 7, 2019, Defendant terminated Plaintiff, allegedly because she violated a company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and  was clearly pretextual.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA – HOSTILE WORK ENVIRONMENT

26.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

27.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

28.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com

SAENZ & ANDERSON
A T T O R N E Y S    A T    L A W

4

29.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

30.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Demoss talked down to Plaintiff and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

31.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

32.     The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create a discriminatorily abusive working environment.

33.     Defendant, as Plaintiff's employer, was responsible for maintaining a working environment free from unwelcomed harassment and abuse.

34.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

35.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

36.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

37.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE,** Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<div align="center">

**JURY TRIAL DEMAND**

</div>

Plaintiff demands trial by jury of all issues triable as of right by jury.

<div align="center">

**COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA –
DISPARATE TREATMENT**

</div>

38.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

<div align="center">

www.saenzanderson.com



</div>

6

39.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

40.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

41.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

42.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

43.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

44.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

45.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

46.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

www.saenzanderson.com



47.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

G. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

H. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K. Award Plaintiff reasonable costs and attorney's fees; and

L. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA – FAILURE TO ACCOMMODATE

48.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

49.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

www.saenzanderson.com



8

50.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

51.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

52.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

53.     Defendant denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

54.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendant.

55.     The accommodations requested by Plaintiff were reasonable.

56.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

57.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

58.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com



9

59.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

60.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

61.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION

www.saenzanderson.com



10

62.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

63.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

64.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

65.     Plaintiff engaged in a protected activity when she complained to Bell about being bully, belittling, and micromanaging because of her disability.

66.     Defendant intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff continuously requested reasonable accommodations from Defendant.

67.     Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

68.     The retaliation of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

69.     As a direct and proximate result of the intentional violations by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

70.     Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

www.saenzanderson.com



11

71. The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: July 7, 2020.                              Respectfully submitted,

                                                  **By: /s/ Tanesha Blye**
                                                  Tanesha Blye, Esquire
                                                  Fla. Bar No.: 0738158
                                                  Email: tblye@saenzanderson.com

                                                  Yadhira Ramirez-Toro, Esquire
                                                  Fla. Bar No.: 120506
                                                  Email: yramirez@saenzanderson.com

                                                  R. Martin Saenz, Esquire

                              www.saenzanderson.com



12

Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,                    )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        Case No.: CACE-20-010942
                                         )
JM FAMILY ENTERPRISES, INC. and          )
WORLD OMNI FINANCIAL CORP.,              )
                                         )
            Defendants.                  )
_____)

## FIRST AMENDED COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendants JM FAMILY

ENTERPRISES, INC. and WORLD OMNI FINANCIAL CORP. ("Defendants") and alleges:

1.     This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys'

fees, and costs.

2.     This is an action to recover damages for discrimination and retaliation pursuant to

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq.* ("FCRA").

3.     Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.     Defendants are, and at all times mentioned was, a foreign profit corporation, having

its main place of business in Broward County, Florida.

5.     At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat.

§760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com

SAENZ & ANDERSON
A T T O R N E Y S   A T   L A W

1

6.      At all times material, Defendants were a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.      At all times material, Defendants employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

8.      The Defendants share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies. The Defendants are therefore joint employers. Alternatively, each company is an enterprise under the FLSA.

9.      Each Defendant is sued individually, as a joint enterprise, as joint employers, and as agent of each other.

10.     Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

11.     Plaintiff has complied with all conditions precedent in filing this action, to wit;

  a.   Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

  b.   Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

12.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

2

## RELEVANT FACTS

13.     Plaintiff was hired by Defendants on or about October 14, 2014.

14.     At all times material, Plaintiff was employed by Defendants as a Customer Service Representative.

15.     During Plaintiff's employment with Defendants, she excelled in her job performance, and was recognized for her outstanding work.

16.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

17.     Plaintiff immediately informed her supervisors, including but not limited to  Jillian De Los Reyes, Audrey Demoss, and Rebecca Bell ("Bell"), of her diagnosis.

18.     Plaintiff was placed on short term disability as a result of her diagnosis.

19.     Plaintiff returned to work in or about October of 2018.

20.     Upon her return to work, Defendants' conduct toward Plaintiff was different than Defendants' conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Particularly, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

21.     Defendants' conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create an abusive working environment.

22.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

www.saenzanderson.com



SAENZ & ANDERSON
A T T O R N E Y S   A T   L A W

23.     Plaintiff complained to Bell about the bully, belittling, and micromanaging, but nothing was done. Defendants refused to act upon Plaintiff's complaints.

24.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

25.     Defendants denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendants responded by moving Plaintiff to a desk further away from the restroom.

26.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendants, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

27.     On or about June 7, 2019, Defendants terminated Plaintiff, allegedly because she violated a company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and  was clearly pretextual.

<div align="center">

**COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA –**
**HOSTILE WORK ENVIRONMENT**

</div>

28.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

<div align="center">

www.saenzanderson.com



</div>

29.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

30.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

31.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

32.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Demoss talked down to Plaintiff and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

33.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

34.     The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create a discriminatorily abusive working environment.

35.     Defendants, as Plaintiff's employer, were responsible for maintaining a working environment free from unwelcomed harassment and abuse.

36.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

37.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

38.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

39.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA –

www.saenzanderson.com



## DISPARATE TREATMENT

40.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

41.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

42.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

43.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

44.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

45.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

46.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

47.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

48.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

49.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, Plaintiff requests that this honorable court:

G. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

H. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K. Award Plaintiff reasonable costs and attorney's fees; and

L. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<div align="center">

**JURY TRIAL DEMAND**

</div>

Plaintiff demands trial by jury of all issues triable as of right by jury.

<div align="center">

**COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA –
FAILURE TO ACCOMMODATE**

</div>

50.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

<div align="center">

www.saenzanderson.com



</div>

8

51.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

52.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

53.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

54.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

55.     Defendants denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

56.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendants.

57.     The accommodations requested by Plaintiff were reasonable.

58.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

59.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

www.saenzanderson.com



60.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

61.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

62.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

63.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

www.saenzanderson.com



Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION

64.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

65.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

66.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

67.     Plaintiff engaged in a protected activity when she complained to Bell about being bully, belittling, and micromanaging because of her disability.

68.     Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff continuously requested reasonable accommodations from Defendants.

69.     Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

70.     The retaliation of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

71.     As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

72.     Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

73.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: August 11, 2020.                    Respectfully submitted,

                                           **By: /s/ Tanesha Blye**
                                           Tanesha Blye, Esq.
                                           Fla. Bar No.: 0738158

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

Email: tblye@saenzanderson.com

Aron Smukler, Esq.
Fla. Bar No.: 0297779
Email: asmukler@saenzanderson.com

R. Martin Saenz, Esq.
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

Case 0:21-cv-60530-FAM   Document 1-1   Entered on FLSD Docket 03/08/2021   Page 32 of 365

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  CACE20010942   DIVISION  25   JUDGE  Carol-lisa Phillips

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

This matter came before the Court upon Defendants' JM Family Enterprises, Inc. and World Omni Financial Corp.'s Motion for Extension of Time to Respond to the First Amended Complaint.  Having reviewed the Motion and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED.  Defendants shall have through and including September 11, 2020 to respond to Plaintiff's First Amended Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on 08-28-2020.

CACE20010942 08-28-2020 10:24 AM

CACE20010942 08-28-2020 10:24 AM
Hon. Carol-lisa Phillips
**CIRCUIT JUDGE**
Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**
Aron Smukler , E-mail : asmukler@saenzanderson.com
Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com
Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com
Ruben Martin Saenz , E-mail : setehc@hotmail.com
Tanesha W Blye , E-mail : ursula@saenzanderson.com

Tanesha W Blye , E-mail : asmukler@saenzanderson.com
Tanesha W Blye , E-mail : tblye@saenzanderson.com
Ursula Lanfranco , E-mail : ursula@saenzanderson.com
Valerie L. Hooker , E-mail : MiamiDocketing@jacksonlewis.com
Valerie L. Hooker , E-mail : belloo@jacksonlewis.com
Valerie L. Hooker , E-mail : valerie.hooker@jacksonlewis.com
Yadhira Ramirez-Toro , E-mail : ursula@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : asmukler@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : yramirez@saenzanderson.com

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL )
                          )
       Plaintiff, )
                          )
v. )
                          )
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP. )
                          )
       Defendants. )
_____)

## DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO THE PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants JM Family Enterprises, Inc. ("JMFE") and World Omni Financial Corp. ("World Omni") (together, "Defendants"), by and through their undersigned counsel, hereby file this Motion for Extension of Time, seeking an extension up to and including September 11, 2020, in which to respond to the First Amended Complaint filed by Plaintiff Aude Jessica Raphael ("Plaintiff"). In support of this Motion, Defendants state as follows:

1.       Plaintiff filed her First Amended Complaint on August 11, 2020.

2.       Plaintiff effectuated service of process on Defendants with the First Amended Complaint on August 18, 2020.

3.       JMFE's response to the First Amended Complaint currently is due on August 28, 2020. Inasmuch as the First Amended Complaint is the initial pleading served on World Omni, World Omni's response to the First Amended Complaint is September 7, 2020.

4.       Defendants require additional time to respond to the First Amended Complaint to address preliminary issues.

Care No. CACE-20-010942

5.      Accordingly, Defendants seeks a brief extension of time until September 11, 2020 to file a response to the First Amended Complaint.

6.      On August 27, 2020, defense counsel attempted to confer with Plaintiff's counsel via email and a telephone regarding the brief extension request.  Defense counsel was unable to reach Plaintiff's counsel prior to filing this Motion.

7.      This extension request is made in good faith and is not interposed for any dilatory or improper purposes.

WHEREFORE, Defendants respectfully requests an extension of time, up to and including September 11, 2020, to file a response to the First Amended Complaint.

Dated:  August 27, 2020

Respectfully submitted,

By:_s/ Valerie L. Hooker_____
Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
Email: _jenna.rassif@jacksonlewis.com_
Valeria L. Hooker, Esq.
Florida Bar No. 113688
E-mail: _valerie.hooker@jacksonlewis.com_
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
_Attorneys for Defendants_

2

Care No. CACE-20-010942

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on

August 27, 2020, on all counsel of record on the service list below via transmission of Notices of

Electronic Filing.

_s/ Valerie L. Hooker_
Valerie L. Hooker, Esq.

## SERVICE LIST

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Yadhira Ramirez-Toro Esq.
Florida Bar No. 120506
E-mail: yramirez@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

_Attorneys for Plaintiff_

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: _jenna.rassif@jacksonlewis.com_
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: _valerie.hooker@jacksonlewis.com_
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

_Attorneys for Defendants_

4830-5139-9113, v. 1

3

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL       )
                               )
        Plaintiff,       )
                               )
v.                              )
                               )
JM FAMILY ENTERPRISES, INC. and  )
WORLD OMNI FINANCIAL CORP.   )
                               )
        Defendants.     )
_____)

**DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO THE PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants JM Family Enterprises, Inc. ("JMFE") and World Omni Financial Corp. ("World Omni") (together, "Defendants"), by and through their undersigned counsel, hereby file this Unopposed Motion for Extension of Time, seeking an extension up to and including September 23, 2020, in which to respond to the First Amended Complaint filed by Plaintiff Aude Jessica Raphael ("Plaintiff"). In support of this Motion, Defendants state as follows:

1.      Defendants' response to the First Amended Complaint currently is due on September 11, 2020.

2.      Counsel for Defendants and counsel for Plaintiff have been discussing the resolution of one of the pending issues before the Court, which would affect how Defendants respond to the First Amended Complaint.

3.      Accordingly, Defendants respectfully request additional time to respond to the First Amended Complaint to address these preliminary issues. Specifically, Defendants seeks a brief extension of time until September 23, 2020 to file a response to the First Amended Complaint.

Care No. CACE-20-010942

4.      On September 10, 2020 defense counsel conferred with Plaintiff's counsel via email regarding the brief extension request and Plaintiff's counsel stated that she did not object to the relief sought.

5.      This is the second extension sought by Defendants.  This extension request is made in good faith and is not interposed for any dilatory or improper purpose.

WHEREFORE, Defendants respectfully requests an extension of time, up to and including September 23, 2020, to file a response to the First Amended Complaint.

Dated:  September 10, 2020

Respectfully submitted,

By: *s/ Valerie L. Hooker*
    Jenna Rinehart Rassif, Esq.
    Florida Bar No. 56855
    Email: *jenna.rassif@jacksonlewis.com*
    Valeria L. Hooker, Esq.
    Florida Bar No. 113688
    E-mail: *valerie.hooker@jacksonlewis.com*
    JACKSON LEWIS P.C.
    One Biscayne Tower, Suite 3500
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 577-7600
    Facsimile: (305) 373-4466
    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on September 10, 2020, on all counsel of record on the service list below via transmission of Notices of Electronic Filing.

*s/ Valerie L. Hooker*
Valerie L. Hooker, Esq.

Care No. CACE-20-010942

## SERVICE LIST

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Yadhira Ramirez-Toro Esq.
Florida Bar No. 120506
E-mail: yramirez@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: *jenna.rassif@jacksonlewis.com*
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

4851-2281-8762, v. 1

3

Case 0:21-cv-60530-FAM   Document 1-1   Entered on FLSD Docket 03/08/2021   Page 40 of 365

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  CACE20010942   DIVISION  25   JUDGE  Carol-lisa Phillips

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____/

## AGREED ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

This matter came before the Court upon Defendants' JM Family Enterprises, Inc. and World Omni Financial Corp.'s Unopposed Motion for Extension of Time to Respond to the First Amended Complaint.  Having reviewed the Motion and being otherwise fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED that the Motion is GRANTED.  Defendants shall have through and including September 23, 2020 to respond to Plaintiff's First Amended Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on 09-10-2020.

CACE20010942 09-10-2020 4:02 PM

CACE20010942 09-10-2020 4:02 PM
Hon. Carol-lisa Phillips
**CIRCUIT JUDGE**
Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**
Aron Smukler , E-mail : asmukler@saenzanderson.com
Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com
Jenna Rinehart Rassif , E-mail : jenna.rassif@jacksonlewis.com
Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com
Ruben Martin Saenz , E-mail : setehc@hotmail.com

Tanesha W Blye , E-mail : ursula@saenzanderson.com
Tanesha W Blye , E-mail : asmukler@saenzanderson.com
Tanesha W Blye , E-mail : tblye@saenzanderson.com
Ursula Lanfranco , E-mail : ursula@saenzanderson.com
Valerie L. Hooker , E-mail : MiamiDocketing@jacksonlewis.com
Valerie L. Hooker , E-mail : belloo@jacksonlewis.com
Valerie L. Hooker , E-mail : valerie.hooker@jacksonlewis.com
Yadhira Ramirez-Toro , E-mail : ursula@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : asmukler@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : yramirez@saenzanderson.com

Filing # 113865828 E-Filed 09/23/2020 04:58:39 PM

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL )
)
        Plaintiff, )
)
v. )
)
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP. )
)
        Defendants. )
_____)

## **DEFENDANTS' MOTION TO DISMISS**
## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants JM Family Enterprises, Inc. ("JMFE"), and World Omni Financial Corp.

("World Omni") (together, "Defendants"), by and through their undersigned counsel and

pursuant to Florida Rules of Civil Procedure 1.130 and 1.140(b)(6), move to dismiss Plaintiff's

First Amended Complaint, and as grounds, state as follows:

### **INTRODUCTION**

On July 7, 2020, Plaintiff Aude Jessica Raphael ("Plaintiff") filed a four-count complaint

against JMFE asserting violations of the Florida Civil Rights Act ("FCRA"). Specifically,

Plaintiff asserted that JMFE violated the FCRA by: (1) subjecting Plaintiff to a hostile work

environment because of her alleged disability (Count I); (2) subjecting Plaintiff to disparate

treatment based on her alleged disability (Count II); (3) failing to accommodate Plaintiff's

disability (Count III); and (4) retaliating against Plaintiff for allegedly complaining about

disability discrimination (Count IV).  A copy of the initial Complaint is attached as Exhibit A.

On August 11, 2020, Plaintiff filed her First Amended Complaint, which maintained the same

four counts against JMFE and the exact same allegations, with two edits.  First, Plaintiff added World Omni as a named defendant.  Second, Plaintiff changed references from "Defendant" to the plural "Defendants" and added two paragraphs alleging that JMFE and World Omni are either a "joint enterprise, joint employers, or agents of each other."  A copy of the First Amended Complaint is attached as Exhibit B.

Defendants move to dismiss on two bases.  First, the First Amended Complaint should be dismissed in its entirety because Plaintiff fails to state a basis upon which to hold JMFE and World Omni liable as a joint enterprise or as joint employers.  Indeed, Plaintiff does not even identify or direct employer.  Moreover, Plaintiff fails to cite to a single fact to hold Defendants liable as joint employer or a joint enterprise, instead improperly relying on a recitation of mere legal conclusions that purport to state the elements of joint employer or joint enterprise liability.  Plaintiff cannot rely on her barebones allegations to expand liability beyond her direct employer, which she does not identify.

Second, Plaintiff's First Amended Complaint should be dismissed as alleged against World Omni because Plaintiff failed to file a Charge of Discrimination against World Omni.  Notably, Plaintiff strategically alleges that she "timely filed a Charge of Discrimination," but she does not state against which entity she filed it.  Charging Party also failed to attach to her First Amended Complaint the Charge of Discrimination to allow the Court to review the entity against which it was filed and whether the allegations in this lawsuit are within the scope of the allegations set forth in the charge.  Accordingly, Plaintiff failed to plead that she exhausted her administrative remedies prior to filing this lawsuit, warranting dismissal.

CASE NO. CACE-20-010942

## MEMORANDUM OF LAW

I.    **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS BY FAILING TO SET FORTH FACTS REGARDING THE ALLEGED JOINT EMPLOYER OR JOINT ENTERPRISE STATUS**

Plaintiff attempts to place liability upon Defendants on the basis that, *in the alternative*, the entities were either joint employers *or* they were part of a joint enterprise.  *See* Am. Compl. ¶¶ 8-9.  Plaintiff, however, points to no facts whatsoever in support of her alternative theories, and, indeed, does not identify which entity she claims directly employed her.  That is, while Plaintiff purports to recite the elements/factors used to determine joint employer or joint enterprise liability, her First Amended Complaint is utterly devoid of even a single factual allegation in support of her alternatively-pled theories of liability.

Florida courts look to federal case-law in deciding "whether separate but related entities should be aggregated for purposes of employment and labor statutes." *See Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593 (Fla. 3d DCA 2009) (citing *Martinolich v. Golden Leaf Mgmt.*, 786 So. 2d 613, 614 (Fla. 3d DCA 2001)).  The United States Supreme Court has clarified that in determining whether multiple entities constitute an integrated enterprise, a plaintiff must show: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership.  *See Radio & Television Broad. Technicians Loc. Union v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965); *see also Kentov ex rel. NLRB v. Point Blank Body Armor*, 16 Fla. L. Weekly Fed. D130 (S.D. Fla. 2003).

In determining whether multiple entities constitute a joint employer under discrimination statutes, courts look to the entities control over the employee.  Specifically:

The test for determining whether two entities acted as joint employers is relatively straightforward:  The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the

employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the <u>essential</u> terms and conditions of employment.

*Peppers v. Cobb Cty.*, 835 F.3d 1289, 1300 (11th Cir. 2016) (emphasis in original).

Here, the only allegations that might support a claim for joint employer or joint enterprise liability consist of conclusory recitations of the legal elements/factors for such liability. More specifically, paragraphs 8 and 9 of Plaintiff's First Amended Complaint—the only paragraphs that contain any allegations related to Plaintiff's alternative theories of liability—do nothing more than state legal conclusions without any factual foundation. Specifically, Plaintiff alleges, but provides no factual support for, the legal conclusion that Defendants "share" or "interchange" employees, "work in the direct interest of one another," and "are in common control of both companies." Am. Compl. ¶ 8. Based on those facts alone, Plaintiff concludes that "Defendants are therefore joint employers." *Id*. Plaintiff also concludes, without any factual support, that each Defendant "is sued individually, as a joint enterprise, as joint employers, and as agents of each other." Am. Compl. ¶ 9.

Plaintiff fails to support these conclusory recitations of legal theories of liability with any factual allegations whatsoever to show how these legal theories apply to Defendants. For example, Plaintiff does not state how or where Defendants share or interchange employees. Nor does Plaintiff provide any indication of what their "direct interest" is, or how the entities are under common control. Likewise, Plaintiff omits any factual allegations that would show how the entities are commonly managed, much less how each Defendant had any managing control or other authority over Plaintiff's day to day activities, her wages, her hiring or firing, or any of the terms or conditions of her employment. Plaintiff's failure to allege such facts is fatal to her claim.

Florida is a fact-pleading jurisdiction.  "In order to state a cause of action, a complaint must allege *sufficient ultimate facts* to show that the pleader is entitled to relief."  *Taylor v. City of Riviera Beach*, 801 So. 2d 259, 262 (Fla. 4th DCA 2001) (emphasis added); *see also* Fla. R. Civ. P. 1.110(b) (finding a plaintiff must state a "short and plain statement of the *ultimate facts* showing that the pleader is entitled to relief.") (emphasis added).  Where, as here, Plaintiff fails to allege any facts whatsoever in support of her claims that Defendants are her joint employers or a joint enterprise (not even identifying her direct employer), the Court must dismiss those claims in their entirety.  *See, e.g.*, *Bankers Tr. Realty v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (holding that where a complaint fails to state sufficient ultimate facts in support of a claim, and instead "merely states the insufficient legal conclusion" that the elements or factors of a claim have occurred, dismissal is appropriate).

## II.   PLAINTIFF FAILED TO ALLEGE SUFFICIENTLY THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES AND CANNOT ALLEGE THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES AGAINST WORLD OMNI

It is well settled that before filing suit under the FCRA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the Florida Commission on Human Relations ("FCHR").  *Sunbeam TV Corp. v. Mitzel*, 83 So. 3d 865, 873-74 (Fla. 3d DCA 2012) (finding that "an individual claiming discrimination in the workplace must first file an administrative complaint with the FCHR within 365 days of an alleged violation and exhaust the administrative remedies provided by the Act before a civil action asserting discrimination may be brought") (citing § 760.11, Fla. Stat. (2010); *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002)); *see also Orange Cty. v. McLean*, 45 Fla. L. Weekly 745 (Fla. 5th DCA 2020) (stating that "[a]s a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to file a

complaint with the FCHR . . . within 365 days of the alleged violation.") (citing § 760.11(1), Fla. Stat. (1999)); *accord Sheridan v. State, Dep't of Health*, 182 So. 3d 787, 789 (Fla. 1st DCA 2016) (stating that "[p]rior to filing a civil action alleging discrimination in violation of the FCRA, the individual seeking relief must . . . exhaust the administrative remedies provided by the FCRA.") (citing § 760.11(1), (4), Fla. Stat. (2012)).

The purpose of the exhaustion requirement "is to notify the employer of discriminatory practices and to provide the FCHR with 'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Sunbeam TV Corp.*, 83 So. 3d at 874 (quoting *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1351 (S.D. Fla. 1999)).

Furthermore, it is well established that the allegations in a charge govern the scope of the pleadings. *Minix v. Jeld-Wen, Inc.,* 237 Fed. Appx. 578, 587 (11th Cir. 2007) (finding that "[t]he starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation . . ."); *Penaloza v. Target Corp.,* 549 Fed. Appx. 844, 848-49 (11th Cir. 2013) (stating that "[a] judicial complaint is limited by the scope of the EEOC investigation 'which can reasonably be expected to grow out of the charge of discrimination.'").

Defendants respectfully request that this Court dismiss the First Amended Complaint (A) in its entirety as pled against both Defendants because she failed to attach the Charge of Discrimination to her First Amended Complaint; and (B) in its entirety, with prejudice, as pled against World Omni because she failed to name World Omni in her Charge of Discrimination, instead asserting only claims against a different corporate entity.

### A.  Plaintiff Failed to Attach Her Charge to The First Amended Complaint

Plaintiff alleges that she filed a timely Charge of Discrimination and received a Right to Sue letter, but her pleading conveniently failed to state against *whom* she filed the charge.  Am. Compl. ¶ 11.  The Complaint on its face, fails to allege that Plaintiff filed a charge against either one of the named Defendants.  *See* Exhibit B.  On this ground alone, the First Amended Complaint should be dismissed.

In addition, Plaintiff failed to attach her Charge of Discrimination to the First Amended Complaint.  Because Plaintiff failed to attach a copy of her Charge, it is impossible at present to know whether Plaintiff has exhausted her administrative remedies, whether Plaintiff has asserted claims in this suit that impermissibly exceed the scope of the Charge, both of which determine whether Plaintiff even has the right to pursue her claims in court.  This failure, alone, warrants dismissal as a *per se* violation of Florida Rule of Civil Procedure 1.130.

Rule 1.130(a) provides, in pertinent part: "All bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading." *Id.*  It is well settled that "where a complaint is based on a written instrument, the complaint does not state a cause of action until the instrument or an adequate portion thereof is attached to or incorporated in the complaint." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001); *Safeco Ins. Co. of America v. Ware*, 401 So. 2d 1129 (Fla. 4th DCA 1981) (holding that where insurer provided insured with certified copy of insurance contract on which insured based allegations in his complaint, insured was required to attach policy to complaint or suffer dismissal of complaint); *Winn-Dixie Stores, Inc. v. Sams*, 281 So. 2d 47 (Fla. 3d DCA 1973) (finding it was the plaintiff's responsibility to provide to court any

documents on which alleged cause of action is based under the rule relating to attaching documents to pleading).

As stated previously, the allegations in a charge govern the scope of the pleadings and, accordingly, a charge of discrimination must be attached to the related complaint.  Plaintiff's failure to do so warrants a dismissal of the First Amended Complaint.  *Jones v. Sec'y, VA*, No. 6:17-cv-355-Orl-18GJK, 2017 U.S. Dist. LEXIS 89782, at *6 (M.D. Fla. May 15, 2017) (noting that dismissal was warranted where plaintiff failed to attach his charge of discrimination or allege that he timely presented his claim to the EEOC).

### B.  Plaintiff Failed to Name World Omni in Her Charge

Plaintiff's failure to attach the Charge, however, does not prohibit Defendants from attaching the Charge to this Motion and does not prohibit this Court from considering the Charge when considering this Motion.  *Booth v. City of Roswell*, 754 Fed. Appx. 834, 836 (11th Cir. 2018) (unpublished) (finding "a district court may consider a document attached to a motion to dismiss, without converting it to a motion for summary judgment, when the plaintiff refers to the document in his complaint, it is central to his claims, and there is no reasonable dispute as to the authenticity of the document.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

Plaintiff referred to the Charge in her First Amended Complaint, it is central to her claims, and there presently is no reasonable dispute as to its authenticity.  The Charge of Discrimination, attached hereto as Exhibit C, contains Plaintiff's notarized signature.  Accordingly, this Court may consider the Charge—without converting this Motion into a motion for summary judgment—which clearly shows that Plaintiff did not name World Omni in her Charge of Discrimination.

It is clear from the Charge that Plaintiff filed a Charge only against JM Family Enterprises, Inc., and **not** World Omni, which entity Plaintiff added as a named defendant for the first time in her First Amended Complaint.  *Compare* Exhibit A to Exhibit B.  "Generally, a party not named as a respondent in EEOC charge cannot be sued in a subsequent civil action." *Digiro v. Pall Corp.*, 993 F. Supp. 1471, 1473 (M.D. Fla.1998).  As stated herein, Plaintiff alleges no basis on which she should be permitted to proceed with discrimination claims against an entity she did not identify in her Charge.  Indeed, Plaintiff also does not state any reason why she would not have identified World Omni.  Accordingly, World Omni respectfully requests that the First Amended Complaint as pled against it be dismissed.  *See McClure v. Oasis Outsourcing II, Inc.*, 674 Fed. Appx. 873, 875 (11th Cir. 2016) (unpublished) (holding "the district court did not err in granting the motion to dismiss because the record did not demonstrate that McClure exhausted the administrative requirements. [. . .] Oasis, McClure's alleged employer, was not named in her EEOC charge of discrimination.  Instead, McClure's EEOC charge named 'Holiday Inn Express' as her employer and made no factual allegations concerning the conduct of Oasis or its employees in relation to the claim."); *Maxwell v. Dep't Juvenile Justice*, No. CV419-351, 2020 U.S. Dist. LEXIS 35943, at *3 (S.D. Ga. Jan. 2, 2020) ("Regardless of their classification, as these individuals were not included in plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission (EEOC), they cannot be brought in as defendants in this subsequent action.") .

## **CONCLUSION**

Plaintiff has failed to state sufficient facts to hold Defendants liable as joint employers or as a join enterprise, failing to even identify her direct employer.  Accordingly, the First Amended Complaint should be dismissed in its entirety.  Moreover, Plaintiff failed to exhaust her

CASE NO. CACE-20-010942

administrative remedies by not naming World Omni in her Charge of Discrimination. Accordingly, the First Amended Complaint should be dismissed, with prejudice, against World Omni.

Dated:  September 23, 2020                         Respectfully submitted,

                                        By:*Jenna Rinehart Rassif*
                                            Jenna Rinehart Rassif, Esq.
                                            Florida Bar No. 56855
                                            Email: *jenna.rassif@jacksonlewis.com*
                                            Valeria L. Hooker, Esq.
                                            Florida Bar No. 113688
                                            E-mail: *valerie.hooker@jacksonlewis.com*
                                            JACKSON LEWIS P.C.
                                            One Biscayne Tower, Suite 3500
                                            2 South Biscayne Boulevard
                                            Miami, Florida 33131
                                            Telephone: (305) 577-7600
                                            Facsimile: (305) 373-4466
                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on September 23, 2020, on all counsel of record on the service list below via transmission of Notices of Electronic Filing.

                                        *s/ Valerie L. Hooker*
                                        Valerie L. Hooker, Esq.

10

CASE NO. CACE-20-010942

## **SERVICE LIST**

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Yadhira Ramirez-Toro Esq.
Florida Bar No. 120506
E-mail: yramirez@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: *jenna.rassif@jacksonlewis.com*
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

4828-4213-6268, v. 3

11

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　　Plaintiff,　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　　）　　　Case No.:
　　　　　　　　　　　　　　　　　　　）
JM FAMILY ENTERPRISES, INC.,　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　　Defendant.　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
_____）

## COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendant JM FAMILY

ENTERPRISES, INC. ("Defendant") and alleges:

1.　　　This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys'

fees, and costs.

2.　　　This is an action to recover damages for discrimination and retaliation pursuant to

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq.* ("FCRA").

3.　　　Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.　　　Defendant is, and at all times mentioned was, a foreign profit corporation, having

its main place of business in Broward County, Florida.

5.　　　At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat.

§760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



1

6.     At all times material, Defendant was a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.     At all times material, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

8.     Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

9.     Plaintiff has complied with all conditions precedent in filing this action, to wit;

   a.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

   b.  Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

10.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## RELEVANT FACTS

11.    Plaintiff was hired by Defendant on or about October 14, 2014.

12.    At all times material, Plaintiff was employed by Defendant as a Customer Service Representative.

13.    During Plaintiff's employment with Defendant she excelled in her job performance, and was recognized for her outstanding work.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

2

14.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

15.     Plaintiff immediately informed her supervisors, including but not limited to  Jillian De Los Reyes, Audrey Demoss, and Rebecca Bell ("Bell"), of her diagnosis.

16.     Plaintiff was placed on short term disability as a result of her diagnosis.

17.     Plaintiff returned to work in or about October of 2018.

18.     Upon her return to work, Defendant's conduct toward Plaintiff was different than Defendant's conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Particularly, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

19.     Defendant's conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create an abusive working environment.

20.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

21.     Plaintiff complained to Bell about the bully, belittling, and micromanaging, but nothing was done. Defendant refused to act upon Plaintiff's complaints.

22.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

www.saenzanderson.com

SAENZ & ANDERSON
A T T O R N E Y S   A T   L A W

3

23.     Defendant denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendant responded by moving Plaintiff to a desk further away from the restroom.

24.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendant, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

25.     On or about June 7, 2019, Defendant terminated Plaintiff, allegedly because she violated a company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and  was clearly pretextual.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA – HOSTILE WORK ENVIRONMENT

26.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

27.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

28.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com

SAENZ & ANDERSON
A T T O R N E Y S   A T   L A W

4

29. At all times material, Plaintiff was qualified to perform the essential functions of her job.

30. Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Demoss talked down to Plaintiff and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

31. Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

32. The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create a discriminatorily abusive working environment.

33. Defendant, as Plaintiff's employer, was responsible for maintaining a working environment free from unwelcomed harassment and abuse.

34. The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

35. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

5

36.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

37.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

<div align="center"><strong><u>PRAYER FOR RELIEF</u></strong></div>

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<div align="center"><strong><u>JURY TRIAL DEMAND</u></strong></div>

Plaintiff demands trial by jury of all issues triable as of right by jury.

<div align="center"><strong>COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA –<br>DISPARATE TREATMENT</strong></div>

38.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

<div align="center">www.saenzanderson.com</div>



6

39.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

40.    At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

41.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

42.    Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

43.    Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

44.    The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

45.    As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

46.    Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

www.saenzanderson.com



47.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

G. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

H. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K. Award Plaintiff reasonable costs and attorney's fees; and

L. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA – FAILURE TO ACCOMMODATE

48.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

49.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

www.saenzanderson.com



50.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

51.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

52.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

53.     Defendant denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

54.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendant.

55.     The accommodations requested by Plaintiff were reasonable.

56.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

57.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

58.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

9

59.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

60.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

61.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION

www.saenzanderson.com



10

62.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

63.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

64.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

65.     Plaintiff engaged in a protected activity when she complained to Bell about being bully, belittling, and micromanaging because of her disability.

66.     Defendant intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff continuously requested reasonable accommodations from Defendant.

67.     Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

68.     The retaliation of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

69.     As a direct and proximate result of the intentional violations by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

70.     Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

www.saenzanderson.com



11

71.    The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: July 7, 2020.                                  Respectfully submitted,

                                                      **By: /s/ Tanesha Blye**
                                                      Tanesha Blye, Esquire
                                                      Fla. Bar No.: 0738158
                                                      Email: tblye@saenzanderson.com

                                                      Yadhira Ramirez-Toro, Esquire
                                                      Fla. Bar No.: 120506
                                                      Email: yramirez@saenzanderson.com

                                                      R. Martin Saenz, Esquire

                          www.saenzanderson.com



Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



13

# EXHIBIT B

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,                          )
                                               )
                  Plaintiff,                   )
                                               )
v.                                             )        Case No.: CACE-20-010942
                                               )
JM FAMILY ENTERPRISES, INC. and                )
WORLD OMNI FINANCIAL CORP.,                    )
                                               )
                  Defendants.                  )
_____)

### FIRST AMENDED COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendants JM FAMILY

ENTERPRISES, INC. and WORLD OMNI FINANCIAL CORP. ("Defendants") and alleges:

1.      This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys'

fees, and costs.

