UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-60530-CIV-MORENO**

AUDE JESSICA RAPHAEL,

       Plaintiff,

vs.

JM FAMILY ENTERPRISES, INC., WORLD
OMNI FINANCIAL CORP., and AUDREY
DEMOSS,

       Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

This case stems from Plaintiff's termination from employment, which she claims was due to her race, national origin, and disability. Defendants are moving to dismiss the retaliation claims in Plaintiff's Fourth Amended Complaint arguing the Plaintiff fails to show she engaged in protected activity and that there was a causal connection between that activity and her termination. The Court finds the Plaintiff's Fourth Amended Complaint corrects the deficiencies in prior iterations of her complaint and denies the motion to dismiss.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss **(D.E. 37)**, filed on **February 18, 2022**.

THE COURT has considered the motion, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED. Defendants are instructed to answer the Amended Complaint by **July 15, 2022**.

## I.   <u>Background</u>

Plaintiff, Aude Jessica Raphael, is claiming her employer discriminated against her due to her race, national origin, and disability. Aude Jessica Raphael is a black woman of Haitian descent, who suffers from multiple sclerosis. She began working at JM Family Enterprises, Inc. on October 1, 2013 as a Senior Customer Care Representative. The Fourth Amended Complaint alleges that JM Family Enterprises and World Omni Financial Corp. were Plaintiff's joint employers.

Plaintiff alleges that her supervisor, Audrey Demoss, treated her differently than other similarly situated employees, who were not black or of Haitian descent. Specifically, she alleges Demoss made disparaging and degrading remarks to her and repeatedly questioned how she achieved success in her position. Additionally, Plaintiff alleges Demoss would threaten Plaintiff and make her feel unwelcome. Another Director, Sharon Miller, would micromanage and single out Plaintiff for treatment that other employees did not receive. The Fourth Amended Complaint alleges that both Miller and Demoss would discriminatorily discipline Plaintiff by wrongly issuing write-ups and placing her on probation.

Plaintiff alleges that in 2016 she began complaining to Rebecca Bell of the treatment she received. Bell is a black woman, who served as a supervisor in the customer care department. Plaintiff also complained to a manager named Christine. Plaintiff alleges there was no change in how she was treated by her immediate supervisors. Plaintiff alleges that she "continued to complain to Bell and Manager Christine . . .until the day she was wrongfully terminated." Fourth Amended Complaint at ¶73.

In May 2017, Plaintiff was diagnosed with multiple sclerosis. She immediately informed her supervisors, Demoss, Jillian De Los Reyes, and Bell, of her diagnosis. Plaintiff advised the Defendants that she would need to take intermittent leave to receive medical treatment. Plaintiff

alleges that as a result, her supervisors would micromanage her and make disparaging remarks about her medical condition. Specifically, Demoss would sit closely behind Plaintiff and breathe down her neck, whispering rude and cynical comments to Plaintiff. Plaintiff alleges Demoss would force her to walk long distances across the office and then orally discipline her about the length of time it took her to walk. Plaintiff alleges that she complained about the treatment to Bell and Manager Christine, who failed to do anything to prevent further mistreatment of Plaintiff.

Eventually, Plaintiff was placed on short-term disability. She returned to work in October 2018 and alleges her supervisors' treatment worsened. Plaintiff would arrive to work early to get an easier parking spot. Some days, Demoss would order her to move her car, park farther away, and walk back to the office. She alleges Demoss disparaged her debilitating condition on a constant, pervasive basis. Plaintiff claims that after she returned from medical leave, her supervisors and managers, including Demoss and Manager Christine, issued unjust write-ups and correction letters relating to her job performance. Plaintiff alleges they conducted meetings during which they insisted she review and finalize 25 contracts per day despite her doctor's instructions to revise the contract quota. She states that they did not complain about the quality of her work during the meetings. Plaintiff alleges that she complained to Nichole Devalle in the Human Resources Department and Supervisor Bell about the bullying, belittling, and unfair discipline, but nothing was done.

Approximately, *one week before her termination*, Plaintiff was issued her last discipline by Miller and De Los Reyes, who suspended Plaintiff without explanation. In response, Plaintiff states she complained and objected about the wrongful suspension. She explained she felt the suspension was unwarranted.