2.      This is an action to recover damages for discrimination and retaliation pursuant to

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq.* ("FCRA").

3.      Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.      Defendants are, and at all times mentioned was, a foreign profit corporation, having

its main place of business in Broward County, Florida.

5.      At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat.

§760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



SAENZ & ANDERSON
A T T O R N E Y S   A T   L A W

1

6.      At all times material, Defendants were a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.      At all times material, Defendants employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

8.      The Defendants share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies. The Defendants are therefore joint employers. Alternatively, each company is an enterprise under the FLSA.

9.      Each Defendant is sued individually, as a joint enterprise, as joint employers, and as agent of each other.

10.     Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

11.     Plaintiff has complied with all conditions precedent in filing this action, to wit;

    a.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

    b.  Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

12.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

2

## RELEVANT FACTS

13.     Plaintiff was hired by Defendants on or about October 14, 2014.

14.     At all times material, Plaintiff was employed by Defendants as a Customer Service Representative.

15.     During Plaintiff's employment with Defendants, she excelled in her job performance, and was recognized for her outstanding work.

16.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

17.     Plaintiff immediately informed her supervisors, including but not limited to Jillian De Los Reyes, Audrey Demoss, and Rebecca Bell ("Bell"), of her diagnosis.

18.     Plaintiff was placed on short term disability as a result of her diagnosis.

19.     Plaintiff returned to work in or about October of 2018.

20.     Upon her return to work, Defendants' conduct toward Plaintiff was different than Defendants' conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Particularly, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

21.     Defendants' conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create an abusive working environment.

22.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

www.saenzanderson.com



3

23.     Plaintiff complained to Bell about the bully, belittling, and micromanaging, but nothing was done. Defendants refused to act upon Plaintiff's complaints.

24.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

25.     Defendants denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendants responded by moving Plaintiff to a desk further away from the restroom.

26.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendants, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

27.     On or about June 7, 2019, Defendants terminated Plaintiff, allegedly because she violated a company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and  was clearly pretextual.

### COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA – HOSTILE WORK ENVIRONMENT

28.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

www.saenzanderson.com



29. Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

30. At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

31. At all times material, Plaintiff was qualified to perform the essential functions of her job.

32. Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Demoss talked down to Plaintiff and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

33. Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

34. The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create a discriminatorily abusive working environment.

35. Defendants, as Plaintiff's employer, were responsible for maintaining a working environment free from unwelcomed harassment and abuse.

36. The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

37.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

38.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

39.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA –

www.saenzanderson.com



6

## DISPARATE TREATMENT

40.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

41.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

42.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

43.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

44.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

45.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

46.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

47.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

48.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

49.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

G.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

H.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K.  Award Plaintiff reasonable costs and attorney's fees; and

L.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA –
## FAILURE TO ACCOMMODATE

50.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

www.saenzanderson.com



8

51.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

52.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

53.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

54.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

55.     Defendants denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

56.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendants.

57.     The accommodations requested by Plaintiff were reasonable.

58.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

59.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

www.saenzanderson.com



60.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

61.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

62.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

63.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

www.saenzanderson.com



10

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION

64.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 27 above as if set out in full herein.

65.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

66.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

67.     Plaintiff engaged in a protected activity when she complained to Bell about being bully, belittling, and micromanaging because of her disability.

68.     Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff continuously requested reasonable accommodations from Defendants.

69.     Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

70.     The retaliation of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

71.     As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

72. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

73. The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: August 11, 2020.                         Respectfully submitted,

                                                **By: /s/ Tanesha Blye**
                                                Tanesha Blye, Esq.
                                                Fla. Bar No.: 0738158

www.saenzanderson.com



12

Email: tblye@saenzanderson.com

Aron Smukler, Esq.
Fla. Bar No.: 0297779
Email: asmukler@saenzanderson.com

R. Martin Saenz, Esq.
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

# EXHIBIT C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2020-00457 |

| Florida Commission On Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Aude J Raphael** | **(954) 636-9490** | **12/12/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Saenz & Anderson, 20900 NE 30th Ave., Ste. 800, Aventura, FL 33180 (msaenz@saenzanderson.com)** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **JM FAMILY ENTERPRISES, INC.** | **100+** | **(954) 429-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Jim Moran Blvd, Deerfield Beach, FL 33442** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10/2018**   Latest **6/7/2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 28-year-old black, Haitian woman. I began working for the Respondent on or about October 14, 2014 as a customer service representative. I was diagnosed with multiple sclerosis in 2017 and placed on short term disability at work. On October 2018, after I returned from a FMLA leave and hospitalization related to my illness, I began to feel micromanaged.

In addition, my health condition deteriorated, and I requested certain accommodations at work, which were denied. Specifically, I requested to park closer to the building where I worked because I could only walk with difficulty and with the help of a walker. Respondent said "no". I also requested to work from home, and this request was also denied. White/non-Haitian employees and non-disabled employees who perform similar work as I do are permitted to work from home and are allowed to park their cars close to their offices.

In my short tenure with the Respondents, I quickly became a Senior Customer Representative (SCR) and my pay increased accordingly. However, since my return from FMLA leave due to my disability (multiple sclerosis), I have been written up on various occasions allegedly because I was working too slow and was not being productive, which was not true. I complained about this.

On or about June 7, 2019 Respondent terminated my employment because I allegedly failed to include "correction letters" with certain correspondence.

I believe Respondent discriminated and retaliated against me because of my national origin, race and disability (or perceived disability) in violation of Title VII of the Civil Rights Act of 1964, as amended; the American With Disabilities Act, 42 U.S.C. §12101 *et seq.*; and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>10/22/19<br>Date   Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

RECEIVED
OCT 22 2019
EEOC-MIAMI DISTRICT OFFICE

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL )
)
       Plaintiff, )
)
v. )
)
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP. )
)
      Defendants. )
_____ )

## NOTICE OF HEARING (ZOOM CONFERENCE) [1]
### (SPECIAL SET – 15 MINUTES)

**TO:** Tanesha Blye, Esq.
Aron Smukler, Esq.
R. Martin Saenz, Esq.
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue
Suite 800
Aventura, Florida 33180

      PLEASE TAKE NOTICE that the above-captioned case will be called up for a hearing on:

***Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*** as follows:

| | |
|---|---|
| **BEFORE**: | **The Honorable Carol-Lisa Phillips** |
| **AT:** | **Dial-In Location: +1 646 876 9923 US (New York)** |
| | **Zoom Meeting ID: 975 531 891** |
| **DATE**: | **November 5, 2020** |
| **TIME**: | **11:00 to 11:15 a.m.** |

---

[1] **Please see attached Zoom meeting information for Judge Carol-Lisa Phillips' hearings.**

CASE NO: CACE-20-010942

## CERTIFICATE OF GOOD FAITH

Defendant's counsel has conferred with Plaintiff's counsel regarding the relief requested.

The parties were unable to agree on all relief requested.

Dated:  September 29, 2020

<div align="center">

Respectfully submitted,

</div>

By:*s/Jenna Rinehart Rassif*
Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
Email: *jenna.rassif@jacksonlewis.com*
Valeria L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on

September 29, 2020, on all counsel of record on the service list below via transmission of Notices

of Electronic Filing.

*s/ Valerie L. Hooker*
Valerie L. Hooker, Esq.

<div align="center">2</div>

CASE NO: CACE-20-010942

**<u>SERVICE LIST</u>**

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
Florida Bar No. 0297779
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: *jenna.rassif@jacksonlewis.com*
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

CASE NO: CACE-20-010942

**Please FOLLOW the instructions below to join the
Court's ZOOM video conference.**
**INVITATION AND INSTRUCTIONS TO JOIN JUDGE PHILLIPS' HEARING DOCKET VIA
ZOOM VIDEO CONFERENCE:**
**Judge Carol-Lisa Phillips is inviting you to a scheduled Zoom meeting.**
**Topic: Judge Phillips' Hearing Docket**
**Join Zoom Meeting: https://17thflcourts.zoom.us/j/975531891**
**Meeting ID: 975 531 891**

**ALL ZOOM MEETINGS NOW INCLUDE TOLL FREE NUMBERS FOR
PARTICIPANTS CALLING IN BY PHONE**
Any participants joining Zoom via Phone Numbers,
for them to Mute or UnMute themselves they must
press *6 on their phone.

**(888) 475-4499 US Toll-free,**
**(833) 548-0276 US Toll-free,**
**(833) 548-0282 US Toll-free,**
**(877) 853-5257 US Toll-free**
**Meeting ID: 975 531 891**
**Find your local number: https://17thflcourts.zoom.us/u/adieWbD2wt**
**Please Note:** If you do not wish to appear by ZOOM Video or do not have the technology, you may appear
by phone by dialing in with one of the numbers provided above or by finding your Local Number and using
the Meeting ID Code.
**For help joining a ZOOM Video Conference, please use the following link:**

- Joining a meeting

**For Hearings Requiring Court Reporters:**
**Parties who desire a Court Reporter will make the necessary arrangements with the Court
Reporter to appear by ZOOM Video Conference.**

- **The Court Reporter will announce their presence.**
- **Any witness(es) or interpreter will announce their presence, the attorneys must ensure a person
authorized to give oaths is present.**
- See Supreme Court of Florida, Administrative Order No. AOSC20-16.

ANNOUNCEMENT DIRECTED TO ALL PERSONS APPEARING BY ZOOM VIDEO
CONFERENCE:
**In times like these the need for professionalism is even more paramount.  Many of us are experiencing
multi-party video hearings for the first time.**
**PLEASE:**
**1) Be considerate and let others finish making their arguments/thoughts without interruption before
responding.**
**2) State your name before you begin to speak, especially in multi-party hearings and when a court
reporter is in attendance. 3) Please be patient, especially on Uniform Motion Calendar, the Court is
attending to multiple matters at the same time.**
**4) Mute your phone and please be mindful of background noise when you are not speaking.**
**5) When attending hearings via ZOOM Video, please remember that you are on camera and everyone
involved can see you.  If you do not want to be seen you can click on the icon to just attend via audio.
Thank you for your cooperation.  We hope you and your families remain healthy and safe.**
4825-1804-3597, v. 1

4

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,                    )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )
                                         )        Case No.: CACE-20-010942
JM FAMILY ENTERPRISES, INC. and          )
WORLD OMNI FINANCIAL CORP.,              )
                                         )
            Defendants.                  )
_____)

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, AUDE JESSICA RAPHAEL ("Plaintiff" or "Raphael"), by and through undersigned counsel, hereby files this Response in Opposition to Defendants' JM FAMILY ENTERPRISES, INC. and WORLD OMNI FINANCIAL CORP. (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum of Law in Support Thereof, and alleges:

**INTRODUCTION**

Plaintiff was hired by Defendants on October 14, 2014 as a Customer Service Representative. In May of 2017, Plaintiff was diagnosed with multiple sclerosis. Plaintiff immediately informed her supervisors, including but not limited to Jillian De Los Reyes ("De Los Reyes"), Audrey Demoss ("Demoss"), and Rebecca Bell ("Bell"), of her diagnosis. As a result, she was placed on short term disability. Plaintiff returned to work in October of 2018. However, upon her return to work, Defendants created an abusive work environment for Plaintiff and treated Plaintiff very poorly because of her handicap. Demoss began bullying, belittling, and

1

micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Demoss continued to make disparaging remarks related to Plaintiff's debilitated condition and talk down to Plaintiff on a constant basis. When Plaintiff complained to Bell about the bullying, Defendants refused to act upon Plaintiff's complaints.

Plaintiff requested certain accommodations, including to either work from home, or to be assigned a closer parking spot and moved to a desk closer to the restroom to minimize the amount that she would have to walk. Instead of accommodating these simple and reasonable requests, Defendants responded by maliciously moving Plaintiff to a desk even further away from the restroom. Defendants terminated Plaintiff in June of 2019, for an alleged violation of company policy. This alleged violation was never brought to Plaintiff's attention prior to her termination and was obviously pretextual.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2019. On May 7, 2020, Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation. On July 7, 2020, Plaintiff filed the initial complaint, alleging discrimination and retaliation against JM FAMILY ENTERPRISES, INC. pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"). Plaintiff then filed her First Amended Complaint on August 11, 2020, adding WORLD OMNI FINANCIAL CORP. as a defendant. Defendants have since filed the Motion to Dismiss Plaintiff's First Amended Complaint (Defendants' "Motion"), because: (1) the First Amended Complaint supposedly fails to state a basis upon which to hold Defendants liable as a joint enterprise or as joint employers; and (2) Plaintiff allegedly did not sufficiently exhaust her administrative remedies against Defendant WORLD OMNI FINANCIAL CORP. However, for the reasons stated in the Plaintiff's Response ("Response") below, Defendants' Motion should be denied.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must accept the allegations in the complaint as true and consider them in the light most favorable to the plaintiff. *Vienneau v. Metropolitan Life Ins. Co.*, 548 So.2d 856, 858 (Fla. 4th DCA 1989); *Shumrak v. Broken Sound Club Inc.*, 898 So.2d 1018, 1020 (Fla. 4th DCA 2005); *Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So.2d 843, 845 (Fla. 4th DCA 2004); *Seminole Tribe of Florida v. Times Pub. Co., Inc.*, 780 So.2d 310, 311 (Fla. 4th DCA 2001). Motions to dismiss pursuant to Rule 1.140(b)(6) should be granted only when the party seeking dismissal has conclusively demonstrated that plaintiff could prove no set of facts whatsoever in support of the cause of action. See *Ingalsbe v. Stewart Agency, Inc.*, 869 So.2d 30, 35 (Fla. 4th DCA 2004); *Morris v. Fla. P. & L. Co.*, 753 So.2d 153, 154 (Fla. 4th DCA 2000); *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA 1981); *Martin v. Highway Equipment Supply Co.*, 172 So.2d 246, 248 (Fla. 2d DCA 1965); *Almarante v. Art Institute of Fort Lauderdale, Inc.*, 921 So. 2d 703, 704-705 (Fla. 4th DCA 2006). In fact, by filing a motion to dismiss under Rule 1.140(b)(6), the defendant admits all well pleaded facts as true, as well as reasonable inferences arising from those facts. *Vienneau v. Metropolitan Life Ins. Co.*, *supra*, cited in *Salit v. Ruden, McClosky, Smith, Schuster*, 742 So. 2d 381 (Fla. 4th DCA 1999).

A motion to dismiss, filed pursuant to Florida Rule of Civil Procedure 1.140(b)(6), tests the legal sufficiency of a complaint to state a cause of action and is not intended to determine issues of ultimate fact. *McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss*, 704 So. 2d 214, 215 (Fla. 2d DCA 1998); *See, Holland v. Anheuser Busch, Inc.*, 643 So. 2d 621, 623 (Fla. 2d DCA 1994). Therefore, in ruling on a motion to dismiss a complaint for failure to state cause of action, the trial court must confine itself strictly to the allegations within the four corners of the complaint. *McWhirter*, 704 So. 2d at 215. To survive a motion to dismiss, a

complaint must allege a prima facie case. *Alvarez, et al. v. E&A Produce Corp.*, 708 So. 2d 997, 999–1000 (Fla. 3d DCA 1998). Whether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact, excluding the bare conclusions of the plaintiff. *Id*.

## MEMORANDUM OF LAW

### I.    WHETHER THE DEFENDANTS SATISFY THE JOINT EMPLOYER OR JOINT ENTERPRISE STATUS SHOULD BE DETERMINED BY SUMMARY JUDGMENT

Defendants miss the mark in their contention that the Plaintiff's First Amended Complaint should be dismissed due to Plaintiff's alleged failure to set forth facts alleging the joint employer or joint enterprise status of Defendants. As Defendants point out in their Motion, Florida courts look to federal case-law when determining "whether separate but related entities should be aggregated for purposes of employment and labor statutes." See *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593 (Fla. 3d DCA 2009) (citing *Martinolich v. Golden Leaf Mgmt.*, 786 So. 2d 613, 614 (Fla. 3d DCA 2001)). However, federal courts have frequently ruled that a determination of joint employer status may not be made at the motion to dismiss stage. *Roundtree v. Tegna, Inc.*, 2020 U.S. Dist. LEXIS 141976, at *8 (M.D. Fla. 2020).

The standard applied by the Eleventh Circuit in joint employment cases requires the court to examine (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Downie v. BF Weston, LLC*, 2016 U.S. Dist. LEXIS 181542, at *9 (S.D. Fla. 2016) (citing *Lyes v. Riviera Beach, Florida*, 166 F.3d 1332, 1341 (11th Cir. 1999)). In *Downie*, the court recognized that a determination as to whether or not the plaintiff's complaint adequately alleges a joint employment relationship is one that "requires a factual inquiry that is best left until an adequate record is developed." *Downie*, at *9. Courts have generally followed this notion that such a decision requires a factual inquiry that is

best left until the adequate record is developed. See *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (holding that whether or not joint employment exists is a factual question.); *Kaiser v. Trofholz Technologies, Inc.*, 935 F.Supp.2d 1286, 1293 (M.D. Ala. 2013) (finding that a determination of joint employment is best addressed "after the parties have had an opportunity to uncover facts through discovery to support or refute this claim").

Courts will typically only rule otherwise in situations where the plaintiff completely fails to address the joint employer factors in its factual allegations. See *Roundtree*, at *9. In *Roundtree*, the plaintiff filed a complaint including violations under the FCRA and named two defendants to be held liable under a joint employer theory. *Roundtree*, at *8. The plaintiff argued that, under *Downie*, a determination of joint employer status may not be made at the motion to dismiss stage. *Id.* However, the court ultimately sided with the defendant, because the plaintiff failed to assert any factual allegations even remotely addressing the joint employer factors." *Id.*

The present case distinguishes itself from that of *Roundtree*. Unlike in *Roundtree*, where the plaintiff's complaint was completely devoid of facts relating to joint employer status, the Plaintiff's First Amended Complaint makes several significant references to the issue. The First Amended Complaint addressed several facts, including that the two Defendants, "share employees and/or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies." *See* Am. Compl. ¶ 8. Consequently, Plaintiff has asserted the requisite factual allegations in its First Amended Complaint needed to survive a motion to dismiss.

## II.   PLAINTIFF SUFFICIENTLY ALLEGED THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES

In their Motion, Defendants wrongfully assert that the disability discrimination and retaliation claims brought in Plaintiff's First Amended Complaint should be dismissed for

Plaintiff's failure to exhaust her administrative remedies. Defendants' claim that Plaintiff failed to exhaust her administrative remedies is based upon the following to premises: (1) Plaintiff failed to attach the Charge of Discrimination to her First Amended Complaint and (2) Plaintiff failed to name Defendant WORLD OMNI FINANCIAL CORP. ("World Omni") in her Charge of Discrimination.

As a preliminary matter, Defendants' argument that Plaintiff failed to exhaust her administrative remedies also lacks merit because the U.S. Supreme Court recently held that the obligation imposed on plaintiffs alleging discrimination under Title VII to file charges with the EEOC or similar state agencies is not a jurisdictional prescription delineating the adjudicatory nature of the courts, but is instead a mandatory claims-processing rule. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1845 (2019) ("Title VII's charge-filing requirement is not jurisdictional").

### A.     Plaintiff Was Not Required to Attach Her Charge to The First Amended Complaint

Defendants first contend that Plaintiff's First Amended Complaint should be dismissed because it fails to state against *whom* Plaintiff filed her Charge of Discrimination. However, Defendants fail to cite any authority to support its argument that Plaintiff must specifically allege against *whom* Plaintiff filed her Charge of Discrimination against. The First Amended Complaint specifically states that Plaintiff timely filed a Charge of Discrimination with the EEOC and was issued a Notice of Suit Rights "as to all charges of discrimination and retaliation." *See* Am. Compl. ¶ 11. The claims in Plaintiff's EEOC Charge of Discrimination are directly related to the discrimination and retaliation experienced by the Plaintiff during her time as an employee for Defendants. Accordingly, Defendants' initial argument fails.

Second, Defendants assert that the First Amended Complaint should be dismissed because Plaintiff failed to attach the Charge of Discrimination. In support, Defendants rely on Florida Rule

of Civil Procedure 1.130(a), which provides: "All bonds, notes bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading." Defendants also cite to case law stating that "where a complaint is based on a written instrument," the complaint does not state a cause of action unless the instrument or an adequate portion thereof is attached to or incorporated in the complaint. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001).

However, courts have adopted the "incorporation by reference" doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) (citing *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). Courts have found "undisputed," in this context to mean that the authenticity of the document is not challenged. *Horsley*, 304 F.3d at 1134 (citing *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

Courts have similarly recognized the doctrine of "incorporation by reference," and have subsequently taken judicial notice in resolving a motion to dismiss. *Smith v. City of Atlantic Beach*, 2020 U.S. Dist. LEXIS 24381, at *3 (M.D. Fla. 2020) ("Because the EEOC Charges and Right-to-Sue Notice are part of the EEOC's administrative record and not subject to reasonable dispute, the Court will take judicial notice of these documents."). In doing so, courts have allowed plaintiffs

to supplement their responses with the EEOC documentation addressed in the defendant's motion to dismiss. *Smith*, at *2.

In the instant case, the EEOC Charge of Discrimination and Notice of Suit Rights are both (1) central to the Plaintiff's claim; and (2) undisputed. Such documentation is central to the Plaintiff's claim because the exhaustion of administrative remedies is required in order to bring a claim under the FCRA. Additionally, the documents are "undisputed" because they are from the EEOC's administrative record, which is not subject to reasonable dispute.

As a result, the Plaintiff has attached the EEOC Charge of Discrimination and Notice of Suit Rights to this Response. *See* EEOC Charge of Discrimination, attached hereto as **Exhibit "A,"** Notice of Suit Rights, attached hereto as **Exhibit "B**." Accordingly, Defendants' claim that Plaintiff's failure to attach the Charge of Discrimination warrants a dismissal of this action is unsubstantiated.

**B.    World Omni Should Not Be Protected By Procedural Technicalities**

Furthermore, Defendants inaccurately claim that the First Amended Complaint should be dismissed due to the fact that Defendant World Omni was not named in Plaintiff's Charge of Discrimination.

Prior to filing suit under Title VII or the FCRA, an individual must first exhaust their administrative remedies by filing a Charge with the EEOC. *Gregory v. Ga. Dep't of Human. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). One of the purposes of this exhaustion requirement is to ensure that the EEOC has the opportunity to investigate the allegations stated in the Charge. *Wu v. Thomas,* 863 F.2d 1543, 1548 (11th Cir. 1989). The ensuing judicial complaint is thereafter limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the Charge. *Gregory*, 355 F.3d at 1280. However, Courts are "extremely reluctant to allow procedural

8

technicalities to bar claims brought under [Title VII]." *Id*. As such, "the scope of an EEOC complaint should not be strictly interpreted" and a judicial complaint may encompass any kind of discrimination like or related to the allegations contained in the charge. *Id*. In fact, courts are "extremely reluctant" to bar discrimination claims based on procedural technicalities and will allow judicial claims that "amplify, clarify, or more clearly focus" the allegations brought by the EEOC complaint. *Id.* at 1279.

Although a party not named in an EEOC Charge may generally not be sued in a later civil action, an unnamed party may still be sued in a civil action arising from that Charge when necessary to fulfill the purposes of Title VII. *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010). The naming precondition therefore "must be *liberally construed*" and the unnamed party may still be sued if doing so fulfills the purposes of Title VII. *Id* (emphasis added). In analyzing whether the purposes of Title VII are met, this Court considers several factors, including:

> (1) the similarity of interest between the named party and the unnamed party;
> (2) whether the plaintiff could have ascertained the identity of the unnamed
> party at the time the EEOC charge was filed; (3) whether the unnamed parties
> received adequate notice of the charges; (4) whether the unnamed parties had
> an adequate opportunity to participate in the reconciliation process; and (5)
> whether the unnamed party actually was prejudiced by its exclusion from the
> EEOC proceedings.

*Id* at 456-457. These factors are not meant to impose a "rigid test," and other factors may be relevant depending on the specific facts of the case. *Id* at 457. For example, one additional factor this Court has considered is whether an investigation of the unnamed party could have reasonably grown out of the EEOC charge. *Id*. This additional factor "weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge." *Id*.

For example, in *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1359 (11th Cir. 1994), the plaintiff only named two entities, Sterling Group, Inc. ("Sterling Group") and Sheraton Ocean Inn ("Sheraton Ocean") in her EEOC Charge of Discrimination. However, the plaintiff failed to identify Riviera Beach Associates, Inc. ("Riviera Beach") (the company contracted by Sheraton Ocean to manage the hotel) in the Charge. *Id*. The Appellate Court found that Riviera Beach "was a closely related entity since it is the sole owner of the Sheraton Ocean Inn" and that two other parties who were general partners in the Riviera Beach Limited Partnership were "functionally identical to the partnership and should not be protected by the naming requirement." *Id*.

In the present case, World Omni should not be protected by the naming requirement because: (1) Plaintiff was hired, compensated, and employed by World Omni; (2) "JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp" [*see World Omni Financial Corp.*, http://www.worldomni.com (last visited October 29, 2020), attached hereto as **Exhibit "C,"** *see also Contact Us*, JM Family Enterprises, https://jmfamily.com/contact (last visited October 29, 2020), attached hereto as **Exhibit "D"**]; (3) Defendants' principal address is within 0.2 miles of each other, and share the same registered agent and substantially similar board members [*see Detail by Entity Name*, Sunbiz, http://search.sunbiz.org/Inquiry/CorporationSearch/ByName (last visited November 2, 2020), attached hereto as **Composite Exhibit "E"**]; and (4) Defendants share employees and/or interchange employees, work in the direct interest of one another, and their employees are in the common control of both companies. As such, an investigation of World Omni likely grew out of Plaintiff's EEOC charge.

Accordingly, barring Plaintiff's First Amended Complaint because of a minute technicality (i.e., Plaintiff only listing one entity in the EEOC Charge) would be unduly burdensome and circumvent the purposes of Title VII.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss should be denied.

Dated: November 2, 2020.                          Respectfully submitted,

**Aron Smukler**
Aron Smukler, Esq. (FBN: 297779)
E-mail: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using the Florida E-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the Florida E-Filing Portal or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: **Aron Smukler**

## SERVICE LIST
**Aude Jessica Raphael v. JM Family Enterprises, Inc. and World Omni Financial Corp.
Case No.: CACE-20-010942**

R. Martin Saenz, Esq.
Email: msaenz@saenzanderson.com
Tanesha Blye, Esq.
Email: tblye@saenzanderson.com
Aron Smukler, Esq.
Email: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

Jenna Rinehart Rassif, Esq.
Email: jenna.rassif@jacksonlewis.com
Valerie L. Hooker, Esq.
Email: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Counsel for Defendants*

micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Demoss continued to make disparaging remarks related to Plaintiff's debilitated condition and talk down to Plaintiff on a constant basis. When Plaintiff complained to Bell about the bullying, Defendants refused to act upon Plaintiff's complaints.

Plaintiff requested certain accommodations, including to either work from home, or to be assigned a closer parking spot and moved to a desk closer to the restroom to minimize the amount that she would have to walk. Instead of accommodating these simple and reasonable requests, Defendants responded by maliciously moving Plaintiff to a desk even further away from the restroom. Defendants terminated Plaintiff in June of 2019, for an alleged violation of company policy. This alleged violation was never brought to Plaintiff's attention prior to her termination and was obviously pretextual.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2019. On May 7, 2020, Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation. On July 7, 2020, Plaintiff filed the initial complaint, alleging discrimination and retaliation against JM FAMILY ENTERPRISES, INC. pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"). Plaintiff then filed her First Amended Complaint on August 11, 2020, adding WORLD OMNI FINANCIAL CORP. as a defendant. Defendants have since filed the Motion to Dismiss Plaintiff's First Amended Complaint (Defendants' "Motion"), because: (1) the First Amended Complaint supposedly fails to state a basis upon which to hold Defendants liable as a joint enterprise or as joint employers; and (2) Plaintiff allegedly did not sufficiently exhaust her administrative remedies against Defendant WORLD OMNI FINANCIAL CORP. However, for the reasons stated in the Plaintiff's Response ("Response") below, Defendants' Motion should be denied.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must accept the allegations in the complaint as true and consider them in the light most favorable to the plaintiff. *Vienneau v. Metropolitan Life Ins. Co.*, 548 So.2d 856, 858 (Fla. 4th DCA 1989); *Shumrak v. Broken Sound Club Inc.*, 898 So.2d 1018, 1020 (Fla. 4th DCA 2005); *Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So.2d 843, 845 (Fla. 4th DCA 2004); *Seminole Tribe of Florida v. Times Pub. Co., Inc.*, 780 So.2d 310, 311 (Fla. 4th DCA 2001). Motions to dismiss pursuant to Rule 1.140(b)(6) should be granted only when the party seeking dismissal has conclusively demonstrated that plaintiff could prove no set of facts whatsoever in support of the cause of action. See *Ingalsbe v. Stewart Agency, Inc.*, 869 So.2d 30, 35 (Fla. 4th DCA 2004); *Morris v. Fla. P. & L. Co.*, 753 So.2d 153, 154 (Fla. 4th DCA 2000); *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA 1981); *Martin v. Highway Equipment Supply Co.*, 172 So.2d 246, 248 (Fla. 2d DCA 1965); *Almarante v. Art Institute of Fort Lauderdale, Inc.*, 921 So. 2d 703, 704-705 (Fla. 4th DCA 2006). In fact, by filing a motion to dismiss under Rule 1.140(b)(6), the defendant admits all well pleaded facts as true, as well as reasonable inferences arising from those facts. *Vienneau v. Metropolitan Life Ins. Co.*, *supra*, cited in *Salit v. Ruden, McClosky, Smith, Schuster*, 742 So. 2d 381 (Fla. 4th DCA 1999).

A motion to dismiss, filed pursuant to Florida Rule of Civil Procedure 1.140(b)(6), tests the legal sufficiency of a complaint to state a cause of action and is not intended to determine issues of ultimate fact. *McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss*, 704 So. 2d 214, 215 (Fla. 2d DCA 1998); *See, Holland v. Anheuser Busch, Inc.*, 643 So. 2d 621, 623 (Fla. 2d DCA 1994). Therefore, in ruling on a motion to dismiss a complaint for failure to state cause of action, the trial court must confine itself strictly to the allegations within the four corners of the complaint. *McWhirter*, 704 So. 2d at 215. To survive a motion to dismiss, a

complaint must allege a prima facie case. *Alvarez, et al. v. E&A Produce Corp.*, 708 So. 2d 997, 999–1000 (Fla. 3d DCA 1998). Whether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact, excluding the bare conclusions of the plaintiff. *Id*.

## MEMORANDUM OF LAW

I.  **WHETHER THE DEFENDANTS SATISFY THE JOINT EMPLOYER OR JOINT ENTERPRISE STATUS SHOULD BE DETERMINED BY SUMMARY JUDGMENT**

Defendants miss the mark in their contention that the Plaintiff's First Amended Complaint should be dismissed due to Plaintiff's alleged failure to set forth facts alleging the joint employer or joint enterprise status of Defendants. As Defendants point out in their Motion, Florida courts look to federal case-law when determining "whether separate but related entities should be aggregated for purposes of employment and labor statutes." See *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593 (Fla. 3d DCA 2009) (citing *Martinolich v. Golden Leaf Mgmt.*, 786 So. 2d 613, 614 (Fla. 3d DCA 2001)). However, federal courts have frequently ruled that a determination of joint employer status may not be made at the motion to dismiss stage. *Roundtree v. Tegna, Inc.*, 2020 U.S. Dist. LEXIS 141976, at *8 (M.D. Fla. 2020).

The standard applied by the Eleventh Circuit in joint employment cases requires the court to examine (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Downie v. BF Weston, LLC*, 2016 U.S. Dist. LEXIS 181542, at *9 (S.D. Fla. 2016) (citing *Lyes v. Riviera Beach, Florida*, 166 F.3d 1332, 1341 (11th Cir. 1999)). In *Downie*, the court recognized that a determination as to whether or not the plaintiff's complaint adequately alleges a joint employment relationship is one that "requires a factual inquiry that is best left until an adequate record is developed." *Downie*, at *9. Courts have generally followed this notion that such a decision requires a factual inquiry that is

4

best left until the adequate record is developed. See *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (holding that whether or not joint employment exists is a factual question.); *Kaiser v. Trofholz Technologies, Inc.*, 935 F.Supp.2d 1286, 1293 (M.D. Ala. 2013) (finding that a determination of joint employment is best addressed "after the parties have had an opportunity to uncover facts through discovery to support or refute this claim").

Courts will typically only rule otherwise in situations where the plaintiff completely fails to address the joint employer factors in its factual allegations. See *Roundtree*, at *9. In *Roundtree*, the plaintiff filed a complaint including violations under the FCRA and named two defendants to be held liable under a joint employer theory. *Roundtree*, at *8. The plaintiff argued that, under *Downie*, a determination of joint employer status may not be made at the motion to dismiss stage. *Id.* However, the court ultimately sided with the defendant, because the plaintiff failed to assert any factual allegations even remotely addressing the joint employer factors." *Id.*

The present case distinguishes itself from that of *Roundtree*. Unlike in *Roundtree*, where the plaintiff's complaint was completely devoid of facts relating to joint employer status, the Plaintiff's First Amended Complaint makes several significant references to the issue. The First Amended Complaint addressed several facts, including that the two Defendants, "share employees and/or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies." *See* Am. Compl. ¶ 8. Consequently, Plaintiff has asserted the requisite factual allegations in its First Amended Complaint needed to survive a motion to dismiss.

## II.   PLAINTIFF SUFFICIENTLY ALLEGED THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES

In their Motion, Defendants wrongfully assert that the disability discrimination and retaliation claims brought in Plaintiff's First Amended Complaint should be dismissed for

Plaintiff's failure to exhaust her administrative remedies. Defendants' claim that Plaintiff failed to exhaust her administrative remedies is based upon the following to premises: (1) Plaintiff failed to attach the Charge of Discrimination to her First Amended Complaint and (2) Plaintiff failed to name Defendant WORLD OMNI FINANCIAL CORP. ("World Omni") in her Charge of Discrimination.