Plaintiff also claims she was denied reasonable accommodations due to her disability. She requested to work from home, but Defendants denied the request. She requested a desk close to the bathroom, and in response, Defendants moved her desk farther away from the bathroom. Plaintiff requested from Human Resources a new parking space closer to the building. Defendants moved her to a farther parking space, which required her to climb stairs. Plaintiff alleges she complained about this treatment.

On June 7, 2019, Defendants' Human Resources department and management employees terminated Plaintiff's employment. Defendants told her she was being terminated for violating company policy. Plaintiff claims she was not told about the violation prior to her termination, and claims it is pretextual.

## A. Court's Prior Order

On January 11, 2022, the Court entered an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. In that order, the Court dismissed the claims against the supervisor, Audrey Demoss. The Court denied the motion to dismiss the 42 U.S.C. § 1981 claims as to JM Family and World Omni as to the disparate treatment claim.

The Court also dismissed Plaintiff's retaliation claims under §1981 and the Florida Civil Rights Act without prejudice advising the Plaintiff to allege the "protected activity and a causal connection between the protected activity and Plaintiff's termination." For the same reason, the Court dismissed the Family and Medical Leave Act claim without prejudice as there is an 8-month gap between Plaintiff's FMLA leave and her termination and no allegations that the decisionmaker knew of the protected activity.

## B. Fourth Amended Complaint

Defendants are again moving to dismiss certain counts in Plaintiff's Fourth Amended Complaint: Count 11 (Race Discrimination under 42 U.S.C. § 1981 - Wrongful and Retaliatory

4

Termination against JM Family), Count 12 (Race Discrimination under 42 U.S.C. § 1981 -

Wrongful and Retaliatory Termination against World Omni), Count 13 (Race Discrimination

under FCRA - Wrongful and Retaliatory Termination against JM Family), Count 14 (Race

Discrimination in violation of the Florida Civil Rights Act - Wrongful and Retaliatory

Termination against World Omni), Count 15 (National Origin Discrimination in violation of the

Florida Civil Rights Act against JM Family), Count 16 (National Origin Discrimination in under

the Florida Civil Rights Act against World Omni), Count 17 (Disability or Handicap

Discrimination in violation of the Florida Civil Rights Act against JM Family), and Count 18

(Disability or Handicap Discrimination in violation of the Florida Civil Rights Act against World

Omni).

## II.    Legal Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal

conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or

face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir.

2004).  When ruling on a motion to dismiss, a court must view the complaint in the light most

favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true.  *See St. Joseph's

Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986).  This tenet, however, does

not apply to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Moreover,

"[w]hile legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Id.* at 1950.  Those "[f]actual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all of the complaint's allegations are

true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  In short, the complaint must not

merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

### III.      Legal Analysis

#### A.  *Retaliation and Wrongful Termination Claims*

Plaintiff brings both federal and state law claims for retaliation based on her termination from employment.  To state a *prima facie* case of retaliation under 42 U.S.C. § 1981, Plaintiff must allege (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal relation between the two events. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001). The Florida Civil Rights Act requires Plaintiff to prove the same elements. *Buade v. Terra Grp., LLC,* 259 So. 3d 219, 222 (Fla. 3d DCA 2018) (quoting *St. Louis v. Fla. Int'l Univ.,* 60 So. 3d 455, 460 (Fla. 3d DCA 2011)).

#### 1. *Counts 11 & 12: Retaliation and Wrongful Termination under 42 U.S.C. § 1981*

Defendants argue that Plaintiff's allegations fail to establish that she engaged in statutorily protected activity and that there was a causal connection between that activity and her termination.

To plead statutorily protected activity, a plaintiff must plead that she has opposed an unlawful employment practice and that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Ceus v. City of Tampa,* 803 F. App'x 235, 245 (11th Cir. 2020) (citations omitted). This creates both a subjective and objective component to the standard. *Id.* "Thus, a plaintiff must allege both that [she] honestly believed [her] employer was engaged in unlawful employment practices, and that [her] belief was objectively reasonable. Objective belief is measured against the controlling substantive law." *Id.* (citing *Butler v. Ala. Dep't of Transp.,* 536 F.3d 1209, 1214 (11th Cir. 2008)). An employee who complains about the

supervisor's treatment does not automatically engage in protected activity. *See Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1280 (S.D. Fla. 2009) (finding on a motion for summary judgment that complaining about a policy or co-worker's behavior is not sufficient to communicate a belief that discrimination is occurring). Simply complaining is not enough; an employee must link the complaint to a protected characteristic to state a claim. *Id.*