As a preliminary matter, Defendants' argument that Plaintiff failed to exhaust her administrative remedies also lacks merit because the U.S. Supreme Court recently held that the obligation imposed on plaintiffs alleging discrimination under Title VII to file charges with the EEOC or similar state agencies is not a jurisdictional prescription delineating the adjudicatory nature of the courts, but is instead a mandatory claims-processing rule. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1845 (2019) ("Title VII's charge-filing requirement is not jurisdictional").

### A.    Plaintiff Was Not Required to Attach Her Charge to The First Amended Complaint

Defendants first contend that Plaintiff's First Amended Complaint should be dismissed because it fails to state against *whom* Plaintiff filed her Charge of Discrimination. However, Defendants fail to cite any authority to support its argument that Plaintiff must specifically allege against *whom* Plaintiff filed her Charge of Discrimination against. The First Amended Complaint specifically states that Plaintiff timely filed a Charge of Discrimination with the EEOC and was issued a Notice of Suit Rights "as to all charges of discrimination and retaliation." *See* Am. Compl. ¶ 11. The claims in Plaintiff's EEOC Charge of Discrimination are directly related to the discrimination and retaliation experienced by the Plaintiff during her time as an employee for Defendants. Accordingly, Defendants' initial argument fails.

Second, Defendants assert that the First Amended Complaint should be dismissed because Plaintiff failed to attach the Charge of Discrimination. In support, Defendants rely on Florida Rule

of Civil Procedure 1.130(a), which provides: "All bonds, notes bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading." Defendants also cite to case law stating that "where a complaint is based on a written instrument," the complaint does not state a cause of action unless the instrument or an adequate portion thereof is attached to or incorporated in the complaint. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001).

However, courts have adopted the "incorporation by reference" doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) (citing *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). Courts have found "undisputed," in this context to mean that the authenticity of the document is not challenged. *Horsley*, 304 F.3d at 1134 (citing *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

Courts have similarly recognized the doctrine of "incorporation by reference," and have subsequently taken judicial notice in resolving a motion to dismiss. *Smith v. City of Atlantic Beach*, 2020 U.S. Dist. LEXIS 24381, at *3 (M.D. Fla. 2020) ("Because the EEOC Charges and Right-to-Sue Notice are part of the EEOC's administrative record and not subject to reasonable dispute, the Court will take judicial notice of these documents."). In doing so, courts have allowed plaintiffs

to supplement their responses with the EEOC documentation addressed in the defendant's motion to dismiss. *Smith*, at *2.

In the instant case, the EEOC Charge of Discrimination and Notice of Suit Rights are both (1) central to the Plaintiff's claim; and (2) undisputed. Such documentation is central to the Plaintiff's claim because the exhaustion of administrative remedies is required in order to bring a claim under the FCRA. Additionally, the documents are "undisputed" because they are from the EEOC's administrative record, which is not subject to reasonable dispute.

As a result, the Plaintiff has attached the EEOC Charge of Discrimination and Notice of Suit Rights to this Response. *See* EEOC Charge of Discrimination, attached hereto as **Exhibit "A,"** Notice of Suit Rights, attached hereto as **Exhibit "B**." Accordingly, Defendants' claim that Plaintiff's failure to attach the Charge of Discrimination warrants a dismissal of this action is unsubstantiated.

    **B.**    **World Omni Should Not Be Protected By Procedural Technicalities**

Furthermore, Defendants inaccurately claim that the First Amended Complaint should be dismissed due to the fact that Defendant World Omni was not named in Plaintiff's Charge of Discrimination.

Prior to filing suit under Title VII or the FCRA, an individual must first exhaust their administrative remedies by filing a Charge with the EEOC. *Gregory v. Ga. Dep't of Human. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). One of the purposes of this exhaustion requirement is to ensure that the EEOC has the opportunity to investigate the allegations stated in the Charge. *Wu v. Thomas,* 863 F.2d 1543, 1548 (11th Cir. 1989). The ensuing judicial complaint is thereafter limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the Charge. *Gregory*, 355 F.3d at 1280. However, Courts are "extremely reluctant to allow procedural

technicalities to bar claims brought under [Title VII]." *Id*. As such, "the scope of an EEOC complaint should not be strictly interpreted" and a judicial complaint may encompass any kind of discrimination like or related to the allegations contained in the charge. *Id*. In fact, courts are "extremely reluctant" to bar discrimination claims based on procedural technicalities and will allow judicial claims that "amplify, clarify, or more clearly focus" the allegations brought by the EEOC complaint. *Id.* at 1279.

Although a party not named in an EEOC Charge may generally not be sued in a later civil action, an unnamed party may still be sued in a civil action arising from that Charge when necessary to fulfill the purposes of Title VII. *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010). The naming precondition therefore "must be *liberally construed*" and the unnamed party may still be sued if doing so fulfills the purposes of Title VII. *Id* (emphasis added). In analyzing whether the purposes of Title VII are met, this Court considers several factors, including:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id* at 456-457. These factors are not meant to impose a "rigid test," and other factors may be relevant depending on the specific facts of the case. *Id* at 457. For example, one additional factor this Court has considered is whether an investigation of the unnamed party could have reasonably grown out of the EEOC charge. *Id*. This additional factor "weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge." *Id*.

For example, in *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1359 (11th Cir. 1994), the plaintiff only named two entities, Sterling Group, Inc. ("Sterling Group") and Sheraton Ocean Inn ("Sheraton Ocean") in her EEOC Charge of Discrimination. However, the plaintiff failed to identify Riviera Beach Associates, Inc. ("Riviera Beach") (the company contracted by Sheraton Ocean to manage the hotel) in the Charge. *Id*. The Appellate Court found that Riviera Beach "was a closely related entity since it is the sole owner of the Sheraton Ocean Inn" and that two other parties who were general partners in the Riviera Beach Limited Partnership were "functionally identical to the partnership and should not be protected by the naming requirement." *Id*.

In the present case, World Omni should not be protected by the naming requirement because: (1) Plaintiff was hired, compensated, and employed by World Omni; (2) "JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp" [*see World Omni Financial Corp.*, http://www.worldomni.com (last visited October 29, 2020), attached hereto as **Exhibit "C,"** *see also Contact Us*, JM Family Enterprises, https://jmfamily.com/contact (last visited October 29, 2020), attached hereto as **Exhibit "D"**]; (3) Defendants' principal address is within 0.2 miles of each other, and share the same registered agent and substantially similar board members [*see Detail by Entity Name*, Sunbiz, http://search.sunbiz.org/Inquiry/CorporationSearch/ByName (last visited November 2, 2020), attached hereto as **Composite Exhibit "E"**]; and (4) Defendants share employees and/or interchange employees, work in the direct interest of one another, and their employees are in the common control of both companies. As such, an investigation of World Omni likely grew out of Plaintiff's EEOC charge.

Accordingly, barring Plaintiff's First Amended Complaint because of a minute technicality (i.e., Plaintiff only listing one entity in the EEOC Charge) would be unduly burdensome and circumvent the purposes of Title VII.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss should be denied.

Dated: November 2, 2020.                         Respectfully submitted,

**Aron Smukler**
Aron Smukler, Esq. (FBN: 297779)
E-mail: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using the Florida E-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the Florida E-Filing Portal or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: **Aron Smukler**

## SERVICE LIST
**Aude Jessica Raphael v. JM Family Enterprises, Inc. and World Omni Financial Corp.**
**Case No.: CACE-20-010942**

R. Martin Saenz, Esq.
Email: msaenz@saenzanderson.com
Tanesha Blye, Esq.
Email: tblye@saenzanderson.com
Aron Smukler, Esq.
Email: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

Jenna Rinehart Rassif, Esq.
Email: jenna.rassif@jacksonlewis.com
Valerie L. Hooker, Esq.
Email: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Counsel for Defendants*

Case No.: CACE-20-010942

# Exhibit A

Case No.: CASE-20-010942

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2020-00457 |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Aude J Raphael** | **(954) 636-9490** | **12/12/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Saenz & Anderson, 20900 NE 30th Ave., Ste. 800, Aventura, FL 33180 (msaenz@saenzanderson.com)** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **JM FAMILY ENTERPRISES, INC.** | **100+** | **(954) 429-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Jim Moran Blvd, Deerfield Beach, FL 33442** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10/2018**   Latest **6/7/2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 28-year-old black, Haitian woman. I began working for the Respondent on or about October 14, 2014 as a customer service representative. I was diagnosed with multiple sclerosis in 2017 and placed on short term disability at work. On October 2018, after I returned from a FMLA leave and hospitalization related to my illness, I began to feel micromanaged.

In addition, my health condition deteriorated, and I requested certain accommodations at work, which were denied. Specifically, I requested to park closer to the building where I worked because I could only walk with difficulty and with the help of a walker. Respondent said "no". I also requested to work from home, and this request was also denied. White/non-Haitian employees and non-disabled employees who perform similar work as I do are permitted to work from home and are allowed to park their cars close to their offices.

In my short tenure with the Respondents, I quickly became a Senior Customer Representative (SCR) and my pay increased accordingly. However, since my return from FMLA leave due to my disability (multiple sclerosis), I have been written up on various occasions allegedly because I was working too slow and was not being productive, which was not true. I complained about this.

On or about June 7, 2019 Respondent terminated my employment because I allegedly failed to include "correction letters" with certain correspondence.

I believe Respondent discriminated and retaliated against me because of my national origin, race and disability (or perceived disability) in violation of Title VII of the Civil Rights Act of 1964, as amended; the American With Disabilities Act, 42 U.S.C. §12101 *et seq.*; and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>10/22/19<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br><br>RECEIVED<br>OCT 22 2019<br>EEOC-MIAMI DISTRICT OFFICE |

Case No.: CACE-20-010942

# Exhibit B

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Aude J. Raphael | From: Miami District Office |
|---|---|
| C/O Saenz & Anderson Attorneys at Law | Miami Tower, 100 S E 2nd Street |
| 20900 Ne 30th Ave., | Suite 1500 |
| Ste 800 | Miami, FL 33131 |
| Aventura, FL 33180 | |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Robby Cedon, | |
| 510-2020-00457 | Investigator | (786) 648-5865 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_(signature)_

_____      05/07/2020
**Michael J. Farrell,**                              (Date Mailed)
**District Director**

Enclosures(s)

cc:    **Respondent's Representative**               cc:   **Charging Party's Representative**

**JM Family Enterprises, LLC**                            **Martin R. Saenz, Esq**
**c/o. Olga T. Bello, Esq.**                              **Saenz & Anderson Attorneys at Law.**
**Jackson Lewis P.C.**                                    **100 Jim Moran Blvd.**
**2 South Biscayne Boulevard**                            **Deerfield Beach, FL 33442**
**Suite 3500**
**Miami, FL 33131**

Enclosure with EEOC
Form 161-B (11/16)
Case No.: CACR-010942

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than** 2 years (3 years) **before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request** <u>within 6 months</u> **of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Case No.: CACE-20-010942

# Exhibit C

Case No.: CACE-20-010942

## JM Family ranks No. 26 on *Fortune's*

**HOME (INDEX.HTML)**    **ABOUT (ABOUT.HTML)**    **LOCATIONS (WORLDOMNI.HTML)**    **INVESTOR RELATIONS (ASSET.HTML)**

(index.html)

For 22 years, JM Family, World Omni's parent company, has been ranked by *Fortune* ® *Magazine* as one of the 100 Best Companies to Work for in the U.S.

**LEARN MORE ABOUT OUR GREAT WORKPLACE**  (http://reviews.greatplacetowork.com/jm-fa

COMPANY CULTURE
# WELCOME TO JM FAMILY



JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp. As a leader in the automotive industry, JM Family's primary focus is on vehicle distribution and processing, financial services, warranty and insurance activities, retail vehicle sales and dealer technology services.

**LEARN MORE (HTTP://WWW.JMFAMILY.COM/)**

INVESTOR RELATIONS
# SMART INVESTMENT



World Omni offers public and private term securitization debt, backed by retail, lease and floorplan originations derived mainly from 177 Toyota dealerships in the southeast. Find out more about our asset-backed securitizations.

**LEARN MORE (ASSET.HTML)**

WORLD-CLASS SERVICE
# ESTABLISHED IN 1981

## STRENGTH IN NUMBERS

| 3,000,000+ Contracts | 22 Years in a Row | 4,300 Associates |
|---|---|---|
| funded since 1981 | Fortune® 100 Best Companies to Work For | at JM Family Enterprises |

## OPERATING DIVISIONS



(https://www.setf.com/)

Southeast Toyota Finance delivers a full range of financial products and services to Toyota dealers in the southeast United States, including special retail and lease programs.



(https://www.onedatascan.com/)

As a global leader, DataScan provides clarity to wholesale loan accounting and manages risk with holistic auditing solutions for a wide-range of clients throughout the world.



World Omni is a diversified financial company offering a broad range of products and services to automotive dealers, consumers and lenders.

**LEARN MORE** (ABOUT.HTML)

## CORE VALUES



COOPERATION

COMMUNICATION

INNO

About Us (worldomni.html)    Terms & Conditions (terms.html)

World Omni Financial Corp. is a subsidiary of JM Family, which was named on FORTUNE 100 Best Companies to Work For® FORTUNE and FORTUNE 100 Best Companies to Work For are registered trademarks of Fortune Media IP Limited and are used under license.

Case No.: CACE-20-010942

# Exhibit D

Case No.: CASE-20-010942



Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS

## Contact Us

### General Information

**Corporate Headquarters**

info@jmfamily.com
100 Jim Moran Blvd.
Deerfield Beach, FL 33442
954-429-2000
Website
Facebook

Directions to this Location

### JM Lexus

5350 W. Sample Road
Margate, FL 33073
800-565-3987 | Local 954-972-2200
Website
Facebook
Twitter

Directions to this location

### Corporate Community Impact

100 Jim Moran Blvd.
Deerfield Beach, FL 33442
954-363-6150

Directions to this Location

### Media

Christie.Caliendo@jmfamily.com
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Directions to this Location

### Careers

Click here to apply online
For employment verification,
call 800-488-2144, ext. 1520

### Southeast Toyota Distributors, LLC

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
Website

Directions to this Location

### Southeast Toyota Vehicle Processing - Florida

Westlake Industrial Park 9985 Pritchard Road
Jacksonville, FL 32219

Directions to this Location

### Southeast Toyota Vehicle Processing - Florida

Jacksonville Port Authority 1751 Talleyrand Ave.
Jacksonville, FL 32206

Directions to this Location

### Southeast Toyota Vehicle Processing - Georgia

338 Veterans Memorial Pkwy
Commerce, GA 30530

Directions to this Location

Case No.: CACE-20-010942

**JM&A Group - Missouri**

3120 Rider Trail South
Earth City, MO 63045
Website

Directions to this Location

**World Omni Financial Corp. - Florida**

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
866-663-9663
Website

Directions to this Location

**Southeast Toyota Finance - Florida**

250 Jim Moran Blvd.
Deerfield Beach , FL 33442
866-663-9663
Website

Directions to this Location

**Southeast Toyota Finance - Alabama**

6150 Omni Park Drive
Mobile, AL 36609
866-663-9663
Website

Directions to this Location

**Southeast Toyota Finance - Missouri**

3120 Rider Trail South
Earth City, MO 63045
866-663-9663
Website

Directions to this Location

**Home Franchise Concepts**

19000 MacArthur Blvd., Suite 1000
Irvine, CA 92612
949-404-1100
Website

Directions to this location

    


   

Case No.: CACE-20-010942

# Composite Exhibit E

Case No.: CACE-20-010942



Department of State / Division of Corporations / Search Records / Search by Entity Name /

# Detail by Entity Name

Florida Profit Corporation
WORLD OMNI FINANCIAL CORP.

**Filing Information**

| | |
|---|---|
| **Document Number** | G17306 |
| **FEI/EIN Number** | 59-2238832 |
| **Date Filed** | 12/30/1982 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 01/04/1993 |
| **Event Effective Date** | NONE |

**Principal Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Mailing Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
North Palm Beach, FL 33408

Name Changed: 02/03/2020

Address Changed: 04/29/2020

**Officer/Director Detail**

**Name & Address**

Title Director

Case No.: CACE-20-010942

Burns, Brent D.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director, President

Chait, Daniel M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Coombs, Ronald M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Williams, Caren Snead
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Browdy, Alan J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Treasurer

Gebhard, Eric M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Arends, Rodney
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Sheptak, Peter J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Hollis, Michael

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Romano, Bryan
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Sherry, Joanna E.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Cateriano, Jose Alfredo
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Brown, Edward J., Jr.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, General Counsel, Secretary

Hall, Andre L.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Gray, Michael A.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Shope, William J.
190 Jim Moran Blvd.

Deerfield Beach, FL 33442

Case No.: CACE-20-010942

Title CFO

Venezia, Joseph
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Argersinger, H. Scott
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Virtue, Ronald J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2018 | 04/10/2018 |
| 2019 | 04/03/2019 |
| 2020 | 04/29/2020 |

**Document Images**

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/03/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/10/2018 -- ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 08/05/2016 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/20/2016 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 11/14/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/06/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |

Case No.: CACE-20-010942

| Date | |
|---|---|
| 04/28/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/08/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 03/19/2001 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/16/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/26/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/21/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |
| 01/04/1993 -- Amendment | View image in PDF format |

Case No.: CACE-20-010942



# Detail by Entity Name

Foreign Profit Corporation
JM FAMILY ENTERPRISES, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | P04043 |
| **FEI/EIN Number** | 59-1390794 |
| **Date Filed** | 11/13/1984 |
| **State** | DE |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 10/20/2014 |
| **Event Effective Date** | NONE |

**Principal Address**

111 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/29/2020

**Mailing Address**

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/11/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
PLANTATION, FL 33324

Name Changed: 02/03/2020

Address Changed: 02/03/2020

**Officer/Director Detail**

**Name & Address**

Title Senior Vice President, Community Relations, Director

Case No.: CACE-20-010942

Moran, Janice M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Family Office and Assistant Sec

Blanton, Thomas K.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Controller, Assist Treasurer

Browdy, Alan J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Heathcott, Forrest W., III
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Government Relations

Deen Hartley, Sonya R.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Philanthropy

Burgess, Melanie
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Sheehy, Edward M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Direct Investing

Reid, David W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Treasurer

Gebhard, Eric M.

Case No.: CACE-20-010942

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, HR Services and Technology

Mody, Upendra
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Romano, Bryan
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, People Strategy

Heggerick, Lisbeth
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Associate Services

Sudler, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Chait, Daniel M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President, CFO

Coombs, Ronald M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President, Corporate Services

Pollock, Craig J.
100 Jim Moran Blvd.

Case No.: CACE-20-010942

Deerfield Beach, FL 33442

Title VP, ITS

Battisto, Deborah A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, New Business Liaison

Curtis, Jose A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Miller, Mark M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Sipe, Lisa M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Services

Tiufekchiev, Michael J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS Planning

Toifel, Brick A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Gordon, Charles S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title President, CEO, Director

Burns, Brent D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Case No. CACE-20-010942

Title Group VP, General Counsel, Asst Secy

Artusi, Stephen P.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC - Corporate Governance, Asst. Secretary

Williams, Caren Snead
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Exec VP, HR, Legal and Corporate Secretary

Johnson, Carmen S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC-Finance & Transactions, Asst. Secretary

Sheptak, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Virtue, Ronald J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Argersinger, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Enterprise Risk Officer

Guerrero, Juan C.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP Enterprise Comm, Media Rel/Corp Events, Trvl

Puello Burkman, Rosa
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Case No.: CACE-20-010942

Title Director

McNally, Arline M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McNally, John J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Barrett, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McGinnes, Larry D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Papera, Christine
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Chairman of the Board

Brown, Colin W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Moran, James Michael
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

**Annual Reports**

| Report Year | Filed Date |
| --- | --- |
| 2018 | 04/11/2018 |
| 2019 | 04/06/2019 |
| 2020 | 04/29/2020 |

Case No.: CACE-20-010942

**Document Images**

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/06/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/11/2018 -- ANNUAL REPORT | View image in PDF format |
| 05/12/2017 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2016 -- ANNUAL REPORT | View image in PDF format |
| 12/22/2015 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 10/20/2014 -- Name Change | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 04/15/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/09/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/04/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/01/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/05/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2001 -- ANNUAL REPORT | View image in PDF format |
| 05/06/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/23/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/26/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/25/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  <u>CACE20010942</u>   DIVISION  <u>25</u>   JUDGE  <u>Carol-lisa Phillips</u>

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____/

## <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITHOUT PREJUDICE</u>

This matter came before the Court upon the Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") filed by Defendants JM Family Enterprises, Inc. and World Omni Financial Corp.  (together, "Defendants").  Having reviewed the Motion and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED.  Plaintiff's First Amended Complaint is dismissed without prejudice.  Plaintiff shall have 20 days to file a second amended complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>11-06-2020</u>.

<u>CACE20010942 11-06-2020 8:29 AM</u>

<u>CACE20010942 11-06-2020 8:29 AM</u>

Hon. Carol-lisa Phillips

**CIRCUIT JUDGE**

Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**

Aron Smukler , E-mail : ursula@saenzanderson.com

Aron Smukler , E-mail : asmukler@saenzanderson.com

Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com

Jenna Rinehart Rassif , E-mail : jenna.rassif@jacksonlewis.com

Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com
Ruben Martin Saenz , E-mail : setehc@hotmail.com
Tanesha W Blye , E-mail : ursula@saenzanderson.com
Tanesha W Blye , E-mail : tblye@saenzanderson.com
Tanesha W Blye , E-mail : efiling@saenzanderson.com
Ursula Lanfranco , E-mail : ursula@saenzanderson.com
Valerie L. Hooker , E-mail : MiamiDocketing@jacksonlewis.com
Valerie L. Hooker , E-mail : belloo@jacksonlewis.com
Valerie L. Hooker , E-mail : valerie.hooker@jacksonlewis.com
Yadhira Ramirez-Toro , E-mail : ursula@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : asmukler@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : yramirez@saenzanderson.com

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,           )
                                )
            Plaintiff,          )
                                )
v.                              )        Case No.: CACE-20-010942
                                )
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP.,     )
                                )
            Defendants.         )
_____ )

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendants JM FAMILY ENTERPRISES, INC. ("JM Family") and WORLD OMNI FINANCIAL CORP. ("World Omni") (collectively referred to as "Defendants") and alleges:

1.      This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys' fees, and costs.

2.      This is an action to recover damages for discrimination and retaliation pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA").

3.      Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.      Defendants are, and at all times mentioned was, a foreign profit corporation, having its main place of business in Broward County, Florida.

5.      At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat. §760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



1

6.　　At all times material, Defendants were a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.　　Defendant JM Family is a diversified automotive company whose subsidiaries include World Omni. JM Family's primary focus includes but is not limited to financial services.

8.　　Defendant World Omni is a finance company which provides a broad range of financial products and services to consumers, dealers, and lenders, including originating, underwriting, and servicing vehicle retail and lease contracts with companies.

9.　　At all relevant times, Defendant JM Family was the parent company of World Omni Financial Corporation.

10.　　At all times material, Defendants collectively employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

11.　　Defendants JM Family and World Omni share employees or interchange employees, such as executive level, management and human resources ("HR") employees; share registered agents; share board members; work in the direct interest of one another; and their employees are in the common control of both companies. Accordingly, Defendants' operations are interrelated and they collectively exercise control over their labor relations. The Defendants are therefore joint employers. Alternatively, each company is an enterprise under the FLSA.

12.　　Each Defendant is sued individually, as a joint enterprise, as joint employers, and as agent of each other.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

13. Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

14. Plaintiff has complied with all conditions precedent in filing this action, to wit;

   a. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

   b. Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

*See* Plaintiff's Charge of Discrimination attached hereto as *Exhibit A*.

15. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## **RELEVANT FACTS**

16. JM Family and World Omni operate their business out of the same building located at 190 Jim Moran Blvd., Deerfield Beach, Florida.

17. Plaintiff was hired by Defendants on or about October 14, 2014. Specifically, Plaintiff was hired, compensated and employed by both Defendants, JM Family and World Omni.

18. At all times material, Plaintiff was employed by Defendants as a Customer Service Representative.

19. During Plaintiff's employment with Defendants, she excelled in her job performance, and was recognized for her outstanding work.

20. In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

www.saenzanderson.com



21.     Plaintiff immediately informed her supervisors, including but not limited to Jillian De Los Reyes ("De Los Reyes"), Audrey Demoss ("Demoss"), and Rebecca Bell ("Bell"), of her diagnosis.

22.     Plaintiff was placed on short term disability as a result of her diagnosis.

23.     Plaintiff returned to work in or about October of 2018.

24.     Upon her return to work, Defendants' conduct toward Plaintiff was different than Defendants' conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Defendants' supervisors and managers, including but not limited to De Los Reyes, Demoss and Sharon Miller, began to unfairly and unjustly issue write-ups and correction letters to Plaintiff and place Plaintiff on probation. Plaintiff's write-ups and correction letters were related to Plaintiff's performing her job duties pursuant to the work restrictions provided by Plaintiff's treating physicians.

25.     Additionally, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

26.     Defendants' conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create an abusive working environment.

27.     The discriminatory environment created by Defendants was so pervasive that it amounted to a hostile work environment for Plaintiff.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

28.     Plaintiff complained to Defendants' HR and management departments, including but not limited to Bell, about the bullying, belittling, and micromanaging, but nothing was done. Defendants refused to act upon Plaintiff's complaints.

29.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

30.     Defendants denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendants responded by moving Plaintiff to a desk further away from the restroom.

31.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendants, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

32.     On or about June 7, 2019, Defendants' HR and management employees had a meeting with Plaintiff and terminated her employment. Defendants alleged that Plaintiff's termination was due to her violation of company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and was clearly pretextual.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

**COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA –
<u>HOSTILE WORK ENVIRONMENT</u>**

33.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 28, 31-32 above as if set out in full herein.

34.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

35.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

36.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

37.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia,* bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Defendants unfairly and unjustly issued write-ups and correction letters to Plaintiff, placed Plaintiff on probation, talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

38.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

39.     The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create a discriminatorily abusive working environment.

www.saenzanderson.com



6

40.     Defendants, as Plaintiff's employer, were responsible for maintaining a working environment free from unwelcomed harassment and abuse.

41.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

42.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

43.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

44.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

www.saenzanderson.com



7

F.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

### **COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA –**
### **DISPARATE TREATMENT**

45.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 32 above as if set out in full herein.

46.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

47.    At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

48.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

49.    As detailed in paragraphs 24 through 25 and 28 through 32, Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

50.    Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

www.saenzanderson.com



8

51.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

52.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

53.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

54.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff requests that this honorable court:

G. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

H. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K. Award Plaintiff reasonable costs and attorney's fees; and

L. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

www.saenzanderson.com



## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA –
## FAILURE TO ACCOMMODATE

55.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 22, and 29 through 32 above as if set out in full herein.

56.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

57.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

58.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

59.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

60.     Defendants denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

61.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendants.

62.     The accommodations requested by Plaintiff were reasonable.

63.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated

www.saenzanderson.com



10

employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

64.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

65.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

66.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

67.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

68.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

www.saenzanderson.com



D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

<u>**COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION**</u>

69.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 32 above as if set out in full herein.

70.   Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

71.   At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

72.   Plaintiff engaged in a protected activity when she complained to Defendants HR and Management employees, including but not limited to Bell, about being bully, belittling, and micromanaging because of her disability.

73.   Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff complained of Defendants' HR and management employees' discriminatory conduct, the hostile work environment she was subjected to and she continuously requested reasonable accommodations from Defendants.

www.saenzanderson.com



12

74.    Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

75.    The retaliation of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

76.    As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

77.    Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

78.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

www.saenzanderson.com



F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: November 25, 2020.

Respectfully submitted,

**By: /s/ Tanesha Blye**
Tanesha Blye, Esq.
Fla. Bar No.: 0738158
Email: tblye@saenzanderson.com

Aron Smukler, Esq.
Fla. Bar No.: 0297779
Email: asmukler@saenzanderson.com

R. Martin Saenz, Esq.
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



14

Case No.: CACE-20-010942

# Exhibit A

Case No.: CA\_\_\_

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 510-2020-00457 |

**Florida Commission On Human Relations** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Aude J Raphael** | **(954) 636-9490** | **12/12/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| c/o Saenz & Anderson, 20900 NE 30th Ave., Ste. 800, Aventura, FL 33180 (msaenz@saenzanderson.com) | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **JM FAMILY ENTERPRISES, INC.** | **100+** | **(954) 429-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Jim Moran Blvd, Deerfield Beach, FL 33442** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest **10/2018** Latest **6/7/2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a 28-year-old black, Haitian woman. I began working for the Respondent on or about October 14, 2014 as a customer service representative. I was diagnosed with multiple sclerosis in 2017 and placed on short term disability at work. On October 2018, after I returned from a FMLA leave and hospitalization related to my illness, I began to feel micromanaged.

In addition, my health condition deteriorated, and I requested certain accommodations at work, which were denied. Specifically, I requested to park closer to the building where I worked because I could only walk with difficulty and with the help of a walker. Respondent said "no". I also requested to work from home, and this request was also denied. White/non-Haitian employees and non-disabled employees who perform similar work as I do are permitted to work from home and are allowed to park their cars close to their offices.

In my short tenure with the Respondents, I quickly became a Senior Customer Representative (SCR) and my pay increased accordingly. However, since my return from FMLA leave due to my disability (multiple sclerosis), I have been written up on various occasions allegedly because I was working too slow and was not being productive, which was not true. I complained about this.

On or about June 7, 2019 Respondent terminated my employment because I allegedly failed to include "correction letters" with certain correspondence.

I believe Respondent discriminated and retaliated against me because of my national origin, race and disability (or perceived disability) in violation of Title VII of the Civil Rights Act of 1964, as amended; the American With Disabilities Act, 42 U.S.C. §12101 et seq.; and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/22/19 Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Charging Party Signature

RECEIVED OCT 22 2019 EEOC-MIAMI DISTRICT OFFICE

**EXHIBIT A - PLAINTIFF'S SECOND AMENDED COMPLAINT**

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL )
                            )
           Plaintiff, )
                            )
v. )
                            )
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP. )
                            )
          Defendants. )
_____ )

## DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO THE PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants JM Family Enterprises, Inc. ("JMFE") and World Omni Financial Corp. ("World Omni") (together, "Defendants"), by and through their undersigned counsel, hereby file this Unopposed Motion for Extension of Time, seeking an extension up to and including December 18, 2020, in which to respond to the Second Amended Complaint filed by Plaintiff Aude Jessica Raphael ("Plaintiff"). In support of this Motion, Defendants state as follows:

1. On Wednesday, November 25, 2020, Plaintiff filed her Second Amended Complaint.

2. Defendants' response to the Second Amended Complaint currently is due on December 9, 2020.

3. Defendants have been working diligently to prepare a response to the Second Amended Complaint, but due to the holidays as well as other business conflicts, Defendants need additional time to finalize their response.

4. On December 3, 2020, defense counsel contacted Plaintiff's counsel via email

requesting a brief extension of time to prepare a response.

5.      On December 7, 2020, defense counsel followed up with Plaintiff's counsel via telephone conversation regarding the extension request and Plaintiff's counsel stated that she did not object to the relief sought.

6.      Accordingly, Defendants respectfully request a nine-day extension of time until December 18, 2020 to file a response to the Second Amended Complaint.

7.      This is the first extension of time to file a response to the Second Amended Complaint sought by Defendants.  This extension request is made in good faith and is not interposed for any dilatory or improper purpose.

WHEREFORE, Defendants respectfully request an extension of time, up to and including December 18, 2020, to file a response to the Second Amended Complaint.

Dated:  December 8, 2020

Respectfully submitted,

By: *s/ Valerie L. Hooker*
    Jenna Rinehart Rassif, Esq.
    Florida Bar No. 56855
    Email: *jenna.rassif@jacksonlewis.com*
    Valeria L. Hooker, Esq.
    Florida Bar No. 113688
    E-mail: *valerie.hooker@jacksonlewis.com*
    Templeton N. Timothy, Esq.
    Florida Bar No. 1025172
    E-mail: *templeton.timothy@jacksonlewis.com*
    JACKSON LEWIS P.C.
    One Biscayne Tower, Suite 3500
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 577-7600
    Facsimile: (305) 373-4466
    *Attorneys for Defendants*

Care No. CACE-20-010942

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on

December 8, 2020, on all counsel of record on the service list below via transmission of Notices

of Electronic Filing.

*s/ Valerie L. Hooker*
Valerie L. Hooker, Esq.

## SERVICE LIST

| | |
|---|---|
| Tanesha Blye, Esq. | Jenna Rinehart Rassif, Esq. |
| Florida Bar No. 0738158 | Florida Bar No. 56855 |
| E-mail: tblye@saenzanderson.com | E-mail: *jenna.rassif@jacksonlewis.com* |
| Aron Smukler, Esq. | Valerie L. Hooker, Esq. |
| Florida Bar No. 0297779 | Florida Bar No. 113688 |
| E-mail: asmukler@saenzanderson.com | E-mail: *valerie.hooker@jacksonlewis.com* |
| R. Martin Saenz, Esq. | Templeton N. Timothy, Esq. |
| Florida Bar No. 0640166 | Florida Bar No. 1025172 |
| E-mail: msaenz@saenzanderson.com | E-mail: *templeton.timothy@jacksonlewis.com* |
| SAENZ & ANDERSON, PLLC | JACKSON LEWIS P.C. |
| 20900 NE 30th Avenue, Suite 800 | One Biscayne Tower, Suite 3500 |
| Aventura, Florida 33180 | 2 South Biscayne Boulevard |
| Telephone: (305) 503-5131 | Miami, Florida 33131 |
| Facsimile: (888) 270-5549 | Telephone: (305) 577-7600 |
| | Facsimile: (305) 373-4466 |
| *Attorneys for Plaintiff* | |
| | *Attorneys for Defendants* |

### IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
### IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CACE20010942</u>   DIVISION <u>25</u>   JUDGE <u>Carol-lisa Phillips</u>

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO THE SECOND AMENDED COMPLAINT

This matter came before the Court upon Defendants' Motion for Extension of Time to Respond to the Second Amended Complaint.  Having reviewed the Motion and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED.  Defendants shall have through and including December 18, 2020 to respond to Plaintiff's Second Amended Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>12-09-2020</u>.