In this Court's prior order, the Court found that Plaintiff failed to plead the details of her protected activity, which prevented her from establishing that the protected activity was the but-for cause of the adverse action. Plaintiff's Fourth Amended Complaint corrects the deficiency. Plaintiff alleges that in 2016, she complained of Defendants' discriminatory conduct toward her. She explicitly complained of how Demoss and Miller treated her. Unlike her Third Amended Complaint where Plaintiff failed to indicate the timing of her protected activity, the Fourth Amended Complaint alleges that in 2016, Plaintiff began complaining to Rebecca Bell and Manager Christine, who were both managers in the customer service department. Plaintiff claims that she complained to Nichole Devalle in the Human Resources Department and Supervisor Bell about the bullying, belittling and unfair discipline, but nothing was done. Plaintiff adds that she complained about the *discrimination* until the date she was terminated on June 7, 2019.

The Court finds that Plaintiff sufficiently alleges that she complained of discriminatory treatment. Specifically, in paragraph 73 Plaintiff alleges that "she continued to complain to Bell and Manager Christine. Plaintiff complained about the racial discrimination [from 2016] until the date that she was wrongfully terminated." This allegation sufficiently states that Plaintiff engaged in protected activity under Title VII, by opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3; *see Crawford v. Met. Gov. of Nashville*, 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form

of employment discrimination, that communication" virtually always "constitutes the employee's opposition to the activity.").

Defendants argue that even if Plaintiff engaged in protected activity, she fails to sufficiently allege causation. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without more, must be "very close." *Id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Plaintiff alleges that she continuously complained to Bell and Manager Christine about discriminatory treatment from 2016 until her termination. Plaintiff also alleges that she complained to Nichole Devalle in the Human Resources Department, and Human Resources was involved in the decision to terminate her. At summary judgment, the record will need to show the close temporal proximity between the statutorily protected activity and the adverse employment action. It will need to show that there is a connection between the protected activity and the decision to terminate her. The Court will also evaluate whether Nichole Devalle, who knew of the complaints, acted in retaliation of those complaints. The Court will revisit the viability of Plaintiff's § 1981 retaliation claims on a complete record. *See Murphy*, 616 F. Supp. 2d at 1280 (decided on a motion for summary judgment).

*2. Counts 13 through 16: Retaliation under the Florida Civil Rights Act*

The Florida Civil Rights Act, like Title VII, requires a plaintiff to plead that she engaged in statutorily protected activity, there was an adverse employment action, and there was a causal connection between the participation in the protected expression and the adverse action. *Buade*, 259 So. 3d at 222. The Court again finds that Plaintiff sufficiently pleads that she complained about the discrimination to Bell and Manager Christine from 2016 until the time of her

termination. Plaintiff also complained to Human Resources, who participated in the decision to terminate her employment. The Court finds the allegations sufficient to state a claim, but cautions Plaintiff that at summary judgment, the Court will consider the timing and substance of these complaints to determine causation.

   *3. Counts 17 & 18: Retaliation due to Disability Discrimination under the Florida Civil Rights Act*
   Defendants move to dismiss counts 17 and 18 indicating that Plaintiff fails to allege the timing of her complaints of disability discrimination. The Fourth Amended Complaint alleges that Plaintiff complained at unspecified times in 2018 to Defendants about being bullied, belittled, embarrassed, humiliated, and micromanaged because of her disability. In her response to the motion to dismiss, Plaintiff argues that her complaints of disability discrimination, like her complaints of racial and national origin discrimination, were continuous. While the Court is not convinced that Plaintiff's allegations show a pattern of continuous complaints showing protected activity regarding her disability, the Fourth Amended Complaint alleges that a week before her termination Plaintiff complained about a wrongful suspension. That allegation is included in the section relating to the disability discrimination that she purportedly suffered. In viewing the Fourth Amended Complaint in the light most favorable to the Plaintiff, the Court denies the motion to dismiss, but reiterates that to survive summary judgment, the record evidence will have to show that her complaint about the suspension was sufficiently related to her disability. The Court denies the motion to dismiss.

   DONE AND ORDERED in Chambers at Miami, Florida, this 27 of June 2022.

                                        _____
                                        FEDERICO A. MORENO
                                        UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record