CACE20010942 12-09-2020 12:48 PM

<u>CACE20010942 12-09-2020 12:48 PM</u>

Hon. Carol-lisa Phillips

**CIRCUIT JUDGE**

Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**

Aron Smukler , E-mail : ursula@saenzanderson.com

Aron Smukler , E-mail : asmukler@saenzanderson.com

Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com

Jenna Rinehart Rassif , E-mail : jenna.rassif@jacksonlewis.com

Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com

Ruben Martin Saenz , E-mail : efiling@saenzanderson.com
Ruben Martin Saenz , E-mail : setehc@hotmail.com
Tanesha W Blye , E-mail : ursula@saenzanderson.com
Tanesha W Blye , E-mail : tblye@saenzanderson.com
Tanesha W Blye , E-mail : efiling@saenzanderson.com
Ursula Lanfranco , E-mail : ursula@saenzanderson.com
Valerie L. Hooker , E-mail : MiamiDocketing@jacksonlewis.com
Valerie L. Hooker , E-mail : belloo@jacksonlewis.com
Valerie L. Hooker , E-mail : valerie.hooker@jacksonlewis.com
Yadhira Ramirez-Toro , E-mail : ursula@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : asmukler@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : yramirez@saenzanderson.com

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL      )
         )
      Plaintiff,     )
         )
v.         )
         )
JM FAMILY ENTERPRISES, INC. and   )
WORLD OMNI FINANCIAL CORP.   )
         )
      Defendants.   )
_____)

## NOTICE OF ATTORNEY APPEARANCE

PLEASE TAKE NOTICE that Templeton N. Timothy, Esq., of the law firm of Jackson Lewis P.C., hereby makes his appearance as counsel for Defendants, JM Family Enterprises, Inc. ("JMFE") and World Omni Financial Corp. ("World Omni") (together, "Defendants"), in the above-captioned matter and requests that all future pleadings, correspondence, and other documents regarding this case be forwarded to the attention of the undersigned.

Dated:  December 10, 2020

Respectfully submitted,

By: *s/ Templeton N. Timothy*
    Jenna Rinehart Rassif, Esq.
    Florida Bar No. 56855
    Email: *jenna.rassif@jacksonlewis.com*
    Valeria L. Hooker, Esq.
    Florida Bar No. 113688
    E-mail: *valerie.hooker@jacksonlewis.com*
    Templeton N. Timothy, Esq.
    Florida Bar No. 1025172
    E-mail: *templeton.timothy@jacksonlewis.com*
    JACKSON LEWIS P.C.
    One Biscayne Tower, Suite 3500
    2 South Biscayne Boulevard

Care No. CACE-20-010942

Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on

December 10, 2020, on all counsel of record on the service list below via transmission of Notices

of Electronic Filing.

*s/ Templeton N. Timothy*
Templeton N. Timothy, Esq.

## SERVICE LIST

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
Florida Bar No. 0297779
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: *jenna.rassif@jacksonlewis.com*
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
Templeton N. Timothy, Esq.
Florida Bar No. 1025172
E-mail: *templeton.timothy@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

2

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL )
)
        Plaintiff, )
)
v. )
)
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP. )
)
        Defendants. )
_____ )

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants JM Family Enterprises, Inc. ("JMFE"), and World Omni Financial Corp. ("World Omni") (together, "Defendants"), by and through their undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.140(b)(6), move to dismiss Plaintiff's Second Amended Complaint, and as grounds, state as follows:

## INTRODUCTION

On July 7, 2020, Plaintiff Aude Jessica Raphael ("Plaintiff") filed a four-count complaint against JMFE asserting violations of the Florida Civil Rights Act ("FCRA"). Specifically, Plaintiff asserted that JMFE violated the FCRA by: (1) subjecting Plaintiff to a hostile work environment because of her alleged disability (Count I); (2) subjecting Plaintiff to disparate treatment based on her alleged disability (Count II); (3) failing to accommodate Plaintiff's disability (Count III); and (4) retaliating against Plaintiff for allegedly complaining about disability discrimination (Count IV). A copy of the initial Complaint is attached as **Exhibit A**. On August 11, 2020, Plaintiff filed her First Amended Complaint, which maintained the same four counts against JMFE and the exact

same allegations, but added World Omni as a named defendant and changed references from "Defendant" to the plural "Defendants."  On November 6, 2020, this Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, dismissing the pleading without prejudice, because Plaintiff failed to state sufficient facts to hold Defendants liable as joint employers or to plead that World Omni exhausted its administrative remedies.  On November 25, 2020, Plaintiff filed her Second Amended Complaint, which sets forth the same four counts against Defendants, but adds conclusory statements regarding joint employer liability and wholly fails to set forth any facts regarding whether World Omni exhausted its administrative remedies.  A copy of Plaintiff's Second Amended Complaint ("SAC") is attached as **Exhibit B**.

Defendants move to dismiss Plaintiff's SAC on two bases.  First, Plaintiff not only fails to identify her direct employer, but also fails to set forth sufficient facts to justify holding JMFE and World Omni liable as joint employers or as an enterprise.  Without any factual allegations to support a joint-employer relationship, Plaintiff resorts to the recitation of mere legal conclusions that generally state the elements of joint employer or joint enterprise liability.  These barebones allegations certainly cannot expand liability beyond that unidentified direct employer to encompass joint employers.

Second, Plaintiff's SAC should be dismissed as alleged against World Omni because Plaintiff failed to file a Charge of Discrimination against World Omni.  Plaintiff alleges that she "timely filed a Charge of Discrimination" on October 22, 2019, but she strategically does not state against which entity she filed it.  (SAC, ¶ 14).  Plaintiff does, however, attach a copy of the Charge to the SAC as Exhibit A, and the Charge clearly proves that it was filed against only JMFE, not World Omni, which was not brought into this lawsuit until Plaintiff filed her First Amended

Complaint.  Accordingly, Plaintiff's SAC must be dismissed against World Omni for failure to exhaust administrative remedies.

## **MEMORANDUM OF LAW**

I.  **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS BY FAILING TO SET FORTH FACTS REGARDING THE ALLEGED JOINT EMPLOYER OR JOINT ENTERPRISE STATUS**

Plaintiff attempts to place liability upon Defendants on the basis that they are joint employers or, alternatively, that each company qualifies as an enterprise under the FLSA. (SAC, ¶¶ 11-12).  Plaintiff, however, offers only conclusory allegations related to her alternative theories of liability and alleged joint employer status.  Indeed, Plaintiff merely recites the elements and factors associated with an analysis of joint employer liability, failing to offer any allegations to support her claims.

Florida courts look to federal case-law when analyzing whether two separate entities may be aggregated in an employment discrimination case. *See Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593 (Fla. 3d DCA 2009).  A review of federal employment discrimination cases within Florida provides three distinct analyses that courts employ: the single employer test, the joint employer test, and the agency test.  *Martinolich v. Golden Leaf Mgmt.,* 786 So.2d 613, 615 (Fla. 3d DCA 2001). Plaintiff's SAC invokes the language from all three theories of joint employer liability, but fails to allege sufficient facts to support any of them.

Under the single employer test, a plaintiff must plead facts sufficient to show that the two separate entities are highly integrated in both ownership and operations. *Id.*  In *Villarino v. Pacesetter Pers. Serv.[1]*, the court found that the plaintiff pled sufficient facts by alleging that the

---

[1] *Villarino* was brought under the Fair Labor Standards Act, where the single employer test originated, however "the Eleventh Circuit and other Circuits also apply this test in Title VII and other employment discrimination cases." *Varner v. Video Indus. Servs.*, No. 2:10-cv-2737-JHH, 2010 U.S. Dist. LEXIS 196855, at *24 (N.D. Ala. Apr. 2, 2012).

two companies 1) had common ownership, management, and branding; 2) used identical pay and employment practices; and 3) were working towards the same business purpose. No. 20-60192-CIV, 2020 U.S. Dist. LEXIS 151134 at *13 (S.D. Fla. Aug. 19, 2020). The court was further persuaded because the plaintiff "set forth specific factual support" for those allegations "in great detail." *Ibid*. In the instant case, Plaintiff fails to plead the level of interrelatedness present in *Villarino*. While the *Villarino* plaintiff alleged that the two companies were working towards the same business purpose, Plaintiff here acknowledges that "JM Family is a diversified automotive company" while "World Omni is a finance company which provides a broad range of financial products and services to consumers." (SAC, ¶¶ 7-8). Whereas the complaint in *Villarino* specifically alleged that the two companies used identical pay practices, here Plaintiff's SAC asserts in a general manner that "Defendants' operations are interrelated and they collectively exercise control over their labor relations." (SAC, ¶¶ 11). Plaintiff does identify which operations are interrelated or how they are interrelated. Plaintiff simply recites the factors of the single employer test instead of pleading facts sufficient to survive the analysis. Accordingly, Plaintiff has not pled facts sufficient to show that Defendants are a single integrated employer.

To satisfy the joint employer test, the court looks for two independent companies contracting in good faith, where one company retains sufficient control over the terms and conditions of the other company's employees. *Peppers v. Cobb Cty.*, 835 F.3d 1289, 1300 (11th Cir. 2016). Here, the only allegations that might support a claim for joint employer liability consist of conclusory recitations of the legal elements/factors for such liability.

The facts in this case are similar to those in *Layton v. Percepta*. No. 6:17-cv-1488-Orl-41DCI, 2018 U.S. Dist. LEXIS 108268, at *2 (M.D. Fla. May 17, 2018). Though *Layton* concerned a motion for leave to amend and not a motion to dismiss, the analysis is still relevant

here: the *Layton* court denied the motion, specifically finding that "Plaintiff's proposed amendment would not survive a motion to dismiss." *Layton,* 2018 U.S. Dist. LEXIS 108268 at *6. In that case, the plaintiff attempted to show joint employer status between Ford Motor Co. and Percepta by specifically alleging 1) that Ford held a membership interest in Percepta, 2) that Plaintiff's email signature block indicated that he worked for Ford as a customer service representative, and 3) that a Percepta supervisor admitted that his orders came directly from Ford. *Id* at *9. The *Layton* court acknowledged that while plaintiff's allegations could establish that Defendant represented Ford in interaction with Ford's customers, "that is a far cry from pleading sufficiently that Ford and Defendant were joint employers." *Id. at *10.*

By comparison here, Plaintiff generally alleges 1) that "JM Family was the parent company of World Omni," 2) that "JM Family and World Omni share employees," and 3) that Defendants "collectively exercise control over their labor operations." (SAC, ¶¶ 9, 11). Based on those facts alone, Plaintiff concludes that "Defendants are therefore joint employers." *Id*. Plaintiff fails to allege ultimate facts, such as which employees are shared and in what ways Defendants purport to collectively exercise control. Plaintiff's SAC contains less factual support than the *Layton* plaintiff's proposed amendments, and like the *Layton* case, the Court here should find that Plaintiff failed to plead facts showing Defendants satisfied the joint employer test.

Under the agency test, two companies qualify as joint employers when one employer delegates traditional employer rights, such as hiring, to a third party. *Church v. Nationwide Ins. Co.,* No. 00-8007-CIV-HURLEY, 2000 U.S. Dist. LEXIS 226899 at *8 (S.D. Fla. July 17, 2000).. In *Church.*, the plaintiff alleged that defendants Nationwide and Rivard were joint employers and agents of one another because Rivard employees sold Nationwide insurance policies and all ethics complaints were addressed to Nationwide. *Id.* The court disposed of Plaintiff's claims in two

sentences, finding that the defendants were not joint employers because Nationwide neither employed Rivard's workers nor retained control over traditional rights such as the ability to hire and fire them. *Ibid.* In the instant case, Plaintiff similarly fails to allege any facts demonstrating a delegation of traditional employer rights. Instead, in an attempt to satisfy the agency test, Plaintiff concludes, without any factual support, that "each Defendant is sued individually, as a joint enterprise, as joint employers, and as agents of each other." (SAC, ¶ 12). Plaintiff's failure to support this conclusory recitation of liability with any factual allegations whatsoever is fatal to her claim.

Florida is a fact-pleading jurisdiction. "In order to state a cause of action, a complaint must allege *sufficient ultimate facts* to show that the pleader is entitled to relief." *Taylor v. City of Riviera Beach*, 801 So. 2d 259, 262 (Fla. 4th DCA 2001) (emphasis added); *see also* Fla. R. Civ. P. 1.110(b) (finding a plaintiff must state a "short and plain statement of the *ultimate facts* showing that the pleader is entitled to relief.") (emphasis added). Where, as here, Plaintiff fails to allege any facts whatsoever in support of her claims that Defendants are her joint employers or a joint enterprise, the Court must dismiss those claims in their entirety. *See, e.g.*, *Bankers Tr. Realty v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (holding that where a complaint fails to state sufficient ultimate facts in support of a claim, and instead "merely states the insufficient legal conclusion" that the elements or factors of a claim have occurred, dismissal is appropriate).

## II.   PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES AGAINST WORLD OMNI

Defendants respectfully request that this Court dismiss the SAC in its entirety, with prejudice, as pled against World Omni because Plaintiff failed to name World Omni in her Charge of Discrimination, instead asserting only claims against a different corporate entity. It is well settled that before filing suit under the FCRA, a plaintiff must exhaust her administrative remedies

by filing a charge of discrimination with the Florida Commission on Human Relations ("FCHR"). *Sunbeam TV Corp. v. Mitzel*, 83 So. 3d 865, 873-74 (Fla. 3d DCA 2012) (citing § 760.11, Fla. Stat. (2010); *Woodham v. Blue Cross & Blue Shield of Fla., Inc*., 829 So. 2d 891, 894 (Fla. 2002)); *see also Orange Cty. v. McLean*, 45 Fla. L. Weekly 745 (Fla. 5th DCA March 27, 2020) (stating that "[a]s a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to file a complaint with the FCHR . . . within 365 days of the alleged violation.") (internal citations omitted)); *accord Sheridan v. State, Dep't of Health*, 182 So. 3d 787, 789 (Fla. 1st DCA 2016) (stating that "[p]rior to filing a civil action alleging discrimination in violation of the FCRA, the individual seeking relief must . . . exhaust the administrative remedies provided by the FCRA.") (citing § 760.11(1), (4), Fla. Stat. (2012)).

The purpose of the exhaustion requirement "is to notify the employer of discriminatory practices and to provide the FCHR with 'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Sunbeam TV Corp.*, 83 So. 3d at 874 (quoting *Gregory v. Ga. Dept. of Human Res*., 355 F.3d 1277, 1279 (11th Cir. 2004); *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1351 (S.D. Fla. 1999)).

Generally, "the failure to name a party in [a charge] precludes a subsequent civil action against that party" where the failure prejudices the unnamed party. *Wooding v. Five Suns Aventura, LLC*, No. 11-20610-Civ, 2012 U.S. Dist. LEXIS 27598, at *5 (S.D. Fla. Mar. 2, 2012).. This is because the naming requirement gives notice to the charge party, allowing the opportunity to engage in conciliation efforts and voluntary compliance with the applicable employment statutes. *Ibid*. Courts deciding whether the naming/notice requirement has been met analyze several factors

including "1) the similarity of interest between the named party and the unnamed party; 2) whether the plaintiff could have ascertained the identity of the unnamed party at the time of the EEOC charge was filed; 3) whether the unnamed parties received adequate notice of the charges; 4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and 5) whether the unnamed party was prejudiced by its exclusion" from the proceedings. *Wooding,* 2012 U.S. Dist. LEXIS 27598, at *6 (quoting *Virgo v. Riviera Beach Assocs, Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994)).

The undisputed record shows that Plaintiff filed a Charge only against JM Family Enterprises, Inc., and **not** World Omni, which entity Plaintiff added as a named defendant for the first time in her First Amended Complaint. *See* SAC, Ex. A. Furthermore, examining the facts alleged according to the factors outlined in *Wooding* further highlight the impropriety of maintaining World Omni in this action. Examining the similarity of interest between Defendants does not favor Plaintiff, who admits that "Defendant JM Family is a diversified automotive company" while "Defendant World Omni is a finance company," highlighting their differing business interests. (SAC, ¶¶ 7-8). While Plaintiff alleges that "JM Family's primary focus includes but is not limited to financial services," she offers no factual support for that conclusion. (SAC, ¶ 7). The second factor concerns whether the plaintiff could have identified and named the unnamed party in the initial EEOC filing, and this factor weighs against Plaintiff as well. Plaintiff alleges she was "hired, compensated and employed by Defendants, JM Family and World Omni" in October 2014 (SAC, ¶ 17), but she presents no facts to explain why she did not name World Omni in her Charge of Discrimination ,which she filed in October 2019, more than five years after allegedly being employed by both Defendants. (SAC, ¶ 14(a)). These facts, on their face, are sufficient to show that Plaintiff could have identified World Omni in her Charge.

The final three factors are whether the unnamed party received adequate notice of the charge, adequate opportunity to participate in conciliation efforts, and whether it was prejudiced by the plaintiff's failure to name the party. Plaintiff fails to set forth any facts to show that any of these factors weigh in favor of applying the exemption to the general rule that lawsuits can brought only against the party named in the underlying charge. Plaintiff alleges no basis on which she should be permitted to proceed with discrimination claims against an entity she did not identify in her Charge nor does not state any reason why she would not have identified World Omni. Accordingly, World Omni respectfully requests that the SAC as pled against it be dismissed. *See McClure v. Oasis Outsourcing II, Inc.*, 674 Fed. App'x 873, 875 (11th Cir. 2016) (unpublished) (holding "the district court did not err in granting the motion to dismiss because the record did not demonstrate that McClure exhausted the administrative requirements. [. . .] Oasis, McClure's alleged employer, was not named in her EEOC charge of discrimination. Instead, McClure's EEOC charge named 'Holiday Inn Express' as her employer and made no factual allegations concerning the conduct of Oasis or its employees in relation to the claim."); *Maxwell v. Dep't Juvenile Justice*, No. CV419-351, 2020 U.S. Dist. LEXIS 35943, at *3 (S.D. Ga. Jan. 2, 2020) ("Regardless of their classification, as these individuals were not included in plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission (EEOC), they cannot be brought in as defendants in this subsequent action.") .

## **CONCLUSION**

Plaintiff has failed to state sufficient facts to hold Defendants liable as joint employers or as a joint enterprise. Accordingly, the Second Amended Complaint should be dismissed in its entirety. Moreover, Plaintiff failed to exhaust her administrative remedies by not naming World Omni in her Charge of Discrimination. Accordingly, the Second Amended Complaint should be dismissed, with prejudice, against World Omni.

CASE NO. CACE-20-010942

Dated:  December 18, 2020

Respectfully submitted,

By: *s/ Jenna Rinehart Rassif*
    Jenna Rinehart Rassif, Esq.
    Florida Bar No. 56855
    Email: *jenna.rassif@jacksonlewis.com*
    Valeria L. Hooker, Esq.
    Florida Bar No. 113688
    E-mail: *valerie.hooker@jacksonlewis.com*
    Templeton N. Timothy, Esq.
    Florida Bar No. 1025172
    E-mail: *templeton.timothy@jacksonlewis.com*
    JACKSON LEWIS P.C.
    One Biscayne Tower, Suite 3500
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 577-7600
    Facsimile: (305) 373-4466
    *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being served on December 18, 2020, on all counsel of record on the service list below via transmission of Notices of Electronic Filing.

*s/ Valerie L. Hooker*
Valerie L. Hooker, Esq.

## SERVICE LIST

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Yadhira Ramirez-Toro Esq.
Florida Bar No. 120506
E-mail: yramirez@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
Email: *jenna.rassif@jacksonlewis.com*
Valeria L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
Templeton N. Timothy, Esq.
Florida Bar No. 1025172
E-mail: *templeton.timothy@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

4811-9593-7236, v. 4

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,         )
                                 )
        Plaintiff,        )
                                 )
v.                               )      Case No.:
                               )
JM FAMILY ENTERPRISES, INC.,   )
                               )
        Defendant.     )
_____)

## COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendant JM FAMILY

ENTERPRISES, INC. ("Defendant") and alleges:

1.      This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys'

fees, and costs.

2.      This is an action to recover damages for discrimination and retaliation pursuant to

the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA").

3.      Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.      Defendant is, and at all times mentioned was, a foreign profit corporation, having

its main place of business in Broward County, Florida.

5.      At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat.

§760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



6.      At all times material, Defendant was a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.      At all times material, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

8.      Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

9.      Plaintiff has complied with all conditions precedent in filing this action, to wit;

    a.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

    b.  Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

10.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## RELEVANT FACTS

11.     Plaintiff was hired by Defendant on or about October 14, 2014.

12.     At all times material, Plaintiff was employed by Defendant as a Customer Service Representative.

13.     During Plaintiff's employment with Defendant she excelled in her job performance, and was recognized for her outstanding work.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

14.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

15.     Plaintiff immediately informed her supervisors, including but not limited to  Jillian De Los Reyes, Audrey Demoss, and Rebecca Bell ("Bell"), of her diagnosis.

16.     Plaintiff was placed on short term disability as a result of her diagnosis.

17.     Plaintiff returned to work in or about October of 2018.

18.     Upon her return to work, Defendant's conduct toward Plaintiff was different than Defendant's conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Particularly, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

19.     Defendant's conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create an abusive working environment.

20.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

21.     Plaintiff complained to Bell about the bully, belittling, and micromanaging, but nothing was done. Defendant refused to act upon Plaintiff's complaints.

22.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

23.     Defendant denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendant responded by moving Plaintiff to a desk further away from the restroom.

24.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendant, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

25.     On or about June 7, 2019, Defendant terminated Plaintiff, allegedly because she violated a company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and  was clearly pretextual.

### COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA – HOSTILE WORK ENVIRONMENT

26.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

27.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

28.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

29.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

30.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Demoss talked down to Plaintiff and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

31.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

32.     The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create a discriminatorily abusive working environment.

33.     Defendant, as Plaintiff's employer, was responsible for maintaining a working environment free from unwelcomed harassment and abuse.

34.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

35.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

36.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

37.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA – DISPARATE TREATMENT

38.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

www.saenzanderson.com



6

39.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

40.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

41.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

42.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

43.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

44.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

45.     As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

46.     Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

7

47.    The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

G. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

H. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K. Award Plaintiff reasonable costs and attorney's fees; and

L. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA – FAILURE TO ACCOMMODATE

48.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

49.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

www.saenzanderson.com



8

50.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

51.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

52.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

53.     Defendant denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

54.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendant.

55.     The accommodations requested by Plaintiff were reasonable.

56.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

57.     Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

58.     The discrimination of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

9

59. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

60. Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendant's conduct.

61. The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION

www.saenzanderson.com



10

62.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 25 above as if set out in full herein.

63.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

64.     At all times material, Defendant was aware of Plaintiff's handicap, or perceived handicap.

65.     Plaintiff engaged in a protected activity when she complained to Bell about being bully, belittling, and micromanaging because of her disability.

66.     Defendant intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff continuously requested reasonable accommodations from Defendant.

67.     Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

68.     The retaliation of Plaintiff by Defendant was based on Plaintiff's handicap, or perceived handicap.

69.     As a direct and proximate result of the intentional violations by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

70.     Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

11

71.     The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: July 7, 2020.                                    Respectfully submitted,

**By: /s/ Tanesha Blye**
Tanesha Blye, Esquire
Fla. Bar No.: 0738158
Email: tblye@saenzanderson.com

Yadhira Ramirez-Toro, Esquire
Fla. Bar No.: 120506
Email: yramirez@saenzanderson.com

R. Martin Saenz, Esquire

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

12

Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



# EXHIBIT B

Case 0:21-cv-60530-FAM   Document 1-1   Entered on FLSD Docket 03/08/2021   Page 186 of 365

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Case No.: CACE-20-010942
                                         )
JM FAMILY ENTERPRISES, INC. and          )
WORLD OMNI FINANCIAL CORP.,              )
                                         )
        Defendants.                      )
_____  )

## **SECOND AMENDED COMPLAINT**

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendants JM FAMILY ENTERPRISES, INC. ("JM Family") and WORLD OMNI FINANCIAL CORP. ("World Omni") (collectively referred to as "Defendants") and alleges:

1.      This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys' fees, and costs.

2.      This is an action to recover damages for discrimination and retaliation pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA").

3.      Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.      Defendants are, and at all times mentioned was, a foreign profit corporation, having its main place of business in Broward County, Florida.

5.      At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat. §760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

www.saenzanderson.com



1

6.      At all times material, Defendants were a "person" and "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

7.      Defendant JM Family is a diversified automotive company whose subsidiaries include World Omni. JM Family's primary focus includes but is not limited to financial services.

8.      Defendant World Omni is a finance company which provides a broad range of financial products and services to consumers, dealers, and lenders, including originating, underwriting, and servicing vehicle retail and lease contracts with companies.

9.      At all relevant times, Defendant JM Family was the parent company of World Omni Financial Corporation.

10.     At all times material, Defendants collectively employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

11.     Defendants JM Family and World Omni share employees or interchange employees, such as executive level, management and human resources ("HR") employees; share registered agents; share board members; work in the direct interest of one another; and their employees are in the common control of both companies. Accordingly, Defendants' operations are interrelated and they collectively exercise control over their labor relations. The Defendants are therefore joint employers. Alternatively, each company is an enterprise under the FLSA.

12.     Each Defendant is sued individually, as a joint enterprise, as joint employers, and as agent of each other.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

2

13.    Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

14.    Plaintiff has complied with all conditions precedent in filing this action, to wit;

    a.   Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 22, 2019.

    b.   Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020.

*See* Plaintiff's Charge of Discrimination attached hereto as *Exhibit A*.

15.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## **RELEVANT FACTS**

16.    JM Family and World Omni operate their business out of the same building located at 190 Jim Moran Blvd., Deerfield Beach, Florida.

17.    Plaintiff was hired by Defendants on or about October 14, 2014. Specifically, Plaintiff was hired, compensated and employed by both Defendants, JM Family and World Omni.

18.    At all times material, Plaintiff was employed by Defendants as a Customer Service Representative.

19.    During Plaintiff's employment with Defendants, she excelled in her job performance, and was recognized for her outstanding work.

20.    In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

www.saenzanderson.com



3

21.     Plaintiff immediately informed her supervisors, including but not limited to Jillian De Los Reyes ("De Los Reyes"), Audrey Demoss ("Demoss"), and Rebecca Bell ("Bell"), of her diagnosis.

22.     Plaintiff was placed on short term disability as a result of her diagnosis.

23.     Plaintiff returned to work in or about October of 2018.

24.     Upon her return to work, Defendants' conduct toward Plaintiff was different than Defendants' conduct toward Plaintiff's colleagues who were similarly situated, but who did not suffer from a disability or handicap. Demoss began bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Defendants' supervisors and managers, including but not limited to De Los Reyes, Demoss and Sharon Miller, began to unfairly and unjustly issue write-ups and correction letters to Plaintiff and place Plaintiff on probation. Plaintiff's write-ups and correction letters were related to Plaintiff's performing her job duties pursuant to the work restrictions provided by Plaintiff's treating physicians.

25.     Additionally, Demoss talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

26.     Defendants' conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create an abusive working environment.

27.     The discriminatory environment created by Defendants was so pervasive that it amounted to a hostile work environment for Plaintiff.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

4

28.     Plaintiff complained to Defendants' HR and management departments, including but not limited to Bell, about the bullying, belittling, and micromanaging, but nothing was done. Defendants refused to act upon Plaintiff's complaints.

29.     Due to her disability, Plaintiff requested certain accommodations, including to either work from home, or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

30.     Defendants denied Plaintiff's reasonable requests for accommodations. In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendants responded by moving Plaintiff to a desk further away from the restroom.

31.     At all times during her employment, Plaintiff was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota outlined in her doctor's records submitted to Defendants, Plaintiff's supervisors began to discipline her. For example, Plaintiff's supervisors continued to pressure and harass her by conducting meetings with Plaintiff during which they ignored her revised contract quota and insisted that Plaintiff continue to complete a hire number of contracts to avoid being terminated. At no time during these meetings did Plaintiff's supervisors complain about the quality of her work.

32.     On or about June 7, 2019, Defendants' HR and management employees had a meeting with Plaintiff and terminated her employment. Defendants alleged that Plaintiff's termination was due to her violation of company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and was clearly pretextual.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

### COUNT I: DISCRIMINATION IN VIOLATION OF THE FCRA – <u>HOSTILE WORK ENVIRONMENT</u>

33.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 28, 31-32 above as if set out in full herein.

34.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

35.    At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

36.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

37.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by creating a hostile work environment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap. For example, Defendants unfairly and unjustly issued write-ups and correction letters to Plaintiff, placed Plaintiff on probation, talked down to Plaintiff, and made disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis.

38.    Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

39.    The harassment was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendants and to create a discriminatorily abusive working environment.

www.saenzanderson.com



6

40.     Defendants, as Plaintiff's employer, were responsible for maintaining a working environment free from unwelcomed harassment and abuse.

41.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

42.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

43.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

44.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

www.saenzanderson.com



7

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

### **COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA – DISPARATE TREATMENT**

45.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 32 above as if set out in full herein.

46.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

47.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

48.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

49.     As detailed in paragraphs 24 through 25 and 28 through 32, Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.

50.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

www.saenzanderson.com



8

51.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

52.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

53.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

54.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

G.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

H.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

I.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

J.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

K.  Award Plaintiff reasonable costs and attorney's fees; and

L.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

www.saenzanderson.com



## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE FCRA – FAILURE TO ACCOMMODATE

55.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 22, and 29 through 32 above as if set out in full herein.

56.     Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

57.     At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

58.     At all times material, Plaintiff was qualified to perform the essential functions of her job.

59.     Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

60.     Defendants denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

61.     Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendants.

62.     The accommodations requested by Plaintiff were reasonable.

63.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated

www.saenzanderson.com



employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

64.     Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

65.     The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

66.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

67.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

68.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

www.saenzanderson.com



D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

## <u>COUNT IV: RETALIATION IN VIOLATION OF THE FCRA – TERMINATION</u>

69.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 5 through 32 above as if set out in full herein.

70.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

71.    At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

72.    Plaintiff engaged in a protected activity when she complained to Defendants HR and Management employees, including but not limited to Bell, about being bully, belittling, and micromanaging because of her disability.

73.    Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff complained of Defendants' HR and management employees' discriminatory conduct, the hostile work environment she was subjected to and she continuously requested reasonable accommodations from Defendants.

www.saenzanderson.com



12

74.     Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

75.     The retaliation of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

76.     As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

77.     Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

78.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

www.saenzanderson.com



F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<div align="center">

### JURY TRIAL DEMAND

</div>

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: November 25, 2020.                    Respectfully submitted,

                                             **By: /s/ Tanesha Blye**
                                             Tanesha Blye, Esq.
                                             Fla. Bar No.: 0738158
                                             Email: tblye@saenzanderson.com

                                             Aron Smukler, Esq.
                                             Fla. Bar No.: 0297779
                                             Email: asmukler@saenzanderson.com

                                             R. Martin Saenz, Esq.
                                             Fla. Bar No.: 0640166
                                             Email: msaenz@saenzanderson.com

                                             SAENZ & ANDERSON, PLLC
                                             20900 NE 30th Avenue, Ste. 800
                                             Aventura, Florida 33180
                                             Telephone: (305) 503-5131
                                             Facsimile: (888) 270-5549

<div align="center">

www.saenzanderson.com



</div>

Case No.: CACE-20-010942

# Exhibit A

Case No.: CA-520-010942

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 510-2020-00457 |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Aude J Raphael** | **(954) 636-9490** | **12/12/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Saenz & Anderson, 20900 NE 30th Ave., Ste. 800, Aventura, FL 33180 (msaenz@saenzanderson.com)** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **JM FAMILY ENTERPRISES, INC.** | **100+** | **(954) 429-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Jim Moran Blvd, Deerfield Beach, FL 33442** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10/2018**  Latest **6/7/2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 28-year-old black, Haitian woman. I began working for the Respondent on or about October 14, 2014 as a customer service representative. I was diagnosed with multiple sclerosis in 2017 and placed on short term disability at work. On October 2018, after I returned from a FMLA leave and hospitalization related to my illness, I began to feel micromanaged.

In addition, my health condition deteriorated, and I requested certain accommodations at work, which were denied. Specifically, I requested to park closer to the building where I worked because I could only walk with difficulty and with the help of a walker. Respondent said "no". I also requested to work from home, and this request was also denied. White/non-Haitian employees and non-disabled employees who perform similar work as I do are permitted to work from home and are allowed to park their cars close to their offices.

In my short tenure with the Respondents, I quickly became a Senior Customer Representative (SCR) and my pay increased accordingly. However, since my return from FMLA leave due to my disability (multiple sclerosis), I have been written up on various occasions allegedly because I was working too slow and was not being productive, which was not true. I complained about this.

On or about June 7, 2019 Respondent terminated my employment because I allegedly failed to include "correction letters" with certain correspondence.

I believe Respondent discriminated and retaliated against me because of my national origin, race and disability (or perceived disability) in violation of Title VII of the Civil Rights Act of 1964, as amended; the American With Disabilities Act, 42 U.S.C. §12101 *et seq.*; and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.

10/22/19
Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)* |

RECEIVED
OCT 22 2019
EEOC-MIAMI DISTRICT OFFICE

**EXHIBIT A - PLAINTIFF'S SECOND AMENDED COMPLAINT**

Case 0:21-cv-60530-FAM   Document 1-1   Entered on FLSD Docket 03/08/2021   Page 202 of 365

|  |  | IN THE CIRCUIT COURT OF THE 17THJUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA |
|---|---|---|

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　Case No.: CACE-20-010942
　　　　　　　　　　　　　　　　　　　)
JM FAMILY ENTERPRISES, INC.,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　　)

## **NOTICE OF HEARING**

(15 to 30 minutes Special Set)

PLEASE TAKE NOTICE that a hearing has been set before the Honorable Judge Carol-Lisa Phillips at the Broward County Courthouse 201 S.E. 6th Street Chambers W15127, Fort Lauderdale, FL 33301, on the 14th day of January 2021, at 10:15 A.M., or as soon as the matter may be heard upon.

MOTION:　DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Please Govern Yourselves Accordingly.

Respectfully submitted,
**By: /s/ Tanesha Blye**
Tanesha Blye, Esq. F
la. Bar No.: 0738158
Email: tblye@saenzanderson.com
Aron Smukler, Esq. F
la. Bar No.: 0297779
Email: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Fla. Bar No.: 0640166

Email:      msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing document through Florida's E-Filing Portal.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via E-mail or in some other authorized manner.

**By: /s/ Tanesha Blye**

## SERVICE LIST

AUDE JESSICA RAPHAEL **v.** JM FAMILY ENTERPRISES, INC.
Case No.: CACE-20-010942
**United States District Court, Southern District of Florida**

Tanesha Blye, Esq.
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
E-mail: msaenz@saenzanderson.com SAENZ
& ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Attorneys for Plaintiff

Jenna Rinehart Rassif, Esq. Florida Bar
No. 56855 Email:
jenna.rassif@jacksonlewis.com Valeria L.
Hooker, Esq. Florida Bar No. 113688 E-
mail: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C. One Biscayne
Tower, Suite 3500 2 South Biscayne
Boulevard Miami, Florida 33131
Telephone: (305) 577-7600 Facsimile:
(305) 373-4466
Attorneys for Defendants

Case 0:21-cv-60530-FAM Document 1-1 Entered on FLSD Docket 03/08/2021 Page 205 of 365

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL, )
)
      Plaintiff, )
)
v. )    Case No.: CACE-20-010942
)
JM FAMILY ENTERPRISES, INC., )
)
)
      Defendant. )

## NOTICE OF CANCELLATION OF HEARING

(Motion Calendar)

**PLEASE BE ADVISED** that the hearing set before the Honorable Judge Carol-Lisa Phillips at the Broward County Courthouse 201 S.E. 6th Street Chambers W15127, Fort Lauderdale, FL 33301, on the 19th day of January 2021, at 8:45 A.M., is hereby cancelled.

MOTION: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Please Govern Yourselves Accordingly.

Respectfully submitted,
**By: /s/ Tanesha Blye**
Tanesha Blye, Esq. F
la. Bar No.: 0738158
Email: tblye@saenzanderson.com
Aron Smukler, Esq. F
la. Bar No.: 0297779
Email: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Fla. Bar No.: 0640166

Email: [msaenz@saenzanderson.com](mailto:msaenz@saenzanderson.com)
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing document through Florida's E-Filing Portal.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via E-mail or in some other authorized manner.

**By: /s/ Tanesha Blye**

## SERVICE LIST

AUDE JESSICA RAPHAEL **v.** JM FAMILY ENTERPRISES, INC.
Case No.: CACE-20-010942
**United States District Court, Southern District of Florida**

Tanesha Blye, Esq.
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
E-mail: [asmukler@saenzanderson.com](mailto:asmukler@saenzanderson.com)
R. Martin Saenz, Esq.
E-mail: msaenz@saenzanderson.com SAENZ
& ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Attorneys for Plaintiff

Jenna Rinehart Rassif, Esq. Florida Bar
No. 56855 Email:
jenna.rassif@jacksonlewis.com Valeria L.
Hooker, Esq. Florida Bar No. 113688 E-
mail: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C. One Biscayne
Tower, Suite 3500 2 South Biscayne
Boulevard Miami, Florida 33131
Telephone: (305) 577-7600 Facsimile:
(305) 373-4466
Attorneys for Defendants

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL, )
)
       Plaintiff, )
)
v. )     Case No.: CACE-20-010942
)
JM FAMILY ENTERPRISES, INC. and )
WORLD OMNI FINANCIAL CORP., )
)
       Defendants. )
_____ )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
<u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

      Plaintiff, AUDE JESSICA RAPHAEL ("Plaintiff" or "Raphael"), by and through

undersigned counsel, hereby files this Response in Opposition to Defendants' JM FAMILY

ENTERPRISES, INC. and WORLD OMNI FINANCIAL CORP. ("WORLD OMNI")

(collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint and

Memorandum of Law in Support Thereof, and alleges:

**<u>INTRODUCTION</u>**

      Plaintiff was hired by Defendants on October 14, 2014 as a Customer Service

Representative. In May of 2017, Plaintiff was diagnosed with multiple sclerosis. Plaintiff

immediately informed her supervisors, including but not limited to Jillian De Los Reyes ("De Los

Reyes"), Audrey Demoss ("Demoss"), and Rebecca Bell ("Bell"), of her diagnosis. As a result,

she was placed on short term disability. Plaintiff returned to work in October of 2018. However,

upon her return to work, Defendants created an abusive work environment for Plaintiff and treated

Plaintiff very poorly because of her handicap. Demoss began bullying, belittling, and

micromanaging Plaintiff on a constant, pervasive basis because of Plaintiff's handicap. Demoss continued to make disparaging remarks related to Plaintiff's debilitated condition and talk down to Plaintiff on a constant basis. When Plaintiff complained to Bell about the bullying, Defendants refused to act upon Plaintiff's complaints.

Plaintiff requested certain accommodations, including to either work from home, or to be assigned a closer parking spot and moved to a desk closer to the restroom to minimize the amount that she would have to walk. Instead of accommodating these simple and reasonable requests, Defendants responded by maliciously moving Plaintiff to a desk even further away from the restroom. Defendants terminated Plaintiff in June of 2019, for an alleged violation of company policy. This alleged violation was never brought to Plaintiff's attention prior to her termination and was obviously pretextual.

Plaintiff filed the Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2019. On May 7, 2020, Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation, and on July 7, 2020, filed the initial complaint, alleging discrimination and retaliation against JM FAMILY ENTERPRISES, INC. pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"). Plaintiff filed the First Amended Complaint on August 11, 2020, adding WORLD OMNI as a defendant. Plaintiff then filed the Second Amended Complaint on November 25, 2020. Plaintiff attached the EEOC Charge and Notice of Right to Sue to the Second Amended Complaint.

Defendants have since filed the Motion to Dismiss Plaintiff's Second Amended Complaint (Defendants' "Motion"), because: (1) the Second Amended Complaint supposedly fails to state a basis upon which to hold Defendants liable as a joint enterprise or as joint employers; and (2) Plaintiff allegedly did not sufficiently exhaust her administrative remedies against WORLD

OMNI. However, for the reasons stated hereinafter, Defendants' Motion should be denied with prejudice.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court must accept the allegations in the complaint as true and consider them in the light most favorable to the plaintiff. *Vienneau v. Metropolitan Life Ins. Co.*, 548 So.2d 856, 858 (Fla. 4th DCA 1989); *Shumrak v. Broken Sound Club Inc.*, 898 So.2d 1018, 1020 (Fla. 4th DCA 2005); *Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So.2d 843, 845 (Fla. 4th DCA 2004); *Seminole Tribe of Florida v. Times Pub. Co., Inc.*, 780 So.2d 310, 311 (Fla. 4th DCA 2001). Motions to dismiss pursuant to Rule 1.140(b)(6) should be granted only when the party seeking dismissal has conclusively demonstrated that plaintiff could prove no set of of facts whatsoever in support of the cause of action. See *Ingalsbe v. Stewart Agency, Inc.*, 869 So.2d 30, 35 (Fla. 4th DCA 2004); *Morris v. Fla. P. & L. Co.*, 753 So.2d 153, 154 (Fla. 4th DCA 2000); *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA 1981); *Martin v. Highway Equipment Supply Co.*, 172 So.2d 246, 248 (Fla. 2d DCA 1965); *Almarante v. Art Institute of Fort Lauderdale, Inc.*, 921 So. 2d 703, 704-705 (Fla. 4th DCA 2006). In fact, by filing a motion to dismiss under Rule 1.140(b)(6), the defendant admits all well pleaded facts as true, as well as reasonable inferences arising from those facts. *Vienneau v. Metropolitan Life Ins. Co.*, *supra*, cited in *Salit v. Ruden, McClosky, Smith, Schuster*, 742 So. 2d 381 (Fla. 4th DCA 1999).

A motion to dismiss, filed pursuant to Florida Rule of Civil Procedure 1.140(b)(6), tests the legal sufficiency of a complaint to state a cause of action and is not intended to determine issues of ultimate fact. *McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss*, 704 So. 2d 214, 215 (Fla. 2d DCA 1998); *See, Holland v. Anheuser Busch, Inc.*, 643 So. 2d 621, 623 (Fla. 2d DCA 1994). Therefore, in ruling on a motion to dismiss a complaint for failure to

state cause of action, the trial court must confine itself strictly to the allegations within the four corners of the complaint. *McWhirter*, 704 So. 2d at 215. To survive a motion to dismiss, a complaint must allege a prima facie case. *Alvarez, et al. v. E&A Produce Corp.*, 708 So. 2d 997, 999–1000 (Fla. 3d DCA 1998). Whether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact, excluding the bare conclusions of the plaintiff. *Id*.

## MEMORANDUM OF LAW

### I.   WHETHER THE DEFENDANTS SATISFY THE JOINT EMPLOYER OR JOINT ENTERPRISE STATUS SHOULD BE DETERMINED BY SUMMARY JUDGMENT

Defendants improperly conclude that the Second Amended Complaint should be dismissed because it fails to set forth facts alleging the joint employer or joint enterprise status of Defendants. As Defendants point out in their Motion, Florida courts look to federal case-law when determining "whether separate but related entities should be aggregated for purposes of employment and labor statutes." See *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593 (Fla. 3d DCA 2009) (citing *Martinolich v. Golden Leaf Mgmt.*, 786 So. 2d 613, 614 (Fla. 3d DCA 2001)). However, federal courts have frequently ruled that a determination of joint employer status may not be made at the motion to dismiss stage. *Roundtree v. Tegna, Inc.*, 2020 U.S. Dist. LEXIS 141976, at *8 (M.D. Fla. 2020).

Similar to this case, the court in *Downie v. BF Weston, LLC*, 2016 U.S. Dist. LEXIS 181542, carefully details the joint employer or joint enterprise status case law. In *Downie*, Diana Downie filed a complaint against BF Weston, LLC, BF Restaurant Management, LLC, and BurgerFi International, LLC for the violation of the FCRA based on disability discrimination. BF Weston, LLC moved to dismiss the claims against BF Restaurant Management, LLC and BurgerFi Intentional, LLC on the basis that the Complaint did not state a claim for joint employer liability.

*Id.* The court recognized that a determination as to whether or not the plaintiff's complaint adequately alleged a joint employment relationship is one that "requires a factual inquiry that is best left until an adequate record is developed." *Downie*, at *9. Courts have generally followed this notion that such a decision requires a factual inquiry that is best left until the adequate record is developed. See *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (holding that whether or not joint employment exists is a factual question); *Kaiser v. Trofholz Technologies, Inc.*, 935 F.Supp.2d 1286, 1293 (M.D. Ala. 2013) (finding that a determination of joint employment is best addressed "after the parties have had an opportunity to uncover facts through discovery to support or refute this claim").

Courts will typically only rule otherwise in situations where the plaintiff completely fails to address the joint employer factors in its factual allegations. See *Roundtree*, at *9. In *Roundtree*, the plaintiff filed a complaint including violations under the FCRA and named two defendants to be held liable under a joint employer theory. *Id.* at *8. The plaintiff argued that, under *Downie*, a determination of joint employer status may not be made at the motion to dismiss stage. *Id.* However, the court ultimately sided with the defendant, because the plaintiff failed to assert any factual allegations even remotely addressing the joint employer factors. *Id.*

The present case distinguishes itself from that of *Roundtree*. Unlike in *Roundtree*, where the plaintiff's complaint was completely devoid of facts relating to joint employer status, the Second Amended Complaint makes several significant references to the issue. Specifically, the Second Amended Complaint addressed several facts, including that Defendants (1) share or interchange executive, management level employees, human resources, registered agents, and board members; (2) operate their business out of the same building located at 190 Jim Moran Blvd., Deerfield Beach, FL; and (3) collectively hired, compensated, and employed Plaintiff. *See* 2nd

Am. Compl. ¶¶ 11 and 16-17. Consequently, Plaintiff has asserted the requisite factual allegations in the Second Amended Complaint needed to survive a motion to dismiss.

## II.   PLAINTIFF SUFFICIENTLY ALLEGED THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES

Defendants wrongfully assert that the disability discrimination and retaliation claims brought in Plaintiff's Second Amended Complaint should be dismissed for Plaintiff's failure to exhaust her administrative remedies. Defendants' claim that Plaintiff failed to exhaust her administrative remedies is solely based upon the procedural technicality that Plaintiff failed to name WORLD OMNI in her Charge of Discrimination.

As a preliminary matter, the U.S. Supreme Court recently held that the obligation imposed on plaintiffs alleging discrimination under Title VII to file charges with the EEOC or similar state agencies is not a jurisdictional prescription delineating the adjudicatory nature of the courts, but is instead a mandatory claims-processing rule. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1845 (2019) ("Title VII's charge-filing requirement is not jurisdictional").

Prior to filing suit under Title VII or the FCRA, an individual must Second exhaust their administrative remedies by filing a Charge with the EEOC. *Gregory v. Ga. Dep't of Human. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). One of the purposes of this exhaustion requirement is to ensure that the EEOC has the opportunity to investigate the allegations stated in the Charge. *Wu v. Thomas,* 863 F.2d 1543, 1548 (11th Cir. 1989). The ensuing judicial complaint is thereafter limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the Charge. *Gregory*, 355 F.3d at 1280. However, Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Id*. As such, "the scope of an EEOC complaint should not be strictly interpreted" and a judicial complaint may encompass any kind of discrimination like or related to the allegations contained in the charge. *Id*. In fact, courts are

"extremely reluctant" to bar discrimination claims based on procedural technicalities and will allow judicial claims that "amplify, clarify, or more clearly focus" the allegations brought by the EEOC complaint. *Id.* at 1279.

Although a party not named in an EEOC Charge may generally not be sued in a later civil action, an unnamed party may still be sued in a civil action arising from that Charge when necessary to fulfill the purposes of Title VII. *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010). The naming precondition therefore "must be *liberally construed*" and the unnamed party may still be sued if doing so fulfills the purposes of Title VII. *Id* (emphasis added). In analyzing whether the purposes of Title VII are met, Courts consider several factors, including:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id* at 456-457. These factors are not meant to impose a "rigid test," and other factors may be relevant depending on the specific facts of the case. *Id* at 457. For example, one additional factor this Court has considered is whether an investigation of the unnamed party could have reasonably grown out of the EEOC charge. *Id*. This additional factor "weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge." *Id*.

For example, in *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1359 (11th Cir. 1994), the plaintiff only named two entities, Sterling Group, Inc. ("Sterling Group") and Sheraton Ocean Inn ("Sheraton Ocean") in her EEOC Charge of Discrimination. However, the plaintiff failed to identify Riviera Beach Associates, Inc. ("Riviera Beach") (the company contracted by Sheraton

Ocean to manage the hotel) in the Charge. *Id*. The Appellate Court found that Riviera Beach "was a closely related entity since it is the sole owner of the Sheraton Ocean Inn" and that two other parties who were general partners in the Riviera Beach Limited Partnership were "functionally identical to the partnership and should not be protected by the naming requirement." *Id*.

In the present case, World Omni should not be protected by the naming requirement because: (1) Plaintiff was hired, compensated, and employed by World Omni; (2) "JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp" [*see World Omni*, http://www.worldomni.com (last visited October 29, 2020), attached hereto as **Exhibit "A,"** *see also Contact Us*, JM Family Enterprises, https://jmfamily.com/contact (last visited October 29, 2020), attached hereto as **Exhibit "B"**]; (3) Defendants' operate out of the same building located at 190 Jim Moran Blvd., Deerfield Beach, FL, and Defendants share the same registered agent and substantially similar board members [*see Detail by Entity Name*, Sunbiz, http://search.sunbiz.org/Inquiry/CorporationSearch/ByName (last visited November 2, 2020), attached hereto as **Composite Exhibit "C"**]; and (4) Defendants share employees and/or interchange employees, work in the direct interest of one another, and their employees are in the common control of both companies. As such, an investigation of World Omni likely grew out of Plaintiff's EEOC charge.

Furthermore, as correctly asserted by Defendants, "the failure to name a party in [a charge] precludes a subsequent civil action against that party" where the failure prejudices the unnamed party. *Wooding v. Five Suns Aventura*, LLC, No. 11-20610-Civ, 2012 U.S. Dist. LEXIS 27598, at *5 (S.D. Fla. Mar. 2, 2012). However, Defendants fail to cite *any* prejudices WORLD OMNI has endured as a result of Plaintiff's inadvertent failure to identify it in the Charge. In fact, WORLD OMNI, should have known about the EEOC Charge because it was Defendants' counsel who

informed Plaintiff that "JM Family Enterprises, Inc. ("JMFE"), never employed Ms. Raphael. Instead, Ms. Raphael worked for World Omni Financial Corporation, a subsidiary of JMFE." *See* **E-mail from Defendants' Counsel, attached hereto as Exhibit "D."**

Accordingly, barring Plaintiff's Second Amended Complaint because of a minute technicality (i.e., Plaintiff only listing one entity in the EEOC Charge) would be unduly burdensome and circumvent the purposes of Title VII.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss should be denied.

Dated: January 11, 2021.                     Respectfully submitted,

**Aron Smukler**
Aron Smukler, Esq. (FBN: 297779)
E-mail: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Florida E-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the Florida E-Filing Portal or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: **Aron Smukler**

## SERVICE LIST
**Aude Jessica Raphael v. JM Family Enterprises, Inc. and World Omni Financial Corp.**
**Case No.: CACE-20-010942**

R. Martin Saenz, Esq.
Email: msaenz@saenzanderson.com
Tanesha Blye, Esq.
Email: tblye@saenzanderson.com
Aron Smukler, Esq.
Email: asmukler@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*

Jenna Rinehart Rassif, Esq.
Email: jenna.rassif@jacksonlewis.com
Valerie L. Hooker, Esq.
Email: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Counsel for Defendants*

Case No.: CACE-20-010942

# Exhibit A

Case No.: CACE-20-010942

JM Family ranks No. 26 on *Fortune's*

HOME
(INDEX.HTML)

ABOUT
(ABOUT.HTML)

LOCATIONS
(WORLDOMNI.HTML)

INVESTOR RELATIONS
(ASSET.HTML)

(index.html)

For 22 years, JM Family, World Omni's parent company, has been ranked by *Fortune ® Magazine* as one of the 100 Best Companies to Work for in the U.S.

**LEARN MORE ABOUT OUR GREAT WORKPLACE** → (http://reviews.greatplacetowork.com/jm-fa

## COMPANY CULTURE
## WELCOME TO JM FAMILY



JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp. As a leader in the automotive industry, JM Family's primary focus is on vehicle distribution and processing, financial services, warranty and insurance activities, retail vehicle sales and dealer technology services.

**LEARN MORE (HTTP://WWW.JMFAMILY.COM/)**

## INVESTOR RELATIONS
## SMART INVESTMENT



World Omni offers public and private term securitization debt, backed by retail, lease and floorplan originations derived mainly from 177 Toyota dealerships in the southeast. Find out more about our asset-backed securitizations.

**LEARN MORE (ASSET.HTML)**

## WORLD-CLASS SERVICE
## ESTABLISHED IN 1981

## STRENGTH IN NUMBERS

| 3,000,000+ Contracts | 22 Years in a Row | 4,300 Associates |
|---|---|---|
| funded since 1981 | Fortune® 100 Best Companies to Work For | at JM Family Enterprises |

## OPERATING DIVISIONS

 **Southeast Toyota Finance**

(https://www.setf.com/)

Southeast Toyota Finance delivers a full range of financial products and services to Toyota dealers in the southeast United States, including special retail and lease programs.



(https://www.onedatascan.com/)

As a global leader, DataScan provides clarity to wholesale loan accounting and manages risk with holistic auditing solutions for a wide-range of clients throughout the world.

Case No.: CACE-20-010942



World Omni is a diversified financial company offering a broad range of products and services to automotive dealers, consumers and lenders.

**LEARN MORE** (ABOUT.HTML)

## CORE VALUES



COOPERATION          COMMUNICATION          INNO

About Us (worldomni.html)    Terms & Conditions (terms.html)

World Omni Financial Corp. is a subsidiary of JM Family, which was named on FORTUNE 100 Best Companies to Work For® FORTUNE and FORTUNE 100 Best Companies to Work For are registered trademarks of Fortune Media IP Limited and are used under license.

Case No.: CACE-20-010942

# Exhibit B



Newroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS



Contact Us

## General Information

**Corporate Headquarters**

info@jmfamily.com
100 Jim Moran Blvd.
Deerfield Beach, FL 33442
954-429-2000
Website
Facebook

Directions to this Location

## JM Lexus

5350 W. Sample Road
Margate, FL 33073
800-565-3987 | Local 954-972-2200
Website
Facebook
Twitter

Directions to this location

## Corporate Community Impact

100 Jim Moran Blvd.
Deerfield Beach, FL 33442
954-363-6150

Directions to this Location

## Media

Christie.Caliendo@jmfamily.com
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Directions to this Location

## Careers

Click here to apply online
For employment verification,
call 800-488-2144, ext. 1520

## Southeast Toyota Distributors, LLC

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
Website

Directions to this Location

## Southeast Toyota Vehicle Processing - Florida

Westlake Industrial Park 9985 Pritchard Road
Jacksonville, FL 32219

Directions to this Location

## Southeast Toyota Vehicle Processing - Florida

Jacksonville Port Authority 1751 Talleyrand Ave.
Jacksonville, FL 32206

Directions to this Location

## Southeast Toyota Vehicle Processing - Georgia

338 Veterans Memorial Pkwy
Commerce, GA 30530

Directions to this Location

Case No.: CACE-20-010942

## JM&A Group - Missouri

3120 Rider Trail South
Earth City, MO 63045
Website

Directions to this Location

## World Omni Financial Corp. - Florida

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
866-663-9663
Website

Directions to this Location

## Southeast Toyota Finance - Florida

250 Jim Moran Blvd.
Deerfield Beach , FL 33442
866-663-9663
Website

Directions to this Location

## Southeast Toyota Finance - Alabama

6150 Omni Park Drive
Mobile, AL 36609
866-663-9663
Website

Directions to this Location

## Southeast Toyota Finance - Missouri

3120 Rider Trail South
Earth City, MO 63045
866-663-9663
Website

Directions to this Location

## Home Franchise Concepts

19000 MacArthur Blvd., Suite 1000
Irvine, CA 92612
949-404-1100
Website

Directions to this location

    

Stay Connected with JM Family:

   

Case No.: CACE-20-010942

# Exhibit C

Case No.: CACE-20-010942



# Detail by Entity Name

Florida Profit Corporation
WORLD OMNI FINANCIAL CORP.

**Filing Information**

| | |
|---|---|
| **Document Number** | G17306 |
| **FEI/EIN Number** | 59-2238832 |
| **Date Filed** | 12/30/1982 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 01/04/1993 |
| **Event Effective Date** | NONE |

**Principal Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Mailing Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
North Palm Beach, FL 33408

Name Changed: 02/03/2020

Address Changed: 04/29/2020

**Officer/Director Detail**

**Name & Address**

Title Director

Burns, Brent D.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director, President

Chait, Daniel M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Coombs, Ronald M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Williams, Caren Snead
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Browdy, Alan J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Treasurer

Gebhard, Eric M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Arends, Rodney
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Sheptak, Peter J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Hollis, Michael

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Romano, Bryan
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Sherry, Joanna E.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Cateriano, Jose Alfredo
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Brown, Edward J., Jr.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, General Counsel, Secretary

Hall, Andre L.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Gray, Michael A.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Shope, William J.
190 Jim Moran Blvd.

Deerfield Beach, FL 33442

Case No.: CACE-20-010942

Title CFO

Venezia, Joseph
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Argersinger, H. Scott
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Virtue, Ronald J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2018 | 04/10/2018 |
| 2019 | 04/03/2019 |
| 2020 | 04/29/2020 |

**Document Images**

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/03/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/10/2018 -- ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 08/05/2016 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/20/2016 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 11/14/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/06/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |

Last Location 01/08/2

| | |
|---|---|
| 04/28/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/08/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 03/19/2001 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/16/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/26/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/21/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |
| 01/04/1993 -- Amendment | View image in PDF format |

Florida Department of State, Division of Corporations

Case No.: CACE-20-010942



DIVISION OF CORPORATIONS
an official State of Florida website

Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

# Detail by Entity Name

Foreign Profit Corporation
JM FAMILY ENTERPRISES, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | P04043 |
| **FEI/EIN Number** | 59-1390794 |
| **Date Filed** | 11/13/1984 |
| **State** | DE |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 10/20/2014 |
| **Event Effective Date** | NONE |

**Principal Address**

111 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/29/2020

**Mailing Address**

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/11/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
PLANTATION, FL 33324

Name Changed: 02/03/2020

Address Changed: 02/03/2020

**Officer/Director Detail**

**Name & Address**

Title Senior Vice President, Community Relations, Director

Moran, Janice M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Family Office and Assistant Sec

Blanton, Thomas K.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Controller, Assist Treasurer

Browdy, Alan J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Heathcott, Forrest W., III
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Government Relations

Deen Hartley, Sonya R.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Philanthropy

Burgess, Melanie
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Sheehy, Edward M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Direct Investing

Reid, David W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Treasurer

Gebhard, Eric M.

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, HR Services and Technology

Mody, Upendra
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Romano, Bryan
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, People Strategy

Heggerick, Lisbeth
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Associate Services

Sudler, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Chait, Daniel M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President, CFO

Coombs, Ronald M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President, Corporate Services

Pollock, Craig J.
100 Jim Moran Blvd.

Deerfield Beach, FL 33442

Case No.: CACE-20-010942

Title VP, ITS

Battisto, Deborah A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, New Business Liaison

Curtis, Jose A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Miller, Mark M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Sipe, Lisa M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Services

Tiufekchiev, Michael J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS Planning

Toifel, Brick A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Gordon, Charles S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title President, CEO, Director

Burns, Brent D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group VP, General Counsel, Asst Secy

Artusi, Stephen P.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC - Corporate Governance, Asst. Secretary

Williams, Caren Snead
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Exec VP, HR, Legal and Corporate Secretary

Johnson, Carmen S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC-Finance & Transactions, Asst. Secretary

Sheptak, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Virtue, Ronald J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Argersinger, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Enterprise Risk Officer

Guerrero, Juan C.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP Enterprise Comm, Media Rel/Corp Events, Trvl

Puello Burkman, Rosa
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Case No.: CACE-20-010942

Title Director

McNally, Arline M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McNally, John J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Barrett, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McGinnes, Larry D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Papera, Christine
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Chairman of the Board

Brown, Colin W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Moran, James Michael
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2018 | 04/11/2018 |
| 2019 | 04/06/2019 |
| 2020 | 04/29/2020 |

**Document Images**

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/06/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/11/2018 -- ANNUAL REPORT | View image in PDF format |
| 05/12/2017 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2016 -- ANNUAL REPORT | View image in PDF format |
| 12/22/2015 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 10/20/2014 -- Name Change | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 04/15/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/09/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/04/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/01/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/05/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2001 -- ANNUAL REPORT | View image in PDF format |
| 05/06/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/23/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/26/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/25/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |

Case No.: CACE-20-010942

# Exhibit D

**From:** Hooker, Valerie L. (Miami) <Valerie.Hooker@Jacksonlewis.com>
**Sent:** Monday, August 3, 2020 11:40 AM
**To:** tblye@saenzanderson.com
**Cc:** 'Ursula' <ursula@saenzanderson.com>; Bello, Olga (Miami) <Olga.Bello@jacksonlewis.com>
**Subject:** RE: JMFE - Raphael


Hi Tanesha,


It was nice speaking with you just now.  As I said on the call, the defendant named in Ms. Raphael's complaint, JM Family Enterprises, Inc. ("JMFE"), never employed Ms. Raphael.  Instead, Ms. Raphael worked for World Omni Financial Corporation, a subsidiary of JMFE.


After you have had a chance to review with your client, please let me know if you will file an amended complaint to substitute the defendant.  Please feel free to give me a call if you have any questions or want to discuss.  Thanks.


Best regards,


Valerie




**Valerie L. Hooker**

Attorney at Law

**Jackson Lewis P.C.**

One Biscayne Tower
Suite 3500
Two South Biscayne Boulevard

Miami, FL 33131

Direct: (305) 577-7648 | Main: (305) 577-7600

Valerie.Hooker@Jacksonlewis.com | www.jacksonlewis.com


Visit our resource page for information and guidance on COVID-19's workplace implications

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CACE20010942</u>  DIVISION <u>25</u>  JUDGE <u>Carol-lisa Phillips</u>

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____ /

## <u>ORDER ON MOTION TO DISMISS AMENDED COMPLAINT</u>

The Court has reviewed the Motion, and the Amended Complaint, heard argument, and considered the applicable law, it is hereby Ordered as follows:

Granted without prejudice, the defendants' motion is well taken. Twenty (20) days to Amend.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>01-26-2021</u>.

CACE20010942 01-26-2021 5:58 PM

<u>CACE20010942 01-26-2021 5:58 PM</u>
Hon. Carol-lisa Phillips
**CIRCUIT JUDGE**
Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**
Aron Smukler , E-mail : ursula@saenzanderson.com
Aron Smukler , E-mail : asmukler@saenzanderson.com
Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com
Jenna Rinehart Rassif , E-mail : jenna.rassif@jacksonlewis.com
Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com
Ruben Martin Saenz , E-mail : efiling@saenzanderson.com
Ruben Martin Saenz , E-mail : setehc@hotmail.com
Tanesha W Blye , E-mail : ursula@saenzanderson.com
Tanesha W Blye , E-mail : tblye@saenzanderson.com
Tanesha W Blye , E-mail : efiling@saenzanderson.com
Templeton N Timothy , E-mail : rebecca.billingsby@jacksonlewis.com
Templeton N Timothy , E-mail : templeton.timothy@jacksonlewis.com

CaseNo: CACE20010942
Page 2 of 2

Templeton N Timothy , E-mail : MiamiDocketing@JacksonLewis.com
Ursula Lanfranco , E-mail : ursula@saenzanderson.com
Valerie L. Hooker , E-mail : MiamiDocketing@jacksonlewis.com
Valerie L. Hooker , E-mail : belloo@jacksonlewis.com
Valerie L. Hooker , E-mail : valerie.hooker@jacksonlewis.com
Yadhira Ramirez-Toro , E-mail : ursula@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : asmukler@saenzanderson.com
Yadhira Ramirez-Toro , E-mail : yramirez@saenzanderson.com

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,      )
           )
        Plaintiff,      )
           )
v.           )
           )   Case No.: CACE-20-010942
JM FAMILY ENTERPRISES, INC.;   )
WORLD OMNI FINANCIAL CORP.; and  )
AUDREY DEMOSS,      )
           )
        Defendants.      )

## THIRD AMENDED COMPLAINT

Plaintiff AUDE JESSICA RAPHAEL ("Plaintiff") sues defendants JM FAMILY ENTERPRISES, INC. ("JM Family"); WORLD OMNI FINANCIAL CORP. ("World Omni") and AUDREY DEMOSS ("DeMoss") (collectively referred to as "Defendants") and alleges:

1.      This is an action for damages exceeding $30,000.00 exclusive of interest, attorneys' fees, and costs.

2.      This is an action to recover damages for handicap, race, and national origin discrimination and retaliation pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"). This is also an action for race discrimination and retaliation under 42 U.S.C. § 1981, as amended, and for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA").

3.      Plaintiff is, and at all times mentioned was, a resident of Broward County, Florida.

4.      At all times material to this Complaint, Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

www.saenzanderson.com



5.      JM Family is, and at all times mentioned was, a foreign profit corporation doing business in Broward County, Florida.

6.      World Omni is, and at all times mentioned was, a Florida profit corporation having its main place of business in Broward County, Florida.

7.      At all times material, Plaintiff was an "aggrieved person" as defined by Fla. Stat. §760.02(10). Plaintiff specifically incorporates the definition of "aggrieved person."

8.      At all times material, JM Family and World Omni were each a "person" and an "employer" as defined by Fla. Stat. §760.02(6) & (7). Plaintiff specifically incorporates the definitions of "person" and "employer" contained within the FCRA.

9.      At all times material, JM Family was Plaintiff's employer. Similarly, at all times relevant, Plaintiff was an employee of JM Family.

10.      At all times material, World Omni was Plaintiff's employer. Similarly, at all times relevant, Plaintiff was an employee of World Omni.

11.      JM Family and World Omni (jointly the "Corporate Defendants") are Plaintiff's "joint employers" under Florida law and under the law of the United States. They jointly employed Plaintiff.

12.      Alternatively, the Corporate Defendants are a "single employer" or an "integrated enterprise" or an "agent of each other" under Florida law and under the law of the United States.

13.      At all times material, the Corporate Defendants each separately and jointly employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

www.saenzanderson.com



2

14.     Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

15.     Plaintiff has complied with all conditions precedent in filing this action, to wit:

    a.   Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on or about October 22, 2019;

    b.   Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about May 7, 2020; and

    c.   More than 180 days have passed since Plaintiff filed her charge of discrimination with the EEOC. A copy of Plaintiff's Charge of Discrimination is attached hereto as ***Exhibit A***.

16.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## FACTUAL BACKGROUND

### The Corporate Defendants are Both Plaintiff's Employers. Alternatively, Each Defendant is an Employer of Plaintiff.

17.     Corporate Defendants are highly integrated with respect to ownership and operations.

18.     The initials "JM" in "JM Family" stand for "Jim Moran." Mr. Moran is the founder of JM Family. In Deerfield Beach, Florida, a whole boulevard has been named after Mr. Jim Moran. The name of the street is "The Jim Moran Boulevard."

19.     This is partially so because JM Family and its subsidiaries, including World Omni, occupy several buildings on Jim Moran Boulevard.

www.saenzanderson.com



3

20.      Corporate Defendants operate out of neighboring buildings encompassing at least two whole blocks at Jim Moran Boulevard. Corporate Defendants own and manage at least 4-6 buildings within two to three blocks on Jim Moran Boulevard in Deerfield Beach, Florida. *See for instance* aerial photos taken of the offices of the Corporate Defendants attached as ***Exhibit B***.

21.      Both Corporate Defendants work out of the following addresses: 190 Jim Moran Blvd., Deerfield Beach, Florida; 100 Jim Moran Blvd., Deerfield Beach, Florida; 111 Jim Moran Blvd., Deerfield Beach, Florida; 250 Jim Moran Blvd., Deerfield Beach, Florida; and 300 Jim Moran Blvd., Deerfield Beach, Florida. *See **Exhibit C.***

22.      Corporate Defendants share employees, directors and officers, all who equally work for the benefit of both companies.

23.      Brent Burns is the President and CEO of JM Family and also a director of World Omni (*see **Exhibit D*** and director and officer details from ***Exhibit C***). He works equally for the benefit of both Corporate Defendants.

24.      Dan Chait is the Executive Vice President of JM Family and also the Director and President of World Omni (*see **Exhibit D*** and director and officer details from ***Exhibit C***). He works equally for the benefit of both Corporate Defendants.

25.       Ronald "Ron" Coombs is the Executive Vice President of JM Family and also a Director of World Omni (*see **Exhibit D*** and director and officer details from ***Exhibit C***). He works equally for the benefit of both Corporate Defendants.

26.      World Omni is a wholly owned subsidiary of JM Family.

27.      At all times relevant, JM Family employed more than 4,300 employees including Plaintiff and all of the employees of World Omni.

www.saenzanderson.com



28.     Corporate Defendants' business and operations are intrinsically related. They coexist and benefit from each other in flawless synergy.

29.     To illustrate, Corporate Defendants' business admittedly works as follows: First, JM Family uses a company it owns called South East Toyota Distributors ("SET") to purchase (wholesale) vehicles from Toyota. SET then processes these vehicles in three different locations in the southeast portion of the United States (two locations in Jacksonville, Florida and one in Commerce, Georgia).

30.     Second, after processing the vehicles, JM Family and SET transport the vehicles to multiple car dealerships all throughout the southeastern United States, including Alabama, Florida, Georgia, North Carolina and South Carolina. Roughly, JM Family and SET distribute 350,000 vehicles annually to over 175 Toyota dealerships, plus about 100,000 vehicles per year are sold to fleet customers.

31.     Third, once the Toyota vehicles are distributed to the above dealers, World Omni comes in as an arm of JM Family and provides commercial loans to these car dealerships in Alabama, Florida, Georgia, North Carolina and South Carolina. The commercial loans are backed by JM Family.

32.     Fourth, once a customer at any of the referenced dealers buys a vehicle from the dealer, the dealer then is prompted to present finance options to its customer, including financing offered by World Omni. The financing offered by World Omni is also backed by JM Family.

33.     Lastly, if a customer chooses World Omni to finance her vehicle, then the car dealership creates and gets signed a retail installment or lease contract between the customer and the dealer. This contract in turn is sold to World Omni, who services the customer through the life

of the contract, with the power to enforce the contract on behalf of World Omni and JM Family. An explanation of how the Corporate Defendants are related to each other is found in the "Company Overview" for investors, a copy of which is attached as **Exhibit E.**

34.     Both Corporate Defendants benefit from these contracts.

35.     JM Family has been ranked # 27 on *Forbes'* list of "America's Largest Private Companies." World Omni has immensely contributed to the wealth and profiteering of JM Family since at least the early 1980s.

36.     Corporate Defendants have one or more agreements, which allow JM Family to retain control over the employees of World Omni, and which allow World Omni to retain control over the employees of JM Family.

37.     In other words, JM Family may suspend, terminate, promote, demote and overall change the terms of employment of employees of World Omni.

38.     For instance, Colin Brown, once President and CEO of JM Family, announced the promotion of Dan Chait, an employee of World Omni, to become the new President of World Omni (*see Exhibit F*). In doing so, Mr. Brown, on behalf of the JM Family stated:

> **"Dan's appointment to president is a testament to his leadership and proven commitment to _our_ company and _our_ associates. With his extensive experience in the financial services industry and the collective efforts of _our_ World Omni team, we are well positioned for continued growth." (emphasis added)** (*see Exhibit F*).

39.     Mr. Brown's statements clearly show that in the eyes of JM Family, the Corporate Defendants are one. A single company. An "integrated enterprise."



40.     Upon information and belief, World Omni may suspend, terminate, promote, demote and overall change the terms of employment of employees of JM Family.

41.     Alternatively, World Omni is an agent of JM Family and directs and manages the work of employees, including Plaintiff, at the direction of JM Family.

42.     Under agency principles, Corporate Defendants are really one entity. One "integrated enterprise."

43.     Further, Corporate Defendants are an integrated enterprise or are a single employer because they need each other to do business.

44.     Corporate Defendants share offices at the addresses shown above, they share employees (the above executives are one clear example for sure), have common management and leadership (the above executives and their roles in the Corporate Defendants strongly evidence this factor) and both have common owners.

45.     Plaintiff strongly suggests that discovery will reveal that many if not all other employees are also jointly employed by both Corporate Defendants.

46.     In sum, JM Family gets cars from Toyota and distributes them all over five southeastern states in the United States. Then, JM Family, as owner of World Omni, directs World Omni to loan money to dealers to purchase the vehicles JM Family just distributed. Then, when these dealers sell the vehicles to customers, JM Family positions itself through its subsidiary, World Omni, to again give loans to customers in the form of finance contracts. Although they use different names, Corporate Defendants are both part of one integral, huge operation.

47.     In addition, Corporate Defendants have control over the fundamental aspects of the employment decisions of both entities.

www.saenzanderson.com



48.     Also, Corporate Defendants contract with each other for the performance of the specific tasks mentioned above. To do this, as discovery will reveal, JM Family retained sufficient control over the terms and conditions of employment of World Omni's employees, including Plaintiff.

49.     Further (and to further elaborate on the above points), Corporate Defendants share a human resources department, share registered agents, and JM Family recruits employees for both Corporate Defendants (*see* ***Exhibit G*** suggesting that JM Family recruited Dawn Dickerson to work as Customer Service Representative for World Omni, Diane Greblick to work as Business Analyst for World Omni, and Howard Hazle to work as Financial Analyst for JM Family).

**<u>Plaintiff's Employment Relationship with Corporate Defendants.</u>**

50.     Plaintiff was hired by Corporate Defendants on or about October 1, 2013. Specifically, Plaintiff received an Offer Letter, dated October 1, 2013, from World Omni Financial Corp., 190 Jim Moran Boulevard, Deerfield Beach, Florida 33442, which possessed the name and logo of ***World Omni*** in the top left corner of the letter and ***JM Family*** in the bottom, right corner of the letter (the "Offer Letter") (***Exhibit H***).

51.     The first sentence of the Offer Letter, signed by Human Resources Generalist Noelle Lees reads "I am pleased to confirm the job offer extended to you to join ***<u>JM Family Enterprises, Inc.</u>***" (emphasis added). The Offer Letter also provided Plaintiff's job position title, rate of pay, first date of employment, and also Plaintiff's eligibility to participate in JM Family's Annual Incentive Plan and flexible benefits program called "Your JM Choice Plan". During her employment, Plaintiff participated in the JM Choice Plan.

52.     Accordingly, Plaintiff was hired and employed by both Corporate Defendants.

www.saenzanderson.com



53.    At all times material, Plaintiff was employed by Corporate Defendants as a Senior Customer Service Representative ("SCSR") and was tasked with completing automobile purchase and lease contracts for Corporate Defendants' customers.

54.    Defendants agree that Plaintiff was employed by World Omni.

55.    All SCSRs employed by Corporate Defendants worked out of the building located at 300 Jim Moran Blvd., Deerfield Beach, Florida (the "300 Building").  Accordingly, Plaintiff worked out of the 300 Building.

56.    Plaintiff, like many other SCSRs working in the 300 Building, received certificates, awards, trophies and other accolades from JM Family and from World Omni for work anniversaries, achieving company quotas and other accomplishments.

57.    Both Corporate Defendants were named or referenced on Plaintiff's pay stubs and other pay or benefits records, thereby supporting Plaintiff's presumption that she was compensated and employed by both Corporate Defendants. *See **Exhibit I**.*

58.    During Plaintiff's employment with Corporate Defendants, she excelled in her job performance, and was unavoidably recognized for her outstanding work.

**<u>Defendants' Racial and National Origin Discrimination Against Plaintiff is Conduct Which Deserves Punishment.</u>**

59.    Plaintiff is a young and beautiful Black woman of Haitian descent.

60.    She has a hard-working single mother who, with much effort, managed to come from Haiti and as a first generation Black, Haitian migrant, and provided for her children, usually working 2-3 jobs simultaneously.

61.     Years later, after graduating in the top of her class, Plaintiff and her siblings, have been able to move forward in life by commencing very ambitious careers and jobs. Plaintiff

www.saenzanderson.com



completed all her schooling with honors and in year 2013 she had the grand privilege (she believed) of securing a job with the Corporate Defendants as a Senior Customer Service Representative. Plaintiff saw in the Corporate Defendants an opportunity to rise high as an executive and ultimately as a shareholder, to then realize her dreams and her mother's dreams of becoming a self-made businesswoman working for a large corporation.

62.     Initially, Plaintiff went on to complete all tasks, consistently exceed her daily contract quotas, advance within the Corporate Defendants, receive promotions, and earn raises and awards.

63.     Plaintiff successfully performed her job duties and responsibilities as a SCSR and was often outperforming most, if not all, of her co-workers by reviewing and finalizing 30-40 contracts in a day, rather than the required 25 contracts.

64.     Plaintiff thought she had it all figured it out. However, to her surprise, not all was what it appeared to be at the Corporate Defendants.

65.     Audrey Demoss ("Demoss"), who was employed by the Corporate Defendants as Supervisor in their Customer Service Department, was tasked with supervising SCSRs, including Plaintiff.

66.     Although Plaintiff excelled in her position, she was treated different than other similarly situated employees who were not of the Black, Haitian race and ancestry.

67.     Particularly, Plaintiff's supervisor, Demoss, micromanaged Plaintiff's work. Also, Demoss often made disparaging and degrading comments to Plaintiff, and repeatedly questioned how Plaintiff achieved success in her position, in comparison to Demoss' son who was Caucasian. Demoss made such comments in the presence of other employees.

www.saenzanderson.com



10

68.     Plaintiff continued thriving as an employee of Corporate Defendants, and Demoss made it clear to Plaintiff that she did not like the fact that Plaintiff was successful in her position. Constantly, and on a daily basis, Demoss expressed sentiments and dislike to Plaintiff by questioning Plaintiff about how she was able to secure the SCR position and directly stating to Plaintiff that she would do what she could to make certain that Plaintiff would not be successful in her position. Demoss would additionally threaten Plaintiff by telling her she would do things to scare her and make it clear that Plaintiff was not welcome as an employee of Corporate Defendants' companies.

69.     Demoss did not make these degrading and threatening comments to other employees who were not of the Black, Haitian race and ancestry.

70.     Demoss conduct towards Plaintiff and comments made Plaintiff feel singled out, humiliated and embarrassed, and caused Plaintiff to suffer severe emotional distress, pain and mental anguish.

71.     In addition to Demoss, Plaintiff was also micromanaged, singled out and treated different than other similarly situated employees who were not of the Black, Haitian race and ancestry, by Director Sharon Miller ("Miller"). Miller and Demoss dishonestly, unreasonably and discriminatorily disciplined Plaintiff by wrongfully issuing write-ups and placing Plaintiff on probation.

72.     Plaintiff complained of Defendants' discriminatory conduct toward her, but nothing was done and the conduct did not cease. Specifically, Plaintiff complained to Rebecca Bell ("Bell"), who was a supervisor in the Corporate Defendants' Customer Service Department, and

Christine (ULN) ("Manager Christine"), who was a manager in the Corporate Defendants' Customer Service Department.

73.     To the best of Plaintiff's knowledge, Demoss, Miller and Manager Christine are Caucasian American citizens, and Bell is a Black, African American citizen.

74.     Demoss, Miller, Bell and Manager Christine all worked at the 300 Building along with Plaintiff and Defendants' other SCSR employees. It is Plaintiff's good faith belief and understanding that Demoss, Miller, Bell and Manager Christine were employees of both JM Family and World Omni.

### **Disability or Perceived Disability Discrimination / Hostile Work Environment.**

75.     In or about May of 2017, Plaintiff was diagnosed with multiple sclerosis.

76.     Plaintiff immediately informed her supervisors, including but not limited to Demoss, Jillian De Los Reyes ("De Los Reyes"), and Bell, of her diagnosis. Plaintiff further advised Defendants that she would need to take intermittent leave to receive the requisite medical care and treatment for her serious medical condition.

77.     During all relevant times, by information and belief, De Los Reyes was employed by Corporate Defendants as a Supervisor in the Corporate Defendants' Customer Service Department, and had an office or workstation at the 300 Building, along with Plaintiff, Demoss, Miller, Bell and Manager Christine.

78.     Plaintiff noticed that after her supervisors learned of her diagnosis, they began to treat her different than the other similarly situated employees who were not disabled or perceived to be disabled. For example, Plaintiffs' supervisors micromanaged, bullied, and made disparaging remarks to Plaintiff regarding Plaintiff's medical condition.

www.saenzanderson.com



79.    On occasion, after learning of Plaintiff's medical condition, Demoss would constantly sit closely behind Plaintiff for hours, breathing down Plaintiff's neck, watching what Plaintiff was doing, and would consistently whisper rude and cynical comments to mock Plaintiff, such as "Oh snap, you can actually do this work."

80.    After learning of Plaintiff's condition, Demoss began forcing Plaintiff to walk a long distance, across the office to Demoss' desk, when Plaintiff had a question, needed assistance or to speak to or consult with Demoss. When Plaintiff arrived to Demoss' desk, Demoss would orally discipline Plaintiff about the length of time it took Plaintiff to walk from her desk to Demoss' desk.

81.    On a daily basis, Demoss found a way to complain of Plaintiff's physical abilities. Demoss would say to Plaintiff that she walked too slow or teasingly tell Plaintiff she was not able to do certain things because of her medical condition.

82.    Often Demoss would get very close to Plaintiff's person and whisper disparaging comments to Plaintiff about how she did not deserve to be an SCSR or to receive the awards and or accolades given to her.

83.    Eventually, Plaintiff was placed on short term disability as a result of her multiple sclerosis diagnosis.

84.    Plaintiff returned to work in or about October of 2018.

85.    Upon her return to work, Defendants' conduct toward Plaintiff worsened. Plaintiffs supervisors amplified their hostile and harassing behavior toward Plaintiff, and consistently bullied, belittled, and micromanaged Plaintiff on a pervasive basis because of Plaintiff's handicap.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

13

86.   After Plaintiff was diagnosed with multiple sclerosis she would arrive to work early to secure a closer parking space. On a daily basis, Demoss would bully Plaintiff by making an issue of the parking spaces Plaintiff was able to secure. Demoss would intimidate Plaintiff by sitting on Plaintiff's desk, leaning in very close to Plaintiff and asking Plaintiff in an austere tone of voice what made her think that she could park in a close parking space. Some days Demoss would order Plaintiff to walk out to her car, park further away, and walk back to the office. On other days, when Plaintiff would ask whether Demoss required her to move her vehicle, Demoss would respond "No, but make sure you park further away tomorrow."

87.   Demoss continued to talk down to Plaintiff, and make disparaging remarks related to Plaintiff's debilitated condition on a constant, pervasive basis. Demoss made such statements in private to Plaintiff and in the presence of other employees.

88.   Demoss' treatment of Plaintiff became so pervasive, that every day Plaintiff went to work she was embarrassed and humiliated, and suffered severe emotional distress, pain and mental anguish.

89.   Additionally, Defendants' supervisors and managers, including but not limited to De Los Reyes, Demoss, Bell, Miller and Manager Christine, began to unfairly and unjustly issue write-ups and correction letters to Plaintiff and place Plaintiff on probation. The write-ups and correction letters issued to Plaintiff were related to Plaintiff's performance of her job duties pursuant to the work restrictions provided by Plaintiff's treating physicians. Ignoring the medical restrictions, Plaintiff's supervisors and managers would say to her, "Your numbers are too low. You are going to get fired." Corporate Defendants complained of and issued discipline because of the quantity of work Plaintiff produced, but because of the quality of Plaintiff's work.



90.     At all times during Plaintiff's employment, she was qualified to perform the essential functions of her job; and although Plaintiff continued to satisfy her job requirements, particularly her contract quota, pursuant to the limitations provided by Plaintiff's physician and provided to Defendants, Plaintiff's supervisors began to wrongfully issue discipline to Plaintiff. For example, Plaintiff's supervisors pressured and harassed her by conducting meetings with Plaintiff during which they ignored her revised contract quota provided by her physician and insisted that Plaintiff continue to complete a higher number of contracts. Defendants consistently threatened that if Plaintiff did not review and finalize 25 contracts per day she would be terminated. These meetings were not conducted with Plaintiff prior to the Corporate Defendants becoming aware of Plaintiff's multiple sclerosis diagnosis.

91.     Importantly, at no time during these meetings did Plaintiff's supervisors complain about the quality of her work. For instance, two weeks prior to Plaintiff's termination, during or around May 2019, Demoss sat with Plaintiff to observe her work performance. Demoss did not mention to Plaintiff any issues with Plaintiff's work performance.

92.     Defendants' conduct toward Plaintiff was unwelcomed, abusive, sufficiently severe and pervasive, and altered the terms and conditions of Plaintiff's employment with Defendants.

93.     Defendants' conduct was so pervasive that other SCSRs began to bully and belittle Plaintiff. For example, Plaintiff's co-workers would make a joke of the way Plaintiff walked (which was due to her medical condition) and constantly harassed Plaintiff about where she parked her vehicle.

94.     Plaintiff's work environment became so hostile, that Plaintiff felt constantly harassed, singled out, embarrassed and humiliated, all of which caused her to suffer severe

emotional distress, pain and mental anguish. Plaintiff's severe emotional distress, pain and mental anguish worsened her multiple sclerosis condition.

95.     Plaintiff complained to Defendants' HR and management departments, including but not limited to Bell, about the bullying, belittling, and micromanaging, but nothing was done.

96.     Defendants refused to act upon Plaintiff's complaints.

97.     The discriminatory environment created by Defendants was so pervasive that it amounted to a hostile work environment for Plaintiff.

<u>**Denial of Reasonable Accommodations.**</u>

98.     Due to her disability, after Plaintiff's return to work from short term disability leave, Plaintiff requested certain accommodations, including to either work from home or be assigned a closer parking spot and moved to a desk closer to the restroom so she would not have to walk long distances.

99.     The accommodations requested by Plaintiff were reasonable. Plaintiff would have been able to perform her essential job functions if Defendants granted her request to work from home, to be assigned a closer parking spot or a desk closer to the restroom.

100.    Defendants denied Plaintiff's reasonable requests for accommodations.

101.    In fact, rather than granting any of Plaintiff's requests for a reasonable accommodation, Defendants responded by moving Plaintiff to a desk further away from the restroom.

102.    Plaintiff immediately acknowledged Corporate Defendants' conduct as yet another attempt to single her out and cause her to be embarrassed and humiliated.

www.saenzanderson.com



16

103.   Defendants' denial of Plaintiff's reasonable accommodations requests and decision to move Plaintiff further away from the restroom caused Plaintiff to fall at work during a trip to the restroom. Plaintiff's fall was witnessed by Defendants' employees and Plaintiff was embarrassed and humiliated.

104.   Plaintiff immediately informed her supervisors.

105.   Plaintiff's fall was not documented.

106.   As Plaintiff continued to work, and had to endure walking a greater distance to and from her vehicle and the restroom, she was in fact embarrassed, humiliated and suffered severe emotional distress, pain and mental anguish.

### Plaintiff's Wrongful Termination.

107.   On or about June 7, 2019, after Plaintiff endured severe and pervasive harassment, hostility and discrimination from the Defendants, Defendants' HR and management employees had a meeting with Plaintiff and terminated her employment. Defendants alleged that Plaintiff's termination was due to her violation of company policy. This alleged violation was not brought to Plaintiff's attention prior to her termination and was clearly pretextual.

108.   During her employment, Plaintiff was singled out and treated different than other similarly situated employees who were not Haitian American, Black citizens, and/or who did not suffer from a disability or handicap.

109.   Plaintiff's race was a motivating factor that caused her to be discharged from her employment.

110.   Plaintiff's handicap or perceived handicap was a direct cause of Defendants' decision to terminate Plaintiff.

www.saenzanderson.com



111.   As a result of Defendants' intentional discriminatory conduct, Plaintiff's employment was terminated, and she suffered a substantial loss of compensation and benefits.

**<u>EEOC Charge of Discrimination.</u>**

112.   Defendants' wrongful termination of Plaintiff's employment prompted Plaintiff to file a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), on or about October 22, 2019 (*see **Exhibit A***).

113.   In her Charge, Plaintiff alleged discrimination based on race, national origin, retaliation and disability against her employer. The employer named in the Charge was the parent company, JM Family. The Charge did not specifically list World Omni as Plaintiff's employer.

114.   The EEOC was tasked with investigating Plaintiff's claims by performing an official inquiry to obtain relevant information pertaining to Plaintiff's employment, by using a variety of fact-finding methods such as interviews, a fact-finding conference, requests for information, interrogatories, and or affidavits.

115.   Given the above referenced Offer Letter, pay stubs, benefits offered by Defendants to its employees including Plaintiff, and the accolades earned by Plaintiff and offered to Plaintiff by both Defendants, the EEOC's investigation involved Plaintiff's employment with JM Family through its subsidiary World Omni.

116.   After its investigation, the EEOC substantiated the allegations in Plaintiff's Charge.

117.   On May 7, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

118.   During her employment, Plaintiff had colleagues of a different race and / or national origin who were similarly situated, in that they had similar job titles, duties, responsibilities and qualifications, but were not treated similar to Plaintiff.

www.saenzanderson.com



119.    During her employment, Plaintiff had colleagues who were not handicap or perceived to be handicap, and who were similarly situated, in that they had similar job titles, duties, responsibilities and qualifications, but were not treated similar to Plaintiff.

120.    As a result of Corporate Defendants' actions, Plaintiff was required to hire undersigned Counsel to protect her rights and interests and to incur reasonable attorney fees and costs, to pursue her claims stated in this Complaint and her Charge.

**COUNT I: HANDICAP DISCRIMINATION IN VIOLATION OF THE FCRA – <u>DISPARATE TREATMENT</u>**

121.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 58 and 75 - 120 above as if set out in full herein.

122.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

123.    At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

124.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

125.    As detailed in paragraphs 75 through 97, Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, bullying, belittling, and micromanaging Plaintiff on a constant, pervasive basis and subsequently terminating Plaintiff because of her handicap, or perceived handicap.



126.    Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell and Miller, thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

127.    The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

128.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional distress, pain and mental anguish.

129.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

130.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

www.saenzanderson.com



C.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D.   Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.   Award Plaintiff reasonable costs and attorney's fees; and

F.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

**COUNT II: HANDICAP DISCRIMINATION IN VIOLATION OF THE FCRA –
<u>FAILURE TO ACCOMMODATE</u>**

131.   Plaintiff re-adopts each and every factual allegation as stated in 1 – 58 and 75 – 106 above as if set out in full herein.

132.   Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

133.   At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

134.   At all times material, Plaintiff was qualified to perform the essential functions of her job.

135.   Because she was disabled, Plaintiff requested to either work from home, or be assigned a closer parking spot and be moved to a desk closer to the restroom so she would not have to walk long distances.

www.saenzanderson.com



136.    Defendants denied Plaintiff's reasonable requests for accommodations, and in fact, moved Plaintiff further from the restroom.

137.    Plaintiff engaged in a protected activity when she requested reasonable accommodations from Defendants.

138.    The accommodations requested by Plaintiff were reasonable.

139.    Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell and Miller, intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, failing to accommodate Plaintiff because of Plaintiff's handicap, or perceived handicap, and subsequently terminating Plaintiff's employment.

140.    Defendants thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

141.    The discrimination of Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

142.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

143.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

144.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

## **COUNT III: HANDICAP DISCRIMINATION IN VIOLATION OF THE FCRA – RETALIATORY AND WRONGFUL TERMINATION**

145.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 58 and 75 - 120.

146.    Plaintiff's diagnosis of multiple sclerosis qualifies as a handicap, or perceived handicap.

www.saenzanderson.com



23

147.   At all times material, Defendants were aware of Plaintiff's handicap, or perceived handicap.

148.   Plaintiff engaged in a protected activity when she complained to Defendants HR and Management employees, including but not limited to Bell, about being bullied, belittled, embarrassed, humiliated and micromanaged because of her disability.

149.   Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell and Miller, intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff complained of Defendants' HR and management employees' discriminatory conduct, the hostile work environment she was subjected to and denial of Plaintiff's reasonable accommodations by Defendants.

150.   Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

151.   The retaliation against Plaintiff by Defendants was based on Plaintiff's handicap, or perceived handicap.

152.   As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional distress, pain and mental anguish.

153.   Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

www.saenzanderson.com



24

154.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

## **COUNT IV: RACE DISCRIMINATION IN VIOLATION OF THE FCRA – DISPARATE TREATMENT**

155.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

www.saenzanderson.com



25

156.    Plaintiff is a member of a protected class of Black citizens.

157.    At all times material, Defendants were aware of Plaintiff's race.

158.    As detailed in paragraphs 59 through 74 and 107 through 111, Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment because of Plaintiff's race.

159.    Particularly, Defendants, through its supervisors and managers some of which are not Black citizens, engaged in discriminatory conduct against Plaintiff, in private and in the presence of other employees, by, among other things, micromanaging Plaintiff's work, making disparaging and degrading comments to Plaintiff, and repeatedly questioning how Plaintiff achieved success in her position. Defendants also dishonestly, unreasonably and discriminatorily disciplined Plaintiff by wrongfully issuing write-ups and placing Plaintiff on probation.

160.    Defendants discriminatory actions against Plaintiff were willful, conscious, and repeated, as opposed to an isolated occurrence and were more than a slight annoyance.

161.    Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell, Miller and Manager Christine, thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

162.    Through its actions and treatment of Plaintiff, Defendant intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity, and therefore the discrimination of Plaintiff by Defendants was based on Plaintiff's race.

www.saenzanderson.com



26

163.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional distress, pain and mental anguish.

164.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

165.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

27

F.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT V: RACE DISCRIMINATION IN VIOLATION OF THE FCRA – RETALIATORY AND WRONGFUL TERMINATION

166.   Plaintiff re-adopts each and every factual allegation as stated in 1 – 74 and 107 – 120.

167.   Plaintiff is a member of a protected class of Black citizens.

168.   At all times material, Defendants were aware of Plaintiff's race.

169.   Plaintiff engaged in a protected activity when she complained about race discrimination and hostility, abuse in the workplace.

170.   Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell, Miller and Manager Christine, intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*, terminating Plaintiff because Plaintiff complained of Defendants' discriminatory and harassing conduct, despite Plaintiff having performed her job well.

171.   Defendants furthermore intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA following Plaintiff's initial and subsequent complaints of discrimination, when it increased its harassment and desperate treatment of Plaintiff, began disciplining Plaintiff, and by repeatedly making disparaging remarks toward Plaintiff.

172.   Defendants further retaliated when it terminated Plaintiff after Plaintiff complained regarding Defendants' discriminatory, harassing, and abusive work environment.

www.saenzanderson.com



28

173.     Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

174.     The retaliation of Plaintiff by Defendants was based on Plaintiff's race.

175.     As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional distress, pain and mental anguish.

176.     Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

177.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this honorable court:

A.   Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

www.saenzanderson.com



D.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VI: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FCRA – DISPARATE TREATMENT

178.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

179.    Plaintiff is a member of a protected class of citizens of Haitian descent.

180.    At all times material, Defendants were aware of Plaintiff's national origin.

181.    As detailed in paragraphs 59 through 74, Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment because of Plaintiff's race.

182.    Particularly, Defendants, through its supervisors and managers who are not citizens of Haitian descent, engaged in discriminatory conduct against Plaintiff, in private and in the presence of other employees, by, among other things, micromanaging Plaintiff's work, making disparaging and degrading comments to Plaintiff, and repeatedly questioning how Plaintiff achieved success in her position. Defendants also dishonestly, unreasonably and discriminatorily disciplined Plaintiff by wrongfully issuing write-ups and placing Plaintiff on probation.

www.saenzanderson.com



30

183.    Defendants discriminatory actions against Plaintiff were willful, conscious, and repeated, as opposed to an isolated occurrence and were more than a slight annoyance.

184.    Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell, Miller and Manager Christine, thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

185.    Through its actions and treatment of Plaintiff, Defendant intended to and did in fact discriminate against Plaintiff on the basis of Plaintiff's national origin.

186.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional distress, pain and mental anguish.

187.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

188.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff requests that this honorable court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

www.saenzanderson.com



31

C.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D.   Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E.   Award Plaintiff reasonable costs and attorney's fees; and

F.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT VII: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FCRA – RETALIATORY AND WRONGFUL TERMINATION

189.   Plaintiff re-adopts each and every factual allegations as stated in 1 – 74 and 107 – 120.

190.   Plaintiff is a member of a protected class of citizens of Haitian descent.

191.   At all times material, Defendants were aware of Plaintiff's national origin.

192.   Plaintiff engaged in a protected activity when she complained about national origin discrimination and hostility, and abuse in the workplace.

193.   Defendants, through its management employees, including but limited to De Los Reyes, Demoss, Bell, Miller and Manager Christine, intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia*,

www.saenzanderson.com



terminating Plaintiff because Plaintiff complained of Defendants' discriminatory and harassing conduct, despite Plaintiff having performed her job well.

194. Defendants furthermore intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA following Plaintiff's initial and subsequent complaints of discrimination, when it increased its harassment and desperate treatment of Plaintiff, began disciplining Plaintiff, and by repeatedly making disparaging remarks toward Plaintiff.

195. Defendants further retaliated when it terminated Plaintiff after Plaintiff complained regarding Defendants' discriminatory, harassing, and abusive work environment.

196. Defendants thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment in violation of the FCRA.

197. The retaliation of Plaintiff by Defendants was based on Plaintiff's national origin.

198. As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional distress, pain and mental anguish.

199. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

200. The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this honorable court:

www.saenzanderson.com



A. Enter judgment in Plaintiff's favor and against Defendants for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered and continues to suffer;

D. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VIII: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION – DISPARATE TREATMENT

201.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

202.    Black citizens of Haitian ancestry are a "race" within the meaning of 42 U.S.C. § 1981.

203.    Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

www.saenzanderson.com



204. At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

205. During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by non- Black, Haitian American citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

206. During the course of Plaintiff's employment with Defendants, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian employees of Defendants.

207. Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 73 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian citizens, in violation of 42 U.S.C.A. § 1981, as amended.

208. Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 73, denied Plaintiff the right to make and enforce contracts as enjoyed by Caucasian, non-Haitian, citizens, in violation of 42 U.S.C.A. § 1981, as amended.

209. Overall, the Corporate Defendants' employees who did not belong to the Black or Haitian race or ancestry were not belittled, spoken to in a derogatory tone or expression, harassed, micromanaged, reprimanded and disciplined as was Plaintiff, who was an employee of the Black and Haitian race or ancestry. This disparity in treatment was solely on the basis of Plaintiff's race, as that term is used under 42 USC § 1981.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

35

210.    Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

211.    During the course of Plaintiff's employment with Defendants, Plaintiff has been subjected to a discriminatory, hostile, and offensive work environment because of her race/ethnicity, as more fully described in paragraphs 59 through 73 of this Complaint.

212.    Defendants, at all times, had knowledge of the discriminatory act and conduct by De Los Reyes, Demoss, Bell, Miller, Manager Christine and Defendants' other employees as described in this Complaint.

213.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

214.    As a direct, legal and proximate result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

215.    In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

www.saenzanderson.com



36

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

B.  Award Plaintiff actual damages suffered;

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

G.  Award Plaintiff reasonable costs and attorney's fees; and

H.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT IX: VIOLATION OF 42 U.S.C. § 1981 –<br><u>RACE DISCRIMINATION - HOSTILE WORK ENVIRONMENT</u>

216.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

217.    Black citizens of Haitian ancestry are a "race" within the meaning of 42 USC 1981.

218.    Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

www.saenzanderson.com



37

219.    At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

220.    During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by non- Black, Haitian citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

221.    During the course of Plaintiff's employment with Defendants, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian employees of Defendants.

222.    Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian citizens, in violation of 42 U.S.C.A. § 1981, as amended.

223.    Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74, denied Plaintiff the right to make and enforce contracts as enjoyed by Caucasian, non-Haitian, citizens, in violation of 42 U.S.C.A. § 1981, as amended.

224.    Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

225.    During the course of Plaintiff's employment with Defendants, Plaintiff has been subjected to a discriminatory, hostile, and offensive work environment because of her race/ethnicity, as more fully described in paragraphs 59 through 74 of this Complaint.

www.saenzanderson.com



226.    Defendants, at all times, had knowledge of the discriminatory act and conduct by De Los Reyes, Demoss, Bell, Miller, and Defendants' other employees as described in this Complaint.

227.    Despite Plaintiff's complaints and Defendants' knowledge of the discriminatory acts and/or conduct, Defendants took no appropriate remedial action.

228.    The racially discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

229.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

230.    As a direct, legal and proximate result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

231.    In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

www.saenzanderson.com



B.  Award Plaintiff actual damages suffered;

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

G.  Award Plaintiff reasonable costs and attorney's fees; and

H.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT X: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION - TERMINATION

232.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

233.   Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

234.   At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

235.   During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms

www.saenzanderson.com



and conditions of her employment contract as is enjoyed by non- Black, Haitian American citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

236.    During the course of Plaintiff's employment with Defendants, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian employees of Defendants.

237.    Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 and 107 through 111 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian citizens, in violation of 42 U.S.C.A. § 1981, as amended.

238.    Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 and 107 through 111, denied Plaintiff the right to make and enforce contracts as enjoyed by Caucasian, non-Haitian, citizens, in violation of 42 U.S.C.A. § 1981, as amended.

239.    Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

240.    Plaintiff complained of Defendants' discriminatory conduct.

241.    Despite Plaintiff's complaints and Defendants' knowledge of the discriminatory acts and/or conduct, Defendants took no appropriate remedial action.

242.    Upon information and belief, on or about June 7, 2019, after Plaintiff endured severe and pervasive harassment, hostility and discrimination from the Defendants, Defendants' HR and management employees had a meeting with Plaintiff and terminated her employment.

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

243. Plaintiff's termination was in retaliation for her complaining that she was being discriminated against on account of her Black, Haitian race and ancestry.

244. When the Corporate Defendants terminated Plaintiff, the Corporate Defendants violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment as is enjoyed by citizens of non-Black, Haitian ancestry or descent, in violation of 42 U.S.C.A. § 1981(b), as amended.

245. When the Corporate Defendants terminated Plaintiff, the Corporate Defendants prevented Plaintiff from enjoying the same benefits, privileges, terms and conditions of employment, as have citizens of non-Black, Haitian ancestry or descent, who remained employed by the Corporate Defendants.

246. Plaintiff's termination denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by citizens of non-Black, Haitian ancestry or descent, in violation of 42 U.S.C.A. § 1981, as amended.

247. Plaintiff's termination denied Plaintiff the right to make and enforce contracts as enjoyed by citizens of non-Black, Haitian ancestry or descent, in violation of 42 U.S.C.A. § 1981, as amended.

248. Through their actions, the Corporate Defendants knowingly intended to retaliate against Plaintiff on the basis of Plaintiff's Black and Haitian race and ancestry.

249. Upon information and belief, Corporate Defendants, at all times material, participated in and supported the retaliatory acts and conduct described herein.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

250.    Plaintiff's Black and Haitian race and ancestry was a motivating factor that caused the Corporate Defendants to retaliate against Plaintiff for complaining about the discriminatory conduct.

251.    As a direct, legal and proximate result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

252.    Plaintiff has suffered damages of an on-going and continuous nature.

253.    In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.  Enter judgment in Plaintiff's favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

B.  Award Plaintiff actual damages suffered;

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

www.saenzanderson.com



43

F.   Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

G.   Award Plaintiff reasonable costs and attorney's fees; and

H.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT XI: VIOLATION OF THE FMLA – RETALIATION

254.   Plaintiff repeats and re-alleges paragraphs 1 through 58 and 98 through 106 as if fully stated herein.

255.   Plaintiff was an "eligible employee" and entitled to leave under the FMLA.

256.   At all times material, Plaintiff gave proper notice to Defendants by informing Defendants of her serious medical condition and of her need to take FMLA leave and intermittent time off to go see her doctors for visits related to her serious medical condition.

257.   Plaintiff in fact took FMLA leave, as she was entitled to do, when she was placed on short term disability as a result of her multiple sclerosis diagnosis.

258.   Plaintiff returned to work in or about October of 2018.

259.   Thereafter, Defendants terminated Plaintiff because she availed herself of her FMLA leave.

260.   Defendants have intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having taken leave for medical reasons.

www.saenzanderson.com



44

261.     Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of her termination.

262.     As a direct and proximate result of the intentional violations by Defendant of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.   Enter judgment in Plaintiff's favor and against Defendant for its violations of the FMLA;

b.   Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c.   Award Plaintiff compensatory damages under the FMLA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has and continues to suffer;

d.   Award Plaintiff liquidated damages;

e.   Reinstatement;

f.   Award Plaintiff prejudgment interest on her damages award;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief as this court deems equitable and just.

### COUNT XII: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION – DISPARATE TREATMENT – INDIVIDUAL DEFENDANT, DEMOSS

263.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

264.     Black citizens of Haitian ancestry are a "race" within the meaning of 42 U.S.C. § 1981.

www.saenzanderson.com



45

265.    Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

266.    At all times relevant, Plaintiff was in a contractual relationship with Demoss within the meaning of 42 U.S.C. § 1981, as amended.

267.    During the course of Plaintiff's employment, Demoss violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by non- Black, Haitian American citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

268.    During the course of Plaintiff's employment, Demoss' conduct toward Plaintiff caused Plaintiff to not enjoy the same benefits, privileges, terms and conditions of employment, as Plaintiff's co-workers who were not of the Black and Haitian race and ancestry.

269.    Demoss denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

270.    Demoss' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74, denied Plaintiff the right to make and enforce contracts as enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

271.    Overall, Demoss did not belittle, speak to in a derogatory tone or expression, harass or micromanage Plaintiff's co-workers who were not of the Black and Haitian race and ancestry. This disparity in treatment was solely on the basis of Plaintiff's race, as that term is used under 42 USC § 1981.

www.saenzanderson.com



272.     Through Demoss actions and treatment of Plaintiff, she intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

273.     During the course of Plaintiff's employment, Demoss subjected Plaintiff to a discriminatory, hostile, and offensive work environment because of her race/ethnicity, as more fully described in paragraphs 59 through 74 of this Complaint.

274.     At all times, Demoss had knowledge and was aware of her discriminatory acts and conduct toward Plaintiff, as described in this Complaint.

275.     Despite Plaintiff's complaints, Demoss failed to take any appropriate remedial action.

276.     As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

277.     As a direct, legal and proximate result of Demoss' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

278.     In its discriminatory actions as alleged above, Demoss acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

www.saenzanderson.com



A.  Enter judgment in Plaintiff's favor and against Demoss for its violations of 42 U.S.C.A. § 1981, as amended;

B.  Award Plaintiff actual damages suffered;

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Enjoin Demoss, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

G.  Award Plaintiff reasonable costs and attorney's fees; and

H.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT XIII: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION - HOSTILE WORK ENVIRONMENT – INDIVIDUAL DEFENDANT, DEMOSS

279.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

280.   Black citizens of Haitian ancestry are a "race" within the meaning of 42 U.S.C. § 1981.

281.   Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

www.saenzanderson.com



48

282.     At all times relevant, Plaintiff was in a contractual relationship with Demoss within the meaning of 42 U.S.C. § 1981, as amended.

283.     During the course of Plaintiff's employment, Demoss violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981(b), as amended.

284.     During the course of Plaintiff's employment, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian employees of Defendants.

285.     Demoss' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

286.     Demoss' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74, denied Plaintiff the right to make and enforce contracts as enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

287.     Through her actions and treatment of Plaintiff, Demoss intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

www.saenzanderson.com

SAENZ & ANDERSON
ATTORNEYS AT LAW

288.   During the course of Plaintiff's employment, Demoss subjected Plaintiff to a discriminatory, hostile, and offensive work environment because of her race/ethnicity, as more fully described in paragraphs 59 through 74 of this Complaint.

289.   Demoss, at all times, had knowledge of her discriminatory acts and conduct, as described in this Complaint.

290.   Despite Plaintiff's complaints, Demoss took no appropriate remedial action.

291.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

292.   As a direct, legal and proximate result of Demoss' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

293.   In its discriminatory actions as alleged above, Demoss acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.  Enter judgment in Plaintiff's favor and against Demoss for its violations of 42 U.S.C.A. § 1981, as amended;

B.  Award Plaintiff actual damages suffered;

www.saenzanderson.com



SAENZ & ANDERSON
ATTORNEYS AT LAW

50

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Enjoin Demoss, and anyone acting in concert with Demoss, from discriminating, harassing and retaliating against Plaintiff and any employee;

G.  Award Plaintiff reasonable costs and attorney's fees; and

H.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury.

### **COUNT XIV: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION – RETALIATORY AND WRONGFUL TERMINATION – INDIVIDUAL DEFENDANT DEMOSS**

294.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 74 and 107 – 120 above as if set out in full herein.

295.   Plaintiff is a Black, Haitian American, and therefore is a member of a racial minority.

296.   At all times relevant, Plaintiff was in a contractual relationship with Demoss within the meaning of 42 U.S.C. § 1981, as amended.

297.   During the course of Plaintiff's employment, Demoss violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her

www.saenzanderson.com



51

employment contract as is enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981(b), as amended.

298.    During the course of Plaintiff's employment, Demoss caused Plaintiff to not enjoy the same benefits, privileges, terms and conditions of employment, as have Plaintiff's co-workers who were not of the Black and Haitian race and ancestry.

299.    Demoss treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 and 107 through 111 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

300.    Demoss' treatment, practices and policies directed toward Plaintiff, as more fully described in paragraphs 59 through 74 and 107 through 111, denied Plaintiff the right to make and enforce contracts as enjoyed by Plaintiff's co-workers who were not of the Black and Haitian race and ancestry, in violation of 42 U.S.C.A. § 1981, as amended.

301.    Through Demoss' actions and treatment of Plaintiff, Demoss intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

302.    During the course of Plaintiff's employment, Demoss has subjected Plaintiff to a discriminatory, hostile, and offensive work environment because of her race/ethnicity, as more fully described in paragraphs 59 through 74 and 107 through 111 of this Complaint.

303.    Demoss had knowledge and was aware of her discriminatory acts and conduct.

304.    Despite Plaintiff's complaints, Demoss took no appropriate remedial action.

www.saenzanderson.com



305.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

306.    As a direct, legal and proximate result of Demoss' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and she has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

307.    In its discriminatory actions as alleged above, Demoss acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.  Enter judgment in Plaintiff's favor and against Demoss for its violations of 42 U.S.C.A. § 1981, as amended;

B.  Award Plaintiff actual damages suffered;

C.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

D.  Award Plaintiff punitive damages;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Enjoin Demoss, and anyone acting in concert with Demoss, from discriminating, harassing and retaliating against Plaintiff and any employee;

<div align="center">

www.saenzanderson.com



</div>

G.  Award Plaintiff reasonable costs and attorney's fees; and

H.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

### COUNT XV: VIOLATION OF THE FMLA – RETALIATION – INDIVIDUAL DEFENDANT DEMOSS

308.    Plaintiff repeats and re-alleges paragraphs 1 through 58 and 98 through 106 as if fully stated herein.

309.    Plaintiff was an "eligible employee" and entitled to leave under the FMLA.

310.    At all times material, Plaintiff gave proper notice to Demoss by informing Demoss of her serious medical condition and of her need to take FMLA leave and intermittent time off to go see her doctors for visits related to her serious medical condition.

311.    Plaintiff in fact took FMLA leave, as she was entitled to do, when she was placed on short term disability as a result of her multiple sclerosis diagnosis.

312.    Plaintiff returned to work in or about October of 2018.

313.    Thereafter, Defendants terminated Plaintiff because she availed herself of her FMLA leave.

314.    Defendants have intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having taken leave for medical reasons.

315.    Plaintiff's leave pursuant to the FMLA was a direct and proximate cause of her termination.

www.saenzanderson.com



54

316.     As a direct and proximate result of the intentional violations by Demoss of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Demoss as follows:

A.     Enter judgment in Plaintiff's favor and against Demoss for her violations of the FMLA;

B.     Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

C.     Award Plaintiff compensatory damages under the FMLA for embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has and continues to suffer;

D.     Award Plaintiff liquidated damages;

E.     Reinstatement;

F.     Award Plaintiff prejudgment interest on her damages award;

G.     Award Plaintiff reasonable costs and attorney's fees; and

H.     Grant Plaintiff such other and further relief as this court deems equitable and just.

Dated: February 15, 2021.                    Respectfully submitted,

**By: /s/ Tanesha Blye**
Tanesha Blye, Esq.
Fla. Bar No.: 0738158
Email: tblye@saenzanderson.com
Aron Smukler, Esq.
Fla. Bar No.: 0297779
Email: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

www.saenzanderson.com



SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

www.saenzanderson.com



56

# EXHIBIT "A"

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2020-00457 |

**Florida Commission On Human Relations** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Aude J Raphael** | **(954) 636-9490** | **12/12/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| c/o Saenz & Anderson, 20900 NE 30th Ave., Ste. 800, Aventura, FL 33180 (msaenz@saenzanderson.com) | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **JM FAMILY ENTERPRISES, INC.** | **100+** | **(954) 429-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Jim Moran Blvd, Deerfield Beach, FL 33442** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 10/2018 | 6/7/2019 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a 28-year-old black, Haitian woman. I began working for the Respondent on or about October 14, 2014 as a customer service representative. I was diagnosed with multiple sclerosis in 2017 and placed on short term disability at work. On October 2018, after I returned from a FMLA leave and hospitalization related to my illness, I began to feel micromanaged.

In addition, my health condition deteriorated, and I requested certain accommodations at work, which were denied. Specifically, I requested to park closer to the building where I worked because I could only walk with difficulty and with the help of a walker. Respondent said "no". I also requested to work from home, and this request was also denied. White/non-Haitian employees and non-disabled employees who perform similar work as I do are permitted to work from home and are allowed to park their cars close to their offices.

In my short tenure with the Respondents, I quickly became a Senior Customer Representative (SCR) and my pay increased accordingly. However, since my return from FMLA leave due to my disability (multiple sclerosis), I have been written up on various occasions allegedly because I was working too slow and was not being productive, which was not true. I complained about this.

On or about June 7, 2019 Respondent terminated my employment because I allegedly failed to include "correction letters" with certain correspondence.

I believe Respondent discriminated and retaliated against me because of my national origin, race and disability (or perceived disability) in violation of Title VII of the Civil Rights Act of 1964, as amended; the American With Disabilities Act, 42 U.S.C. §12101 et seq.; and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/22/19 _____ Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED
OCT 22 2019
EEOC-MIAMI DISTRICT OFFICE

# EXHIBIT "B"

**Google** Maps    JM Family Enterprises Inc



Map data ©2021 , Map data ©2021    20 ft



# JM Family Enterprises Inc

4.3 ★★★★✦ 79 reviews

Corporate office

    

Directions    Save    Nearby    Send to your phone    Share

📍 100 Jim Moran Blvd, Deerfield Beach, FL 33442

 jmfamily.com

🔍 https://m.jmfamily.com

# JM Family Enterprises, Inc.

Contact Information. 100 Jim Moran Blvd. Deerfield Beach, FL, 33442. (954) 429- 2000. info@jmfamily.com. Links of ...

🔍 https://www.jmfamily.com › about-us

# About Us - JM Family Enterprises, Inc.

At JM Family Enterprises, our mission is to be the premier provider of quality ... Motor Corporation in Tokyo, Japan, to serve the five Southeastern states — Florida, ... Headquartered in Deerfield Beach, Fla., our team consists of more than 4,300 ...

🔍 https://www.jmfamily.com › careers

# Careers - JM Family Enterprises, Inc.

FORTUNE® Magazine consistently ranks JM Family among the "100 Best Companies to Work For." Nine Things You Should Know About JM Family. As you ...

About this data

**Google Maps**　World Omni Financial Corp



Imagery ©2021 Maxar Technologies, Map data ©2021　20 ft



# World Omni Financial Corp

1.5 ★ ⊅ 49 reviews

Car finance and loan company

　　　　

Directions　Save　Nearby　Send to your phone　Share

📍　190 Jim Moran Blvd, Deerfield Beach, FL 33442

🕐　Open now: 9AM–5PM ⌄

| Southeast Toyota ... | Southern Auto Fin... | BankUn |
|---|---|---|
| 4.8 ★ (11) | 1.8 ★ (42) | 2.0 ★ ( |
| Car dealer | Loan agency | Bank |

## Web results

🐦 https://www.worldomni.com

## World Omni - Home

Welcome to JM Family. Welcome. JM Family Enterprises, Inc. is the parent company of World Omni Financial Corp. As a leader in the automotive industry, JM ...

🐦 https://www.worldomni.com › worldomni

## Locations - World Omni

Florida. Deerfiled Beach, FL. World Omni Financial Corp. 190 Jim Moran Blvd. Deerfield Beach, FL 33442 866-663 ...

⚗ https://www.bbb.org › profile › financing

## World Omni Financial Corp. | Better Business Bureau® Profile

This organization is not BBB accredited. Loans in Deerfield Beach, FL. See BBB rating, reviews, complaints, & more.

About this data

**Google** Maps    Southeast Toyota Distributors



Imagery ©2021 Maxar Technologies, U.S. Geological Survey, Map data ©2021    50 ft



# Southeast Toyota Distributors

4.8 ★★★★★ 11 reviews
Car dealer

                

Directions    Save    Nearby    Send to your phone    Share

📍   100 Jim Moran Blvd, Deerfield Beach, FL 33442

🕐   Open now: 9:30AM–6PM   ⌄

🚚 https://www.jmfamily.com › contact

## Contact Us - JM Family Enterprises, Inc.

Southeast Toyota Distributors, LLC. 250 Jim Moran Blvd. Deerfield Beach, FL 33442. Website.

---

🗺️ https://www.mapquest.com › florida › southe...

## Southeast Toyota Distributors 100 Jim Moran Blvd Deerfield ...

Get directions, reviews and information for Southeast Toyota Distributors in Deerfield Beach, FL.

---

in https://www.linkedin.com › company › south...

## Southeast Toyota Distributors, LLC | LinkedIn

Headquartered in Deerfield Beach, Florida, its vehicle processing facilities are located in Jacksonville, Florida and Commerce, Georgia. Southeast Toyota ...

---

About this data

# EXHIBIT "C"



Mail - R. Martin Saenz | Contact Us

jmfamily.com/contact

JM Family Enterprises

Newsroom Associates Partners & Suppliers JM Family Sites

ABOUT US BUSINESSES IMPACT CAREERS

### Media

Christie.Caliendo@jmfamily.com
100 Jim Moran Blvd
Deerfield Beach, FL 33442

Directions to this Location

### Careers

Click here to apply online
For employment verification, call 800-488-2144, ext. 1520

### Southeast Toyota Distributors, LLC

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
Website

Directions to this Location

### Southeast Toyota Vehicle Processing - Florida

Westlake Industrial Park 9985
Pritchard Road
Jacksonville, FL 32219

Directions to this Location

### Southeast Toyota Vehicle Processing - Florida

Jacksonville Port Authority 1751
Talleyrand Ave
Jacksonville, FL 32206

Directions to this Location

### Southeast Toyota Vehicle Processing - Georgia

338 Veterans Memorial Pkwy
Commerce, GA 30530

Directions to this Location

### JM&A Group - Missouri

3120 Rider Trail South
Earth City, MO 63045
Website

Directions to this Location

### World Omni Financial Corp. - Florida

250 Jim Moran Blvd.
Deerfield Beach, FL 33442
866-663-9663
Website

Directions to this Location

### Southeast Toyota Finance - Florida

250 Jim Moran Blvd.
Deerfield Beach , FL 33442
866-663-9663
Website

Directions to this Location

Type here to search

DIVISION OF CORPORATIONS



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

# Detail by Entity Name

Florida Profit Corporation
WORLD OMNI FINANCIAL CORP.

**Filing Information**

| | |
|---|---|
| **Document Number** | G17306 |
| **FEI/EIN Number** | 59-2238832 |
| **Date Filed** | 12/30/1982 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 01/04/1993 |
| **Event Effective Date** | NONE |

**Principal Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Mailing Address**

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/10/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
North Palm Beach, FL 33408

Name Changed: 02/03/2020

Address Changed: 04/29/2020

**Officer/Director Detail**

**Name & Address**

Title Director

Burns, Brent D.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director, President

Chait, Daniel M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Coombs, Ronald M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Williams, Caren Snead
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Browdy, Alan J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Treasurer

Gebhard, Eric M.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Arends, Rodney
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Secretary

Sheptak, Peter J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Hollis, Michael
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
190 Jim Moran Blvd.

Deerfield Beach, FL 33442

Title Asst. Treasurer

Romano, Bryan
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Sherry, Joanna E.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Cateriano, Jose Alfredo
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Brown, Edward J., Jr.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, General Counsel, Secretary

Hall, Andre L.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP

Gray, Michael A.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President

Shope, William J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title CFO

Venezia, Joseph
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Argersinger, H. Scott

190 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Asst. Treasurer

Virtue, Ronald J.
190 Jim Moran Blvd.
Deerfield Beach, FL 33442

### Annual Reports

| Report Year | Filed Date |
|---|---|
| 2018 | 04/10/2018 |
| 2019 | 04/03/2019 |
| 2020 | 04/29/2020 |

### Document Images

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/03/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/10/2018 -- ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 08/05/2016 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/20/2016 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 11/14/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/06/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/08/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 03/19/2001 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/16/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/26/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/21/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |
| 01/04/1995 -- Amendment | View image in PDF format |

Florida Department of State, Division of Corporations

Detail by Entity Name

DIVISION OF CORPORATIONS



Department of State / Division of Corporations / Search Records / Search by Entity Name /

# Detail by Entity Name

Foreign Profit Corporation

**JM FAMILY ENTERPRISES, INC.**

**Filing Information**

| | |
|---|---|
| **Document Number** | P04043 |
| **FEI/EIN Number** | 59-1390794 |
| **Date Filed** | 11/13/1984 |
| **State** | DE |
| **Status** | ACTIVE |
| **Last Event** | NAME CHANGE AMENDMENT |
| **Event Date Filed** | 10/20/2014 |
| **Event Effective Date** | NONE |

**Principal Address**

111 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/29/2020

**Mailing Address**

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Changed: 04/11/2018

**Registered Agent Name & Address**

UNITED AGENT GROUP INC.
801 US HWY 1
PLANTATION, FL 33324

Name Changed: 02/03/2020

Address Changed: 02/03/2020

**Officer/Director Detail**

**Name & Address**

Title Senior Vice President, Community Relations, Director

Moran, Janice M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Family Office and Assistant Sec

Blanton, Thomas K.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Controller, Assist Treasurer

Browdy, Alan J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Heathcott, Forrest W., III
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Government Relations

Deen Hartley, Sonya R.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Philanthropy

Burgess, Melanie
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Sheehy, Edward M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Direct Investing

Reid, David W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Treasurer

Gebhard, Eric M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, HR Services and Technology

Mody, Upendra
100 Jim Moran Blvd.

Deerfield Beach, FL 33442

Title VP, Corporate Taxes

Magner, Kimberly M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Romano, Bryan
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, People Strategy

Heggerick, Lisbeth
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Associate Services

Sudler, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President

Chait, Daniel M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Executive Vice President, CFO

Coombs, Ronald M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group Vice President, Corporate Services

Pollock, Craig J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Battisto, Deborah A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, New Business Liaison

Curtis, Jose A.

100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Miller, Mark M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Sipe, Lisa M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Corporate Services

Tiufekchiev, Michael J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS Planning

Toifel, Brick A.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, ITS

Gordon, Charles S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title President, CEO, Director

Burns, Brent D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Group VP, General Counsel, Asst Secy

Artusi, Stephen P.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC - Corporate Governance, Asst. Secretary

Williams, Caren Snead
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Exec VP, HR, Legal and Corporate Secretary

Johnson, Carmen S.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Deputy GC-Finance & Transactions, Asst. Secretary

Sheptak, Peter J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Virtue, Ronald J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Assistant Treasurer

Argersinger, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP, Enterprise Risk Officer

Guerrero, Juan C.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title VP Enterprise Comm, Media Rel/Corp Events, Trvl

Puello Burkman, Rosa
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McNally, Arline M.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McNally, John J.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Barrett, H. Scott
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

McGinnes, Larry D.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Papera, Christine
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Chairman of the Board

Brown, Colin W.
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

Title Director

Moran, James Michael
100 Jim Moran Blvd.
Deerfield Beach, FL 33442

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2018 | 04/11/2018 |
| 2019 | 04/06/2019 |
| 2020 | 04/29/2020 |

**Document Images**

| | |
|---|---|
| 04/29/2020 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2020 -- Reg. Agent Change | View image in PDF format |
| 04/06/2019 -- ANNUAL REPORT | View image in PDF format |
| 04/11/2018 -- ANNUAL REPORT | View image in PDF format |
| 05/12/2017 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/17/2017 -- ANNUAL REPORT | View image in PDF format |
| 04/19/2016 -- ANNUAL REPORT | View image in PDF format |
| 12/22/2015 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/16/2015 -- ANNUAL REPORT | View image in PDF format |
| 10/20/2014 -- Name Change | View image in PDF format |
| 07/09/2014 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/22/2014 -- ANNUAL REPORT | View image in PDF format |
| 04/15/2013 -- ANNUAL REPORT | View image in PDF format |
| 07/31/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/09/2012 -- ANNUAL REPORT | View image in PDF format |
| 04/04/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/26/2010 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/22/2008 -- ANNUAL REPORT | View image in PDF format |

| Date | |
|---|---|
| 04/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/01/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/05/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/24/2002 -- ANNUAL REPORT | View image in PDF format |
| 04/16/2001 -- ANNUAL REPORT | View image in PDF format |
| 05/03/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/23/1999 -- ANNUAL REPORT | View image in PDF format |
| 03/25/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/03/1997 -- ANNUAL REPORT | View image in PDF format |
| 03/25/1996 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1995 -- ANNUAL REPORT | View image in PDF format |

Florida Department of State, Division of Corporations

# EXHIBIT "D"



Newsroom  |  Associates  |  Partners & Suppliers    JM Family Sites

ABOUT US     BUSINESSES     IMPACT     CAREERS



Photographs courtesy of The Jim Moran Foundation.

To learn more about Jim Moran's legacy, please visit www.jimmoranfoundation.org.

# Leadership

The role of our Executive Management Team is to lead and inspire. Together they provide direction for the company's continued success in business and nurture JM Family's unique culture by exemplifying our guiding principles every day.



**Colin Brown**
Chairman of the Board



**Brent Burns**
President and CEO



**Dan Chait**
President, Southeast
Toyota Finance



**Ron Coombs**
President, JM Family
Holdings & Services



**Forrest Heathcott**
President, JM&A Group



**Carmen Johnson**
Executive Vice President,
Human Resources and
Legal



**Cheryl Miller**
Executive Vice President
and Chief Financial
Officer



**Ed Sheehy**
President, Southeast
Toyota Distributors

# Business Accomplishments

Click on the years below to learn more about our history.



1968
1969       1970       1975       1976

## Locations

JM Family is a global enterprise, but we have strong roots in the communities where our associates live and work. Headquartered in Deerfield Beach, Fla., our team consists of more than 4,300 working throughout North America.



        

© 2021 JM Family Enterprises, Inc.


JM Family
Enterprises

Newsroom | Associates | Partners & Suppliers JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS



Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US                BUSINESSES                IMPACT                CAREERS

About Us        Leadership        Brent Burns

Print this page

# Brent Burns

## President & CEO, JM Family Enterprises, Inc.

**Brent Burns** is president and chief executive officer of JM Family Enterprises, Inc., a $17.7 billion diversified automotive corporation ranked No. 20 on Forbes' list of America's Largest Private Companies. As CEO, Burns leads the entire organization, including JM Family's executive management team, which oversees the development and implementation of the company's objectives and strategies for future growth.

Burns oversees all of JM Family's businesses, including Southeast Toyota Distributors, the world's largest independent distributor of Toyota vehicles; JM&A Group, one of the leading independent providers of finance and insurance products in the automotive industry; Southeast Toyota Finance, a captive finance company for 177 Toyota dealers in the southeast; JM Lexus, South Florida's only Lexus Plus dealer; and Home Franchise Concepts, a franchise network of home improvement products and services consisting of Budget Blinds, Tailored Living, Concrete Craft and AdvantaClean.

Burns joined JM Family in 2000 and was promoted to president of World Omni in 2001. He was named JM Family's chief financial officer in 2008, where he was instrumental to the company's successful financial stability during the country's economic downturn. He was promoted to chief operating officer in 2014 and became president in 2017. With nearly 20 years of leadership experience in automotive operations and finance prior to JM Family, Burns held several senior level positions at various companies including Alamo Rent-A-Car, Inc.; AutoNation Financial Services, Inc.; KPMG Peat Marwick; and RMS Networks, Inc.

Burns graduated from Florida Atlantic University with a bachelor's degree in business administration. In 2017, he was appointed to the Florida Atlantic University Board of Trustees. Burns is a member of the Florida Institute of Certified Public Accountants and sits on the board of the Boys & Girls Clubs of Broward County. He and his wife live in Sea Ranch Lakes, Fla. and have two children.

JM Family Enterprises, Inc., founded by Jim Moran in 1968, is a $17.7 billion diversified automotive company ranked No. 20 on Forbes' list of America's Largest Private Companies. JM Family is also ranked No. 26 by FORTUNE® as one of the 100 Best Companies to Work For®, its 22nd consecutive year on the list. Primary subsidiaries include: Southeast Toyota Distributors, JM&A Group, Southeast Toyota Finance, JM Lexus and Home Franchise Concepts. Headquartered in Deerfield Beach, Fla., JM Family has major U.S. operations in Jacksonville and Margate, Fla.; Commerce and Alpharetta, Ga.; Mobile, Ala.; St. Louis, Mo.; and Irvine, Calif. Interact with JM Family on Facebook, Twitter, Instagram and LinkedIn.

    

Contact Us        Sitemap        Privacy Policy & Terms of Use        Feedback        Visit Mobile Site

© 2021 JM Family Enterprises, Inc.



Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS



ABOUT US | BUSINESSES | IMPACT | CAREERS

About Us | Leadership | Dan Chait

Print this page

# Dan Chait

### President, Southeast Toyota Finance
### Executive Vice President, JM Family Enterprises, Inc.



**Dan Chait** is president of Southeast Toyota Finance, and executive vice president of parent company JM Family Enterprises, Inc. JM Family is a diversified automotive corporation ranked No. 20 on Forbes' list of America's Largest Private Companies. Chait also serves as a member of the company's Executive Management Team, which oversees the development and implementation of the company's long-range planning and strategies for future growth.

As president, Chait is responsible for the strategic and operational management of Southeast Toyota Finance, a captive finance company for 177 Toyota dealers in Alabama, Florida, Georgia, North Carolina and South Carolina. The company offers a broad range of products and services to automotive dealer and consumers.

Southeast Toyota Finance is a division of World Omni Financial Corp., of which Chait is also president. DataScan, a global leader in wholesale floorplan accounting and risk management systems, is a subsidiary of World Omni and is headquartered in Alpharetta, Ga. Established in 1981, World Omni is headquartered in Deerfield Beach, Fla. and is assigned a long-term issuer rating of BBB and a short-term rating of A-2 by S&P.

Chait joined the company in 2002 as vice president, Asset Management. In 2007 he became group vice president responsible for Southeast Toyota Finance's Portfolio Management, Dealer Services, Operations, Sales and Marketing functions. In 2011, Chait was named senior vice president, and in 2012 became president. Chait has more than 25 years experience in the financial services industry and has held senior level positions with US Airways, AutoNation, and UniCapital Corporation.

Chait earned his Master of Business Administration and bachelor's degree in economics and political science from the University of Rochester. He resides in Palm Beach Gardens, Fla., with his wife and they have four children.

JM Family Enterprises, Inc., founded by Jim Moran in 1968, is a $17.7 billion diversified automotive company ranked No. 20 on *Forbes'* list of America's Largest Private Companies. JM Family is also ranked No. 26 by FORTUNE® as one of the 100 Best Companies to Work For®, its 22nd consecutive year on the list. Primary subsidiaries include: Southeast Toyota Distributors, JM&A Group, Southeast Toyota Finance, JM Lexus and Home Franchise Concepts. Headquartered in Deerfield Beach, Fla., JM Family has major U.S. operations in Jacksonville and Margate, Fla.; Commerce and Alpharetta, Ga.; Mobile, Ala.; St. Louis. Mo.; and Irvine, Calif. Interact with JM Family on Facebook, Twitter, Instagram and LinkedIn.

    



Newsroom | Associates | Partners & Suppliers   JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS



Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS

 About Us | Leadership | Ron Coombs

Print this page

# Ron Coombs

## President, JM Family Holdings & Services
## Executive Vice President, JM Family Enterprises, Inc.



**Ron Coombs** is president of JM Family Holdings & Services and executive vice president of JM Family Enterprises, Inc. JM Family Holdings & Services is a newly created branch of JM Family, a diversified automotive corporation ranked No. 20 on Forbes' list of America's Largest Private Companies.

Coombs focuses on the diversification and acquisition efforts of JM Family, and is also responsible for the business operations of subsidiaries: JM Lexus, located in Margate, Fla.; DataScan, a global leader in wholesale floorplan accounting and risk management systems; and Home Franchise Concepts, a franchise network of home improvement products and services consisting of Budget Blinds, Tailored Living featuring PremierGarage, Concrete Craft and AdvantaClean. Coombs also oversees the company's Corporate Services and Investment departments and serves as a member of the Executive Management Team, which directs the development and implementation of JM Family's long-range planning and strategies for future growth.

He joined JM Family in 1999 as vice president for one of its major business units, World Omni Financial Corp. and was promoted to CFO of JM&A Group, another primary subsidiary, during 2001. He was named JM&A's chief operating officer in 2008, where he was responsible for all sales and operations functions. Most recently, Coombs served as executive vice president and chief financial officer of JM Family from 2016 to 2020, during which time he oversaw financial operations for JM Family and its business units. Prior to JM Family, he worked at Key Bank and the Federal Reserve Bank in Cleveland, Ohio.

Coombs serves as vice president of the Board of Directors for Boca Helping Hands. He received his master's degree in business administration from Case Western Reserve University and his bachelor's degree in economics from Albion College. Coombs and his wife have three children, and they reside in Boca Raton, Fla.

JM Family Enterprises, Inc., founded by Jim Moran in 1968, is a $17.7 billion diversified automotive company ranked No. 20 on Forbes' list of America's Largest Private Companies. JM Family is also ranked No. 26 by FORTUNE® as one of the 100 Best Companies to Work For®, its 22nd consecutive year on the list. Primary subsidiaries include: Southeast Toyota Distributors, JM&A Group, Southeast Toyota Finance, JM Lexus and Home Franchise Concepts. Headquartered in Deerfield Beach, Fla., JM Family has major U.S. operations in Jacksonville and Margate, Fla.; Commerce and Alpharetta, Ga.; Mobile, Ala.; St. Louis, Mo.; and Irvine, Calif. Interact with JM Family on Facebook, Twitter, Instagram and LinkedIn.

    



Newsroom  |  Associates  |  Partners & Suppliers     JM Family Sites

ABOUT US            BUSINESSES            IMPACT            CAREERS

# EXHIBIT "E"



JM Family
Enterprises



# COMPANY
## OVERVIEW



World Omni
Financial Corp.

# JM FAMILY
## OVERVIEW

## JM Family Enterprises



JM Family Enterprises, Inc. is a leader in the automotive industry. JM Family's primary focus includes vehicle distribution and processing, financial services, warranty and insurance activities, retail vehicle sales and dealer technology services.

### HISTORY
Founded on October 26, 1968, by Jim Moran, as the exclusive distributor of Toyota vehicles in Alabama, Florida, Georgia, North Carolina and South Carolina (Five-State Area).

### WORKFORCE
JM Family employs more than 4,300 associates across the United States and Canada.

## Southeast Toyota Distributors
Established: 1968



Southeast Toyota Distributors (SET) is the world's largest independent distributor of Toyota vehicles. SET distributes vehicles, parts and accessories to the franchised Toyota dealers in the Five-State Area.

## JM&A Group
Established: 1978



JM&A Group (JM&A) is one of the largest independent providers of finance and insurance (F&I) products in the automotive industry.

## World Omni Financial Corp.
Established: 1981



World Omni Financial Corp. (World Omni) is a diversified financial company offering a broad range of products and services to automotive dealers, consumers and lenders.



# AWARDS
## & RECOGNITION



**Forbes** — JM Family is ranked as one of America's Largest Private Companies

FORTUNE
**100 BEST** COMPANIES TO WORK FOR® — JM Family has been ranked as one of the 100 Best Companies to Work For in the U.S. since 1999

**S&P Global** Ratings — World Omni is publicly rated A-2 / BBB



A.M.BEST — JM&A's Courtesy Insurance Company consistently receives an A.M. Best Rating of A (Excellent)

COMPANY OVERVIEW |

# THE BIG PICTURE
## SET, WORLD OMNI AND JM&A

### PURCHASE & PROCESSING

SET purchases vehicles from Toyota and processes them at one of three state-of-the-art facilities.

**WESTLAKE PROCESSING**
Jacksonville, FL
*500 Acres*

**INLAND PROCESSING**
Commerce, GA
*300 Acres*

**PORT PROCESSING**
Jacksonville, FL
*75 Acres*


Southeast Toyota Distributors, LLC

### TRANSPORTATION

After processing, vehicles are delivered to dealers, either via SET-owned or third-party car haulers. On average, more than 350,000 vehicles are distributed annually to over 175 Toyota dealerships in AL, FL, GA, NC and SC. Plus, roughly 100,000 vehicles per year are sold to fleet customers.


Southeast Toyota Distributors, LLC

### PARTS SUPPLY AND DISTRIBUTION

As a leading distributor of Toyota parts and accessories in the United States, SET is able to provide same-day shipments of parts to the majority of Toyota dealers in its Five-State Area.


Southeast Toyota Distributors, LLC



## TOYOTA DEALERSHIPS

Regional teams from SET, World Omni and JM&A provide products and services to Toyota dealerships throughout its Five-State Area. World Omni provides commercial loans to those same Toyota dealers.





## FINANCE & SALE

Dealerships present finance options to the customer. If World Omni's finance offer is selected, a retail installment or lease contract is signed by the customer with the dealer and is sold to World Omni. As a technology innovator, World Omni is able to process the contracts both electronically and through traditional methods. The contract may also include the financing of an F&I product marketed by JM&A.




## CUSTOMER SERVICE

World Omni services the customer throughout the term of the contract from its Customer Experience Centers and customer website. JM&A administers F&I products that help customers protect their vehicle investment.






# OVERVIEW
## WORLD OMNI

In the 1970s, Southeast Toyota dealerships were dependent upon regional and local banks for vehicle financing. When banks closed or exited the auto finance business, it severely disrupted Toyota sales. To eliminate this risk, Jim Moran established World Omni in 1981 as the first captive finance company in America for an import car manufacturer.

Operating under the Southeast Toyota Finance brand, World Omni:

> Underwrites, purchases and services consumer retail installment contracts on new and pre-owned vehicles, and leases on new vehicles

> Provides floorplan, mortgage and capital loan financing to dealers

> Manages two state-of-the-art Customer Experience Centers, with more than 500 associates, in Mobile, AL., and St. Louis, MO.

### SOUTHEAST TOYOTA FINANCE
World Omni utilizes the Southeast Toyota Finance (SETF) brand to deliver its captive finance services to Toyota dealers in the southeast United States.



### DATASCAN
As a global leader, DataScan provides clarity to wholesale loan accounting and manages risk with holistic auditing solutions for a wide range of clients throughout the world.







WORLD OMNI FINANCIAL CORP.

# GEOGRAPHIC

## AREAS OF OPERATION



First captive finance company in the United States for an import auto manufacturer

St. Louis, MO

Alpharetta, GA

Mobile, AL

Deerfield Beach, FL
Corporate Headquarters

● Business Operation

Southeast Toyota Finance Region

COMPANY OVERVIEW

# EXPERTS
## IN VEHICLE REMARKETING

*Although located in the southeast,*
*Southeast Toyota Finance (SETF) utilizes* **nationwide auction networks**



### TECHNOLOGY

When a customer returns a Toyota leased from SETF, the SET dealership grounds the vehicle with a tablet or smartphone, utilizing SETF's proprietary app. The dealership then has the opportunity to purchase the off-lease Toyota. If the vehicle is not purchased by the grounding dealer, it is offered for sale to the Toyota dealerships in the Five-State Area through SETF's remarketing website.





### REPAIRS

The off-lease vehicles not purchased online by SET dealers are shipped to physical auctions. Then, SETF's auction coordinators evaluate each vehicle's condition and determine appropriate repairs that will increase the vehicle's value and condition grade, which results in higher auction prices and stronger residual recovery.



### AUCTION

Using real-time market conditions to maximize pricing, SETF's off-lease Toyota vehicles are shipped to auctions around the United States. SETF sales representatives are present at virtually every auction to assist in staging, pricing and selling the vehicles.

| WORLD OMNI FINANCIAL CORP.



*Every year, Southeast Toyota Finance* **processes and sells between 40,000 and 45,000 vehicles** *through its remarketing program*

COMPANY OVERVIEW |



WORLD OMNI FINANCIAL CORP.

# ASSET-BACKED SECURITIZATION PLATFORMS
## WORLD OMNI FINANCIAL CORP.

The predominant part of World Omni's capital is raised through the issuance of public and private asset-backed securitization (ABS) debt, backed by World Omni's retail, lease and floorplan originations. World Omni has utilized the issuance of ABS since 1986 and currently does so through four distinct platforms:

## WORLD OMNI AUTO RECEIVABLES TRUST (WOART)

- **U.S. Prime Auto Retail Loan**
- Public ABS platform since 2000
- High concentration of new Toyota collateral

## WORLD OMNI SELECT AUTO TRUST (WOSAT)

- **U.S. Near-Prime Auto Retail Loan**
- Public ABS platform since 2019
- High concentration of new Toyota collateral

## WORLD OMNI AUTOMOBILE LEASE SECURITIZATION TRUST (WOLS)

- **U.S. Prime Auto Lease**
- Public ABS platform since 1992
- 100% new Toyota collateral

## WORLD OMNI MASTER OWNER TRUST (WOMOT)

- **U.S. Floorplan**
- 144A private platform since 1991
- High concentration of new Toyota collateral

All transactions are typically called at their first available redemption date

Offered notes include Triple-A rated bonds, as well as subordinate bonds

COMPANY OVERVIEW |

# INVESTOR RELATIONS

## WORLDOMNI.COM

Access to our latest information and filings is available on our website, including:

- **Financial summary** of World Omni Financial Corp.
- World Omni **public rating**
- **History** of all ABS performance and servicer reports
- **ESG** efforts
- **ABS** presentations

If you have any questions, please contact us at **investorrelations@jmfamily.com.**

# EXHIBIT "F"

 **JM Family Enterprises**

Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US          BUSINESSES          IMPACT          CAREERS

🏠 Newsroom        TEST_World Omni Financial Corp Names New President

Print this page

# World Omni Financial Corp. Names New President

Deerfield Beach, Fla. — Colin Brown, president and CEO of diversified automotive company JM Family Enterprises, Inc., announced the promotion of Dan Chait to president of World Omni Financial Corp. A subsidiary of JM Family, World Omni is a leading provider of financial products and services to automotive dealers, consumers and lenders.



Chait joined World Omni in 2002 after holding senior-level positions at US Airways, AutoNation and UniCaptial Corporation. He most recently served as senior vice president of World Omni working closely with Frank Armstrong, who has announced his retirement as president of the company.

Since Armstrong became president of World Omni in November 2008, the company experienced significant growth and achieved its best financial results. His desire to be closer to his longtime home in central Florida and continue recovering from recent back surgery were important factors in his decision to retire. Armstrong will serve as an advisor to Chait through the end of the year.

"Frank has been an integral part of our success since joining the company in 2001. We understand and support his decision to retire and are grateful for his service," said Brown. "Dan's appointment to president is a testament to his leadership and proven commitment to our company and our associates. With his extensive experience in the financial services industry and the collective efforts of our World Omni team, we are well positioned for continued growth."

As president, Chait is responsible for the strategic and operational management of World Omni and its divisions, including Southeast Toyota Finance, which provides financial products to Toyota dealerships and consumers in the Southeast U.S.; CenterOne Financial Services, a provider of portfolio services designed to improve the performance of client portfolios; DataScan Technologies, a global provider of wholesale floorplan accounting and risk management systems; and DataScan Field Services, one of the largest floorplan inventory verification and vehicle inspection companies in the industry. Chait will also continue serving as a member of JM Family's Executive Management Team.

Chait earned his Master of Business Administration and bachelor's degree in economics and political science from the University of Rochester. He resides in Palm Beach Gardens, Fla., with his wife and four children.

**About World Omni Financial Corp.**

World Omni Financial Corp., headquartered in Deerfield Beach, Fla., provides financial products and services to consumers, automotive dealers and lenders. The company is a subsidiary of JM Family Enterprises, Inc., a diversified automotive corporation ranked No. 27 on *Forbes'* list of "America's Largest Private Companies." JM Family is also ranked No. 17 by FORTUNE® as one of the "100 Best Companies to Work For," its 14th consecutive year on the list.

 Southeast Toyota Distributors, LLC    JM&A   Southeast Toyota Finance   JM LEXUS   HOME FRANCHISE

## JM Family Enterprises

Newsroom | Associates | Partners & Suppliers | JM Family Sites

ABOUT US | BUSINESSES | IMPACT | CAREERS

© 2021 JM Family Enterprises, Inc.

*Stay Connected with JM Family:*

# EXHIBIT "G"



Newsroom | Associates | Partners & Suppliers   JM Family Sites

ABOUT US        BUSINESSES        IMPACT        CAREERS



# Careers

FORTUNE® Magazine consistently ranks JM Family among the "100 Best Companies to Work For."

## Nine Things You Should Know About JM Family

*View Job Openings*

As you explore our site, you will learn more about who we are, what we do and what makes JM Family a great place to v on time? Here are nine things we want you to know about joining our team:







### Most Important Asset

The 4,300 dedicated JM Family associates across North America are our most important asset.

### Core Values

Our five core values are the foundation of our culture and we strive to live them every day: Consideration, Cooperation, Communication, Innovation and Accountability.

### Workplace of Choice

22 consecutive years as one of FORTUNE® Magazine's 100 Best Companies to Work For.

## Total Rewards

Our associates bring their very best to JM Family every day, and we strive to offer benefits that demonstrate our appreciation for their hard work and dedication. Total Rewards incorporates more than just a paycheck and medical care. It is a broad set of programs designed to reflect associates' role in our success while providing a meaningful experience for them and their families.

Hover over the icons below to view the benefits available to our associates.



Education Assistance

Vehicle Purchase Programs

Associates Helping Associates

Telecommuting & Flextime Policies

Adoption Assistance

Long-term & Short-term Disability

View Job Openings

## Health and Wellness

Ask JM Family associates about our health and wellness programs, and they will likely tell you about the convenience of having onsite medical care and the peace of mind knowing a doctor or nurse is only a few steps away.

LEARN MORE



## Meet Our Associates

Our associates are the heart and soul of our company. They are the driving force behind our success. Meet some of our associates in the videos below and hear why they love working at JM Family.





Newsroom | Associates | Partners & Suppliers | JM Family Sites

| ABOUT US | BUSINESSES | | IMPACT | CAREERS |





Cooperation

Communication

Innovation

Accountability

Finding a job shouldn't feel like work. We do our best to simplify the process by following five steps:

1. Online application
2. Internal assessment to determine which area of our company best suits a candidate's skills
3. Phone interview
4. Onsite interview with manager and peers, facility tours
5. Job offer

If you're ready to join our team, underline{complete an application today!}

Jim Moran always attributed his success, and the success of JM Family, to the people he worked with. Our more than 4,300 associates believe in our core values – Consideration, Cooperation, Communication, Accountability and Inno... and demonstrate them every day. That is why we have ... leader in the automotive industry for more than 50 year...

*View Job Openings*

When filling open positions, whether the role is in our ve... processing operations, customer service call centers or partnering with dealers in the field, we look for talented people who will contribute both to our culture and our success.

## Careers Map



48 active jobs | JM Family Enterprises

Terms | Privacy



ABOUT US     BUSINESSES     IMPACT     CAREERS

Newsroom  |  Associates  |  Partners & Suppliers    JM Family Sites

## Disability Accommodations

If you have a disability and require a reasonable accommodation to complete the job application process, please contact JM Family 's Talent Acquisition department at talentacquisition@jmfamily.com for assistance.  If you have an accommodation request for one of our recruiting events, please notify us at least 72 hours prior so that we may provide assistance.

## Notice to Job Applicants

To All Job Applicants of JM Family Enterprises, Inc.,

We have recently learned that one or more individuals is impersonating JM Family associates, including members of our company's recruiting team. If you have applied for an open position at JM Family or any of our business units online at jmfamily.com/careers, all communication would come from an iCims email domain (@icims.com) or a JM Family email You would also be contacted by phone at one of the contact numbers provided in your online application. **At no time will a member of our recruiting team communicate with applicants using a personal email address (i.e., @gmail.com or @yahoo.com), or refuse to connect by phone**. Similarly, we would never request credit card information from any applicant. If you are contacted by an individual impersonating a JM Family associate using a personal email address, please do not respond or provide any sensitive information.

In addition:

- Applications should only be submitted through the JM Family careers page
- To verify communication from a JM Family representative, please email us at talentacquisition@jmfamily.com
- If you suspect you have been contacted under fraudulent pretenses, contact the Federal Bureau of Investigation to report this matter at www.ic3.gov

*View Job Openings*

            

Contact Us    Sitemap    Privacy Policy & Terms of Use    Feedback    Visit Mobile Site

© 2021 JM Family Enterprises, Inc.

*Stay Connected with JM Family:*    

# EXHIBIT "I"

**AUDE JESSICA RAPHAEL**
3642 NW 116 TH TERRACE
CORAL SPRINGS, FL 33065

| | |
|---|---|
| Emp No | 19828 |
| Location | DRN100 |
| Division | 004210 |
| Department | |
| Region | |
| Client | JMF1000 |

| | |
|---|---|
| FIT | S 2 |
| SIT res | S 2 |
| SIT work | 0 |

| | |
|---|---|
| Check No | 181855 |
| Check Date | 12/1/2017 |
| Period End | 12/1/2017 |
| Paygroup | WOFCO |
| Job | SR0048 |
| Pay Rate | 18.35 |

**COMPANY MESSAGE**

### EARNINGS

| Pay Type | Hours | Current | YTD |
|---|---|---|---|
| 16 Year End Inc | 0.00 | 0.00 | 355.63 |
| 17 Year End Inc | 0.00 | 0.00 | 2577.38 |
| Award/Gift | 0.00 | 0.00 | 150.00 |
| Bonus | 0.00 | 3849.39 | 3849.39 |
| Dock Pay | 0.00 | 0.00 | -667.02 |
| Group Term Life | 0.00 | 0.00 | 43.58 |
| Health Savings | 0.00 | 0.00 | 300.00 |
| HSA Incentive | 0.00 | 0.00 | 325.00 |
| Inc OT Premium | 0.00 | 0.00 | 64.06 |
| Overtime 1.5x | 0.00 | 0.00 | 2192.16 |
| Salary | 0.00 | 0.00 | 26223.02 |
| Salary Adj | 0.00 | 0.00 | 1817.94 |
| Short Term Disab | 0.00 | 0.00 | 6206.69 |
| Straight OT 1x | 0.00 | 0.00 | 182.13 |

### DEDUCTIONS

| Deduction | Current | YTD |
|---|---|---|
| 401(k) Cont | 0.00- | 1257.62- |
| 401(k) Loan 1 | 0.00- | 1286.64- |
| 401k Annual Inc | 0.00- | 11.87- |
| 401k Loan 2 | 0.00- | 145.40- |
| Award/Gift | 0.00- | 150.00- |
| Cigna HSA Med | 0.00- | 187.00- |
| Cigna HSA-EE | 0.00- | 916.74- |
| Group Legal | 0.00- | 173.36- |
| Group Term Life | 0.00- | 43.56- |
| Health Savings | 0.00- | 300.00- |
| HSA Incentive | 0.00- | 325.00- |

### TAXES

| Tax Code | Current | YTD |
|---|---|---|
| Federal Income Tax | 962.36- | 4781.71- |
| Employee Medicare | 55.82- | 593.27- |
| Social Security Em | 238.65- | 2536.74- |

### EMPLOYEE ACCRUALS

### NET PAY DISTRIBUTION

| | GROSS | TAXES | DEDS | NET PAY |
|---|---|---|---|---|
| **CURRENT** | 3849.39 | 1256.83 | 0.00 | 2592.56 |
| **YTD** | 42648.93 | 7914.72 | 4800.09 | 29929.12 |

| Check Amount | $2592.56 |
|---|---|
| Total Net Pay | 2592.56 |

Ultimate Software

POWERED BY **ULTIPRO**

This document has a void pantograph and an artificial watermark

**WORLD OMNI**
FINANCIAL CORP

WELLS FARGO BANK, N.A.
225 WATER STREET
JACKSONVILLE, FL 32202

181856

643/670

2696806624568

Date: 12/1/2017    Pay Amount: $2592.56

PAY    Two Thousand Five Hundred Ninety-Two and 56/100 ****

PAY TO
THE
ORDER OF

AUDE JESSICA RAPHAEL
3642 NW 116 TH TERRACE
CORAL SPRINGS, FL 33065

02108    JMF1000\HDCI3965

WORLD OMNI
FINANCIAL CORP
199 Jim Moran Blvd
Deerfield Beach, FL 33442

**AUDE JESSICA RAPHAEL**
2049 MAPPLEWOOD DR
CORAL SPRINGS, FL 33071

| | | | | |
|---|---|---|---|---|
| Emp No | 19826 | FIT | S 2 | Check No 176983 |
| Location | DRFH2Q | SIT res | S 2 | Check Date 12/4/2015 |
| Division | 004210 | SIT work | 0 | Period End 12/4/2015 |
| Department | | | | Paygroup WOFC0 |
| Region | | | | Job SR0046 |
| Client | JMF1000 | | | Pay Rate 18.00 |

### COMPANY MESSAGE

|  | EARNINGS | | | | DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|---|---|---|---|---|
| Pay Type | Hours | Current | YTD | Deduction | Current | YTD | Tax Code | Current | YTD |
| 1st Year End Inc | 0.00 | 0.00 | 658.23 | 401(k) Cont | 0.00- | 1270.21- | Federal Income Tax | 912.44- | 4540.73- |
| P5 Year End Inc | 0.00 | 0.00 | 2100.38 | 401k Annual Inc | 112.88- | 705.58- | Employee Medicare | 54.86- | 567.76- |
| Ann Inc OT Prem | 0.00 | 0.00 | 78.14 | Award/Gift | 0.00- | 350.00- | Social Security Em | 233.28- | 2427.73- |
| Award/Gift | 0.00 | 0.00 | 350.00 | Cigna HSA - EE | 0.00- | 916.74- | | | |
| Bonus | 0.00 | 3762.62 | 3762.62 | Cigna HSA Med | 0.00- | 175.00- | | | |
| Group Term Life | 0.00 | 0.00 | 23.76 | Group Term Life | 0.00- | 23.76- | | | |
| Health Savings | 0.00 | 0.00 | 300.00 | Health Savings | 0.00- | 300.00- | | | |
| HSA Incentive | 0.00 | 0.00 | 500.00 | HSA Incentive | 0.00- | 500.00- | | | |
| Overtime 1.5x | 0.00 | 0.00 | 758.41 | | | | | | |
| Personal Pd Out | 0.00 | 0.00 | 640.91 | | | | | | |
| Salary | 0.00 | 0.00 | 31760.06 | | | | | | |
| Straight OT 1x | 0.00 | 0.00 | 107.15 | | | | | | |

| | | EMPLOYEE ACCRUALS | | NET PAY DISTRIBUTION | |
|---|---|---|---|---|---|

| | GROSS | TAXES | DEDS | NET PAY | |
|---|---|---|---|---|---|
| CURRENT | 3762.62 | 1200.28 | 112.88 | 2449.46 | Check Amount $2449.46 |
| YTD | 41049.66 | 7536.28 | 3732.29 | 29781.09 | Total Net Pay 2449.46 |

Ultimate Software

POWERED BY **ULTIPRO**

---

This document has a void pantograph and an artificial watermark

WORLD OMNI
FINANCIAL CORP
199 Jim Moran Blvd
Deerfield Beach, FL 33442

WELLS FARGO BANK, N.A.
225 WATER STREET
JACKSONVILLE, FL 32202

176783

643/670

2696806824588

Date: 12/4/2015       Pay Amount: $2449.46

PAY   Two Thousand Four Hundred Forty-Nine and 46/100 ~~~~~~~~~~~~~~~~

PAY TO        AUDE JESSICA RAPHAEL
THE           2049 MAPPLEWOOD DR
ORDER OF      CORAL SPRINGS, FL 33071



01189        JMF1000\HDQ\WOFCO\02\004210



Case 0:21-cv-60530-FAM   Document 1-1   Entered on FLSD Docket 03/08/2021   Page 353 of 365

<table>
<tr><td></td><td>IN THE CIRCUIT COURT OF THE 17THJUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA</td></tr>
</table>

IN THE CIRCUIT COURT OF THE 17THJUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,

      Plaintiff,

v.

JM FAMILY ENTERPRISES, INC.,

      Defendant.

)
)
)
)
)    Case No.: CACE-20-010942
)
)
)
)
)

## **PLAINTIFF'S NOTICE OF SUPPLEMENTING THIRD AMENDED COMPLAINT**

Plaintiff, Aude Jessica Raphael ("Plaintiff"), individually, by and through her undersigned counsel, hereby files this Notice of Supplementing her Third Amended Complaint. On February 15, 2021 Plaintiff filed her Third Amended Complaint ("Complaint"), but inadvertently failed to include a copy of the Offer Letter referenced as Exhibit "H". Plaintiff now files the Offer Letter, as Exhibit "H", to supplement her Third Amended Complaint.

Respectfully submitted,

**By: /s/ Tanesha Blye**
Tanesha Blye, Esq. (FBN: 0738158)
Email: tblye@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800 Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2021, I electronically filed the foregoing document through Florida's E-Filing Portal.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via E-mail or in some other authorized manner.

### By: /s/ Tanesha Blye

### SERVICE LIST

AUDE JESSICA RAPHAEL **v.** JM FAMILY ENTERPRISES, INC.
Case No.: CACE-20-010942
**United States District Court, Southern District of Florida**

Tanesha Blye, Esq.
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
E-mail: msaenz@saenzanderson.com SAENZ
& ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Attorneys for Plaintiff

Jenna Rinehart Rassif, Esq. Florida Bar
No. 56855 Email:
jenna.rassif@jacksonlewis.com Valeria L.
Hooker, Esq. Florida Bar No. 113688 E-
mail: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C. One Biscayne
Tower, Suite 3500 2 South Biscayne
Boulevard Miami, Florida 33131
Telephone: (305) 577-7600 Facsimile:
(305) 373-4466
Attorneys for Defendants

# EXHIBIT "H"



**WORLD OMNI**

**World Omni Financial Corp.**
190 Jim Moran Boulevard
Deerfield Beach, Florida 33442
(954) 429-2200

October 1, 2013

Ms. Aude Jessica Raphael
317 SW 77th Avenue
North Lauderdale, Florida 33068

Dear Jessica:

I am pleased to confirm the job offer extended to you to join JM Family Enterprises, Inc. As discussed, your position title will be Senior Customer Service Representative, reporting to Audrey DeMoss. Your start date will be Monday, October 14, 2013. Please report to 120 Jim Moran Boulevard at 8:30 am on that day, where a Human Resources Specialist will conduct your Day One Welcome meeting.

Your semi-monthly salary will be $1,333.33, which equates to annualized earnings of $32,000 base salary. Additionally, for the current year, you will be eligible to participate in JM Family's Annual Incentive Plan. The Plan has an annual targeted payout of $1,600, which will be pro-rated based on your start date; however, the actual payout is determined by performance.

On the first day of the month following your date of hire, you and your eligible dependents are eligible to participate in our flexible benefits program called "Your JM Choice Plan".

You should be aware that this offer is contingent upon your successful completion of our pre-employment screening which includes a standard background check and drug screen as well as proof of identity and employability. In addition, JM Family Enterprises, Inc., and its affiliates are at-will employers, thus, your employment with us is not guaranteed for any particular period of time nor does this letter constitute an employment contract.

We feel you will be a valuable addition to our staff and that the experience you gain will contribute further to your own professional objectives. If you have any questions regarding this letter, please feel free to contact me at 954-363-6201.

Sincerely,

Noelle Lees
Human Resources Generalist

*This is a non-exempt position, which means that you are eligible for overtime pay.

A JM Family Enterprises, Inc. Company

Case 0:21-cv-60530-FAM Document 1-1 Entered on FLSD Docket 03/08/2021 Page 357 of 365

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE-20-010942

AUDE JESSICA RAPHAEL      )
                          )
       Plaintiff,        )
                          )
v.                          )
                          )
JM FAMILY ENTERPRISES, INC. and  )
WORLD OMNI FINANCIAL CORP.; and  )
AUDREY DEMOSS,      )
                          )
       Defendants.      )
_____)

## DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO THE PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants JM Family Enterprises, Inc. ("JMFE") and World Omni Financial Corp. ("World Omni") (together, "Defendants"), by and through their undersigned counsel, hereby file this Unopposed Motion for Extension of Time, seeking an extension up to and including March 8, 2021, in which to respond to the Third Amended Complaint filed by Plaintiff Aude Jessica Raphael ("Plaintiff"). In support of this Motion, Defendants state as follows:

1.      On Monday, February 15, 2021, Plaintiff filed her Third Amended Complaint.

2.      Defendants' response to the Third Amended Complaint currently is due on February 25, 2021.

3.      Defendants have been working diligently to prepare a response to the Third Amended Complaint, but due to the addition of new causes of action, as well as other business conflicts, Defendants need additional time to finalize their response.

4.      On February 22, 2021, defense counsel contacted Plaintiff's counsel via telephone

and email requesting a brief extension of time to prepare a response.

5. On February 23, 2021, defense counsel followed up with Plaintiff's counsel via telephone and email regarding the extension request, and Plaintiff's counsel stated that she did not object to the relief sought.

6. Accordingly, Defendants respectfully request an eleven-day extension of time until March 8, 2021 to file a response to the Third Amended Complaint.

7. This is the first extension of time to file a response to the Third Amended Complaint sought by Defendants.  This extension request is made in good faith and is not interposed for any dilatory or improper purpose.

WHEREFORE, Defendants respectfully request an extension of time, up to and including March 8, 2021, to file a response to the Third Amended Complaint.

Dated:  February 24, 2021

<div align="center">

Respectfully submitted,

By: *s/ Valerie L. Hooker*
 Jenna Rinehart Rassif, Esq.
 Florida Bar No. 56855
 Email: *jenna.rassif@jacksonlewis.com*
 Valeria L. Hooker, Esq.
 Florida Bar No. 113688
 E-mail: *valerie.hooker@jacksonlewis.com*
 Templeton N. Timothy, Esq.
 Florida Bar No. 1025172
 E-mail: *templeton.timothy@jacksonlewis.com*
 JACKSON LEWIS P.C.
 One Biscayne Tower, Suite 3500
 2 South Biscayne Boulevard
 Miami, Florida 33131
 Telephone: (305) 577-7600
 Facsimile: (305) 373-4466
 *Attorneys for Defendants*

</div>

Care No. CACE-20-010942

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document is being served on

February 24, 2021, on all counsel of record on the service list below via transmission of Notices

of Electronic Filing.

<div align="right">

*s/ Valerie L. Hooker*
Valerie L. Hooker, Esq.

</div>

### <u>SERVICE LIST</u>

Tanesha Blye, Esq.
Florida Bar No. 0738158
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
Florida Bar No. 0297779
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
Florida Bar No. 0640166
E-mail: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*

Jenna Rinehart Rassif, Esq.
Florida Bar No. 56855
E-mail: *jenna.rassif@jacksonlewis.com*
Valerie L. Hooker, Esq.
Florida Bar No. 113688
E-mail: *valerie.hooker@jacksonlewis.com*
Templeton N. Timothy, Esq.
Florida Bar No. 1025172
E-mail: *templeton.timothy@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Attorneys for Defendants*

4812-7135-4334, v. 1

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CACE20010942</u>   DIVISION <u>25</u>   JUDGE <u>Carol-lisa Phillips</u>

**Aude Jessica Raphael**

Plaintiff(s) / Petitioner(s)

v.

**JM Family Enterprises, Inc., et al**

Defendant(s) / Respondent(s)

_____ /

## AGREED ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO THE THIRD AMENDED COMPLAINT

This matter came before the Court upon Defendants' Motion for Extension of Time to Respond to the Third Amended Complaint.  Having reviewed the Motion and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED.  Defendants shall have through and including March 8, 2021 to respond to Plaintiff's Third Amended Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>02-25-2021</u>.

<u>CACE20010942 02-25-2021 8:10 AM</u>

Hon. Carol-lisa Phillips

**CIRCUIT JUDGE**

Electronically Signed by Carol-lisa Phillips

**Copies Furnished To:**

Aron Smukler , E-mail : ursula@saenzanderson.com

Aron Smukler , E-mail : asmukler@saenzanderson.com

Ilona Demenina Anderson , E-mail : ilona@saenzanderson.com

Jenna Rinehart Rassif , E-mail : jenna.rassif@jacksonlewis.com

Ruben Martin Saenz , E-mail : msaenz@saenzanderson.com

Ruben Martin Saenz , E-mail : efiling@saenzanderson.com

Ruben Martin Saenz , E-mail : setehc@hotmail.com

Tanesha W Blye , E-mail : [ursula@saenzanderson.com](mailto:ursula@saenzanderson.com)
Tanesha W Blye , E-mail : [tblye@saenzanderson.com](mailto:tblye@saenzanderson.com)
Tanesha W Blye , E-mail : [efiling@saenzanderson.com](mailto:efiling@saenzanderson.com)
Templeton N Timothy , E-mail : [rebecca.billingsby@jacksonlewis.com](mailto:rebecca.billingsby@jacksonlewis.com)
Templeton N Timothy , E-mail : [templeton.timothy@jacksonlewis.com](mailto:templeton.timothy@jacksonlewis.com)
Templeton N Timothy , E-mail : [MiamiDocketing@JacksonLewis.com](mailto:MiamiDocketing@JacksonLewis.com)
Ursula Lanfranco , E-mail : [ursula@saenzanderson.com](mailto:ursula@saenzanderson.com)
Valerie L. Hooker , E-mail : [MiamiDocketing@jacksonlewis.com](mailto:MiamiDocketing@jacksonlewis.com)
Valerie L. Hooker , E-mail : [belloo@jacksonlewis.com](mailto:belloo@jacksonlewis.com)
Valerie L. Hooker , E-mail : [valerie.hooker@jacksonlewis.com](mailto:valerie.hooker@jacksonlewis.com)
Yadhira Ramirez-Toro , E-mail : [ursula@saenzanderson.com](mailto:ursula@saenzanderson.com)
Yadhira Ramirez-Toro , E-mail : [asmukler@saenzanderson.com](mailto:asmukler@saenzanderson.com)
Yadhira Ramirez-Toro , E-mail : [yramirez@saenzanderson.com](mailto:yramirez@saenzanderson.com)

IN THE CIRCUIT COURT OF THE 17THJUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

AUDE JESSICA RAPHAEL,           )
                                )
        Plaintiff,              )
                                )
v.                              )        Case No.: CACE-20-010942
                                )
JM FAMILY ENTERPRISES, INC.,    )
                                )
                                )
        Defendant.              )

## **PLAINTIFF'S NOTICE OF SUPPLEMENTING THIRD AMENDED COMPLAINT**

Plaintiff, Aude Jessica Raphael ("Plaintiff"), individually, by and through her undersigned counsel, hereby files this Notice of Supplementing her Third Amended Complaint. On February 15, 2021 Plaintiff filed her Third Amended Complaint ("Complaint"), but inadvertently failed to include a copy of the Offer Letter referenced as Exhibit "H". Plaintiff now files the Offer Letter, as Exhibit "H", to supplement her Third Amended Complaint.

Respectfully submitted,

**By: /s/ Tanesha Blye**
Tanesha Blye, Esq. (FBN: 0738158)
Email: tblye@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800 Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2021, I electronically filed the foregoing document through Florida's E-Filing Portal.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via E-mail or in some other authorized manner.

### By: /s/ Tanesha Blye

## SERVICE LIST

AUDE JESSICA RAPHAEL **v.** JM FAMILY ENTERPRISES, INC.
Case No.: CACE-20-010942
**United States District Court, Southern District of Florida**

Tanesha Blye, Esq.
E-mail: tblye@saenzanderson.com
Aron Smukler, Esq.
E-mail: asmukler@saenzanderson.com
R. Martin Saenz, Esq.
E-mail: msaenz@saenzanderson.com SAENZ
& ASSOCIATES, PLLC
20900 NE 30th Avenue, Suite 800 Aventura,
Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Attorneys for Plaintiff

Jenna Rinehart Rassif, Esq. Florida Bar
No. 56855 Email:
jenna.rassif@jacksonlewis.com Valeria L.
Hooker, Esq. Florida Bar No. 113688 E-
mail: valerie.hooker@jacksonlewis.com
JACKSON LEWIS P.C. One Biscayne
Tower, Suite 3500 2 South Biscayne
Boulevard Miami, Florida 33131
Telephone: (305) 577-7600 Facsimile:
(305) 373-4466
Attorneys for Defendants

# EXHIBIT "H"



**World Omni Financial Corp.**
190 Jim Moran Boulevard
Deerfield Beach, Florida 33442
(954) 429-2200

October 1, 2013

Ms. Aude Jessica Raphael
317 SW 77th Avenue
North Lauderdale, Florida 33068

Dear Jessica:

I am pleased to confirm the job offer extended to you to join JM Family Enterprises, Inc.  As discussed, your position title will be Senior Customer Service Representative, reporting to Audrey DeMoss. Your start date will be Monday, October 14, 2013.   Please report to 120 Jim Moran Boulevard at 8:30 am on that day, where a Human Resources Specialist will conduct your Day One Welcome meeting.

Your semi-monthly salary will be $1,333.33, which equates to annualized earnings of $32,000 base salary. Additionally, for the current year, you will be eligible to participate in JM Family's Annual Incentive Plan. The Plan has an annual targeted payout of $1,600, which will be pro-rated based on your start date; however, the actual payout is determined by performance.

On the first day of the month following your date of hire, you and your eligible dependents are eligible to participate in our flexible benefits program called "Your JM Choice Plan".

You should be aware that this offer is contingent upon your successful completion of our pre-employment screening which includes a standard background check and drug screen as well as proof of identity and employability. In addition, JM Family Enterprises, Inc., and its affiliates are at-will employers, thus, your employment with us is not guaranteed for any particular period of time nor does this letter constitute an employment contract.

We feel you will be a valuable addition to our staff and that the experience you gain will contribute further to your own professional objectives. If you have any questions regarding this letter, please feel free to contact me at 954-363-6201.

Sincerely,

Noelle Lees
Human Resources Generalist

*This is a non-exempt position, which means that you are eligible for overtime pay.

A JM Family Enterprises, Inc. Company